No. 13-56445
_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

**VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,**
*Plaintiffs-Appellants,*
v.

**JONATHAN FIELDING, Director of Los Angeles County Department of Public Health; JACKIE LACEY, Los Angeles County District Attorney; and COUNTY OF LOS ANGELES,**
*Defendants-Appellees.*
_____

**On Appeal from the United States
District Court for the Central District of California
Hon. Dean D. Pregerson, Case No. CV13-00190 DDP (AGRx)**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**BRIEF OF PLAINTIFFS-APPELLANTS VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

Robert Corn-Revere
Ronald G. London
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW, Suite 800
Washington, DC  20006
(202) 973-4200

Janet L. Grumer
Matthew D. Peterson
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
(213) 633-6800

Attorneys for Plaintiffs and Appellants
VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.;
JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce
(counsel continue on inside cover)

Paul J. Cambria, Jr.
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA  90026
(323) 883-1807

H. Louis Sirkin
SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, OH  45202
(513) 721-4450

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Plaintiff-Appellant Vivid Entertainment, LLC hereby certifies that it has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock. Plaintiff-Appellant Califa Productions, Inc. also hereby certifies that it has no parent corporation and there is no publicly held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ...................................................... i

TABLE OF AUTHORITIES ................................................................ iv

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES.........................................................2

STATEMENT OF THE CASE..........................................................3

STATEMENT OF FACTS ...........................................................5

    A.    The Adult Film Industry and Existing Protections Against the
Spread of Sexually Transmitted Diseases ...............................................6

    B.    Measure B and its Impact....................................................7

    C.    Proceedings in the District Court ...........................................11

    D.    The District Court's Preliminary Injunction Order...........................14

SUMMARY OF ARGUMENT ........................................................18

ARGUMENT ...................................................................22

I.    THE DISTRICT COURT IMPROPERLY LINE-EDITED
MEASURE B TO SAVE IT FROM BEING ENJOINED IN FULL ...........24

    A.    The District Court Engaged in Judicial Legislation............................24

    B.    The Preserved Portions of Measure B Are Not Severable..................29

II.    THE DISTRICT COURT RELIED UPON IMPERMISSIBLE
EVIDENCE TO DENY PRELIMINARY INJUNCTIVE RELIEF .............31

    A.    The District Court Improperly Allowed Intervenors to Remain
Parties After the Supreme Court's Decision in *Hollingsworth*...........32

    B.    The District Court Improperly Relied on Evidence Proffered By
Putative Intervenors in Denying the Motion for Preliminary
Injunction..............................................................36

ii

III.  THE DISTRICT COURT ERRED IN NOT PRELIMINARILY
      ENJOINING MEASURE B'S CONDOM MANDATE AND
      REMAINING PERMITTING REQUIREMENT ........................................38

      A.    The District Court Erred in Holding Appellants are Unlikely to
            Succeed on Their First Amendment Challenge to the Preserved
            Portions of Measure B ..........................................................................39

            1.    Measure B Should Have Been Enjoined as
                  Content-Based..........................................................................40

            2.    The Provisions of Measure B that the District
                  Court Did Not Preliminarily Enjoin Are Not
                  Narrowly Tailored....................................................................42

            3.    Measure B Remains Unconstitutionally Vague and
                  Over- and Under-Inclusive .......................................................47

      B.    A Preliminary Injunction Against the Whole of Measure B
            Should Be Entered.................................................................................51

CONCLUSION ..................................................................................................53

CERTIFICATE OF COMPLIANCE

STATEMENT OF RELATED CASES

CERTIFICATE OF SERVICE

APPENDIX OF PERTINENT STATUTES AND CONSTITUTIONAL
PROVISIONS

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Acosta v. City of Costa Mesa*,
  718 F.3d 800 (9th Cir. 2013) .......................................................29, 30

*Alexander v. United States*,
  509 U.S. 544 (1993)....................................................................25, 40

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .........................................................28

*American Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) .........................................................23

*Ashcroft v. ACLU*,
  542 U.S. 656 (2004).........................................................................45

*Berger v. City of Seattle*,
  569 F.3d 1029 (9th Cir. 2009) .....................................................25, 40

*Board of Regents of Univ. of Wis. Sys. v. Southworth*,
  529 U.S. 217 (2000).........................................................................37

*Brown v. Entertainment Merchs. Ass'n*,
  131 S. Ct. 2729 (2011)..................................................26, 37, 40, 42

*Buckley v. American Constitutional Law Found.*,
  525 U.S. 182 (1999).........................................................................37

*California Prolife Council PAC v. Scully*,
  989 F. Supp. 1282 (E.D. Cal. 1998), *aff'd*, 164 F.3d 1189 (9th Cir. 1999) .......37

*Chaker v. Crogan*,
  428 F.3d 1215 (9th Cir. 2005) .........................................................38

*Daggett v. Webster*,
  1999 WL 33117158 (D. Me. May 18, 1999)....................................37

*Drake v. Obama*,
  664 F.3d 774 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2748 (2012) .................33

*Elmore v. North Fork Bancorp.*,
    325 F. Supp. 2d 336 (S.D.N.Y. 2004) ................................................................24

*Elrod v. Burns*,
    427 U.S. 347 (1976)................................................................28, 52

*FCC v. Fox Television Stations, Inc.*,
    132 S. Ct. 2307 (2012)................................................................51

*Fly Fish, Inc. v. City of Cocoa Beach*,
    337 F.3d 1301 (11th Cir. 2003) ................................................................39

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990)................................................................39

*G.K. Ltd. Travel v. City of Lake Oswego*,
    436 F.3d 1064 (9th Cir. 2006) ................................................................40

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013)................................................................*passim*

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009) ................................................................23, 52

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ................................................................23, 52

*Nelson v. Chase Manhattan Mtg. Corp.*,
    282 F.3d 1057 (9th Cir. 2002) ................................................................24

*Perry v. Brown*,
    671 F.3d 1052 (9th Cir. 2012), *rev'd on other grounds*,
    *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013)................................................................34, 37

*Prawoto v. PrimeLending*,
    720 F. Supp. 2d 1149 (C.D. Cal. 2010) ................................................................38

*Perry v. Prop. 8 Proponents*,
    587 F.3d 947 (9th Cir. 2009) ................................................................12

*Reno v. ACLU*,
    521 U.S. 844 (1997)................................................................24, 46, 50, 51

*Renton v. Playtime Theatres, Inc.*,
  475 U.S. 41 (1986).................................................................................39

*Sammartano v. First Judicial Dist. Ct.*,
  303 F.3d 959 (9th Cir. 2002) .........................................................52, 53

*Sanders County Republican Cent. Comm. v. Bullock*,
  698 F.3d 741 (9th Cir. 2012) ................................................................23

*Smith v. Goguen*,
  415 U.S. 566 (1974).........................................................................50, 51

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ..............................................................23

*Swan v. Peterson*,
  6 F.3d 1373 (9th Cir. 1993) ..................................................................38

*Thomas v. Chicago Park Dist.*,
  534 U.S. 316 (2002)...............................................................................47

*Turner Broad. Sys. v. FCC*,
  512 U.S. 622 (1994)..............................................................26, 42, 44

*United States v. National Treasury Employees Union*,
  513 U.S. 454 (1995)........................................................................24, 25

*United States v. Playboy Entm't Group, Inc.*,
  529 U.S. 803 (2000)........................................................................39, 46

*United States v. Stevens*,
  559 U.S. 460 (2010)...............................................................................24

*United States v. Alvarez*,
  132 S. Ct. 2537 (2012)...........................................................................42

*Utah Educ. Ass'n v. Shurtleff*,
  512 F.3d 1254 (10th Cir. 2008), *vacated on other grounds*,
  565 F.3d 1226 (10th Cir. 2009) ............................................................40

*Virginia v. American Booksellers Ass'n*,
  484 U.S. 383 (1988)...............................................................................24

*West Va. State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943)......................................................................37

*Yniguez v. Arizonans for Official English*,
   69 F.3d 920 (9th Cir. 1995), *vacated on other grounds*,
   520 U.S. 43 (1997)........................................................................37

*Young v. American Mini Theatres, Inc.*,
   427 U.S. 50 (1976)........................................................................39

*Yu Cong Eng v. Trinidad*,
   271 U.S. 500 (1926)......................................................................25

**State Cases**

*Metromedia, Inc. v. City of San Diego*,
   32 Cal. 3d 180 (1982) ..................................................................31

*People v. Freeman*,
   46 Cal. 3d 419 (1988) ...............................................................6, 45

*People's Advocate, Inc. v. Superior Ct. of Sacramento Cnty.*,
   181 Cal. App. 3d 316 (1986) ....................................................29, 31

*Perry v. Brown*,
   52 Cal. 4th 1116 (2011) ...............................................................12

*Santa Barbara Sch. Dist. v. Superior Ct. of Santa Barbara Cnty.*,
   13 Cal. 3d 315 (1975) ..................................................................30

**Constitutional Provisions**

U.S. Const., amend. I .................................................................*passim*

**Federal Statutes**

28 U.S.C. § 1292(a)(1) ....................................................................1

28 U.S.C. § 1331 ............................................................................1

28 U.S.C. § 1343 ............................................................................1

28 U.S.C. § 1367(a) ........................................................................1

28 U.S.C. § 2201 ...............................................................................1

28 U.S.C. § 2202 ...............................................................................1

42 U.S.C. § 1983 ...............................................................................1

**Other Statutes**

Los Angeles Safer Sex in the Adult Film Industry Act, Measure B,
    *codified as* Los Angeles County Code § 11.39 *et seq.* ...............................*passim*

L.A. Code § 11.39 ..................................................................2, 3, 8

L.A. Code § 11.39.010.....................................................9, 27, 41, 42

L.A. Code § 11.39.075 .......................................................................9

L.A. Code § 11.39.080 .......................................................................9

L.A. Code § 11.39.080.A ..................................................................47

L.A. Code § 11.39.080.B ....................................................................9

L.A. Code § 11.39.080.C ..................................................................49

L.A. Code § 11.39.080.D ....................................................................9

L.A. Code § 11.39.080-11.39.110 ......................................................9

L.A. Code § 11.39.090 .......................................................................9

L.A. Code § 11.39.090.B ..................................................................46

L.A. Code § 11.39.110.A ...............................................................9, 42

L.A. Code § 11.39.110.D ..................................................................41

L.A. Code § 11.39.110.E ..................................................................46

L.A. Code § 11.39.110.F ..................................................................46

L.A. Code § 11.39.110.H ..................................................................46

L.A. Code § 11.39.130 .....................................................................46

Measure B § 2 ..................................................................................8

Measure B § 3 .............................................................................9, 43

**Rules**

C.D. Cal. R. 7-12..........................................................................38

FRAP 4(a)(1)(A) .............................................................................1

FRCP 65 ..........................................................................................1

**Other Authorities**

http://ph.lacounty.gov/aids/docs/LAC_FiveYear_
    ComprehensiveHIVPlan2013-2017.pdf .............................................7

## STATEMENT OF JURISDICTION

This appeal arises from an order denying in part a motion for preliminary injunction (E.R. 1-34[1]) sought by Plaintiffs-Appellants Vivid Entertainment, LLC ("Vivid"), Califa Productions, Inc. ("Califa"), Jane Doe a/k/a Kayden Kross, and John Doe a/k/a Logan Pierce ("the Performers").  In the underlying action brought pursuant to 42 U.S.C. § 1983, the District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the state law claim (not appealed) under 28 U.S.C. § 1367(a), with authority to grant injunctive and declaratory relief provided by 28 U.S.C. §§ 2201-02 and FRCP 65.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) in that it is from an interlocutory order that partly grants and partly refuses to enter a preliminary injunction.  Pursuant to FRAP 4(a)(1)(A), Appellants timely appealed that order, which issued August 16, 2013, by immediately filing a notice of appeal on August 19, 2013. (E.R. 52-58)

---

[1] Appellants' Excerpts of Record will be cited as "E.R." by their page numbers, which continue consecutively across the volumes.

1

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred by substantially editing definitions and substantive provisions to preserve portions of the County of Los Angeles Safer Sex in the Adult Film Industry Act, codified at Los Angeles County Code Chapter 11.39 ("Measure B"), which had been passed as a ballot initiative to target "adult films," after the court preliminarily enjoined most of the ordinance as a prior restraint?

2.  Whether the District Court erred in refusing to preliminarily enjoin Measure B in full based on evidence submitted by putative Intervenors who lack Article III standing but were allowed to remain as parties below even after the U.S. Supreme Court's decision in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013)?

3.  Whether the District Court erred in refusing to preliminarily enjoin Measure B in full after finding that the adult film productions at issue are protected by the First Amendment and that Measure B imposes a prior restraint?

## STATEMENT OF THE CASE

The County of Los Angeles Safer Sex in the Adult Film Industry Act, codified as Los Angeles County Code Chapter 11.39, also known as "Measure B," was passed as a ballot initiative by County voters in November 2012, and became law on December 14, 2012. Among other things, Measure B (a) requires the use of condoms during production of adult films, regardless of any health or safety measures the industry already employs and/or that performers may prefer; (b) forces producers of adult films – before any production occurs – to pay fees and obtain permits under a County Department of Public Health regime that first requires blood-borne pathogen training for adult film company principals and management employees; and (c) allows immediate and potentially permanent revocation of permits without prior notice. *See* Appendix of Pertinent Statutes and Constitutional Provisions ("App.") 1-13. Failure to comply with Measure B subjects violators to civil and criminal penalties. *Id*. 10-11.

On December 14, 2012, the Department of Public Health issued a letter to "Producers of Adult Films in Los Angeles County" stating that Measure B had taken effect, and purporting to establish "provisional" permitting fees ranging from $2,000 to $2,500 per year.[2] On January 10, 2013, the Appellant adult film produc-

---

[2] (E.R. 114). *See also* RJN Ex. 1. In the court below, both Appellants and Putative Intervenors filed with their motions and responsive filings multiple requests for judicial notice to bring various materials to the District Court's

tion and distribution companies Vivid and Califa, along with Appellant Performers who appear in adult films (together "Vivid" or "Appellants"), filed suit against the Department and the other County Defendant-Appellees ("County"), to enjoin and invalidate Measure B on First Amendment and other constitutional and legal grounds. The County filed an answer that agreed Measure B "presents important constitutional questions that require judicial determination," and that indicated the County would not defend it. (E.R. 200, 201) However, as the County also refused to forestall implementation and enforcement pending resolution of the "important constitutional questions," Vivid had to seek a preliminary injunction. *Id*. 115-16.

Putative Intervenors AIDS Healthcare Foundation and its employees and supporters, who were Measure B's drafters and proponents, moved to intervene in the case (collectively, "AHF" or "Putative Intervenors"). *Id*. 192-93. Over Vivid's objection, AHF gained party status on April 16, 2013, under Circuit precedent that was later overruled by the Supreme Court in *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) (holding intervenors must satisfy Article III standing, which, post-

---

attention. The District Court never expressly granted or denied the requests (or accepted them only in part), but in the order on appeal did rely on some of the materials for which judicial notice was sought. *E.g.*, E.R. 21, 27-28. Appellants proceed here on the understanding that these requests for notice were thus granted, and include in the Excerpts of the Record materials relevant to the appeal that were subject to judicial notice requests below. In an abundance of caution, Appellants also file with this brief a Request for Judicial Notice ("RJN") by this Court, for the materials below that are relevant on appeal.

enactment, is not met merely by having sponsored a ballot initiative). *See* E.R. 42-44. AHF thus was allowed to intervene and file a motion to dismiss, to oppose the preliminary injunction motion that was pending when they became parties, and to offer into evidence, and seek judicial notice of, various materials. The County, having taken no position on AHF's intervention, stated it would "not take a position on the merits of the [m]otions." (E.R. 179)

After pleading closed on the dismissal and preliminary injunction motions, and following a District Court hearing, the Supreme Court issued its *Hollingsworth* decision. Vivid immediately sought reconsideration of the order granting AHF's intervention. (E.R. 74-77) While AHF effectively conceded *Hollingsworth* prevents them from intervening as parties on appeal, *id*. 61, they argued *Hollingsworth* did not preclude their intervention at the trial stage of the proceedings. *Id*. 62-66. The District Court denied the motion for reconsideration on August 2, 2013, *id*. 35-39, and on August 16, 2013, granted in part and denied in part Vivid's motion for a preliminary injunction, and granted in part and denied in part AHF's motion to dismiss. *Id*. 1-34. Vivid filed its notice of appeal August 19, 2013. *Id*. 52-58.

## STATEMENT OF FACTS

Measure B targets constitutionally protected expressive enterprises that have longstanding roots in Los Angeles County. Since the California Supreme Court

held in *People v. Freeman*, 46 Cal. 3d 419 (1988), that creating non-obscene adult films is protected by the First Amendment, Los Angeles County has become a leading location for producing adult films. As Measure B recites, the "production of sexually explicit adult films is legal in … California." App. 1. Nonetheless, despite this lip service to the "legality" of adult films, Measure B imposes on them a system of prior restraints in the name of "public health," without regard for producers' and performers' expressive rights protected by the First Amendment.

### A.   The Adult Film Industry and Existing Protections Against the Spread of Sexually Transmitted Diseases

Given the nature of the industry, adult film producers are fully aware of potential health risks to performers from possible exchanges of bodily fluids. As the public first became aware of diseases like HIV/AIDS and hepatitis, the industry provided information about them, their transmission, and how to prevent exposure. (E.R. 125-27) Since then, leading adult filmmakers adopted strict requirements for shooting to protect performers and prevent the spread of HIV and other sexually transmitted diseases or infections ("STDs" and "STIs"). *See id*.

Specifically, adult film entities and their trade associations created testing and reporting regimes for producers and performers to ensure safe and healthy work environments. *Id.* This led to databases of continually updated information on performers who have a negative-test status, based on monthly (or more frequent) testing. *Id. See also id.* 134-35, 139. Adult film producers and performers

can access the database to confirm the negative-test status of any performer on any production date. *Id.* No law-abiding producer would allow a performer to participate in an adult film without a current negative-test confirmation, and no performer would agree to film without confirming all co-performers' negative test status. *Id.*

At the same time, California enacted its own laws and regulations regarding workplace exposure to blood-borne pathogens, which confer jurisdiction over occupational safety and health in California workplaces – including in Los Angeles County – to the California Occupational Safety and Health Standards Board and Division of Occupational Safety and Health ("Cal-OSHA"). For its part, Los Angeles County recently posted a "Five-Year Comprehensive HIV Plan" that does not seek any measures such as those mandated by Measure B, but rather appears to have as its goal more testing and screening of the general population, *i.e.*, exactly what the adult film industry already does for performers.[3] It is against this backdrop that Measure B was proposed and enacted.

### B.    Measure B and its Impact

Putative Intervenors AHF *et al.* have a demonstrated animosity toward the adult film industry. For example, a staff member instrumental in drafting Measure B has made public statements that he would like to see adult filmmakers driven out

---

[3] http://ph.lacounty.gov/aids/docs/LAC_FiveYear_ComprehensiveHIVPlan20 13-2017.pdf. (E.R. 88-89; RJN Ex. 2) *See also* E.R. 125-27, 134-35.

of California.  This AHF staffer also "considers the adult industry 'quasi-human trafficking,'" and has stated that "I don't give a shit about their jobs," while questioning whether "these [are] the types of jobs we need in California." (E.R. 121 & n.13, 145, 159, 169)

It was hardly surprising, then, that despite numerous and explicit protections for adult film under the First Amendment and California law, fastidiously followed and enforced industry protections for performers, and State laws and regulations governing workplace safety, AHF sought to have Measure B placed on the November 2012 ballot under California initiative law.  Measure B contains various purported "Findings" about adult films and the spread of STDs, but as a ballot initiative proposed for enactment by referendum, they are not backed by any legislative record.  *See* Measure B § 2.  Nor were the findings directly considered or adopted by the County.  Nevertheless, Measure B garnered enough signatures to appear on the ballot, where it was approved by voters, leading to codification as Chapter 11.39 of the Los Angeles County Code ("L.A. Code").

Measure B defines "adult films" as "any film, video, multimedia or other representation," containing "sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger, or inanimate object; oral contact with the anus or genitals of another performer; and/or any other sexual activity that may result in transmission

8

of blood and/or [] other potentially infectious materials." *Id*. § 11.39.010. A "producer of adult film" is "any person or entity that produces, finances, or directs, adult films for commercial purposes." *Id*. § 11.39.075.

Measure B forces producers of adult films, before any production occurs, to pay fees and obtain a permit from the County Department of Public Health (the "Department"), *id*. §§ 11.39.080-11.39.110, which is tasked with enforcing Measure B. *Id*.; *see also generally id*. Part 3; Measure B § 3. Those applying for a permit must show successful completion of blood-borne pathogen training approved by the Department, which for business-entity applicants is required of all principals and management-level employees, including film directors. L.A. Code § 11.39.080. No producer of adult films may shoot in Los Angeles County for commercial purposes without a valid permit. *Id*. § 11.39.080.D.

Once approved, producers must display the permit at all times during filming where any adult film is shot. *Id*. §§ 11.39.080.B, 11.39.090. Permits are valid for two years, but at all times are subject to immediate revocation. *Id*. Once a permit is granted, Measure B requires performers engaging in sexual intercourse in adult films to use condoms when doing so. *Id*. § 11.39.110.A.

On Measure B's effective date, the Department issued a letter to "Producers of Adult Films in Los Angeles County" stating that Measure B was in effect. Ltr. from Jonathan E. Fielding dated Dec. 14, 2012. (E.R. 114; RJN Ex. 1) The letter

stated that the Department had established "provisional" permitting fees ranging from $2,000 to $2,500 per year, though it did not hold hearings, conduct analyses, or take other steps to establish those amounts. *Id*. The letter also reinforced Measure B's requirements both to display permits on-set and for condom use, and stated that the Department could "take appropriate measures to enforce" them. *Id*.

Measure B's impact on Appellants' protected expression was immediate and substantial. The uncontroverted sworn declaration entered by Appellant Vivid below explained how being shunted from Los Angeles County has drastically impeded its production of adult films. (E.R. 129-32) It has denied Vivid access to facilities and services necessary to production – and that cannot be moved or found elsewhere, as they are tied to the non-adult film industry – and has affected the availability of performers, technicians, unique locations and sets, set dressing, and props. *Id.* This impact translates directly into what Vivid is able to depict on film, and even has forced it to adjust its script-writing, and has otherwise intruded on its creative and editorial discretion. *Id.* Measure B adversely affects how frequently Vivid can schedule production days, and the level of output the company is thus able to maintain. *Id*. *Cf*. *id*. 4-7 (District Court discussion of standing), *id*. 14 n.8 ("Plaintiffs have modified their speech because of Measure B").

Measure B similarly intrudes on the Performers' creative choices on whether they opt for condoms when performing in adult films, including those implicating

Ms. Kross's intimate personal relationships, as shown in their uncontroverted sworn declarations.  *Id*. 135-37, 140.  Measure B directly limits how frequently Ms. Kross is able to work, including causing indefinite postponements of shooting in Los Angeles County, which she anticipates will force her to forgo as many as 16 productions in 2013.  *Id*. 136.  Measure B also brought a complete halt to production for the "Club Kayden" website, because Ms. Kross's home, where she creates the content, is in Los Angeles County and there is no budget to shoot elsewhere. *Id.*  Measure B also prevents Ms. Kross from creating adult films even with her boyfriend, despite knowing his sexual history and negative testing status.  *Id*. 136-37.  Measure B likewise limits opportunities for Mr. Pierce to express himself in adult films, and reduces the frequency and quantity of productions in which he appears.  *Id*. 140-41.  In addition, insofar as the Performers are popular actors whose output is affected by Measure B, it diminishes their reputation and position in the industry – and, more importantly, with audiences.

## C.    Proceedings in the District Court

Appellants initiated the underlying action on January 10, 2013.  The County filed an answer on February 27, 2013, acknowledging that the Complaint "presents important constitutional questions that require and warrant judicial determination." (E.R. 200)    County Defendants nonetheless claimed "neutrality" on whether Measure B is constitutional, "declined to defend," and expressly stated they "are

not defending [its] constitutionality." *Id*. 182. Notwithstanding this stance of "neutrality," the County took the position that "they have no discretion" other than to enforce Measure B "unless [it] is held to be unconstitutional or otherwise unenforceable." *Id*. 202.

Vivid moved for a preliminary injunction to forestall enforcement of Measure B while a challenge to it is pending. (E.R. 115-16)  The motion was supported by the declarations discussed above, which attest to the steps the adult film industry takes to protect against the spread of STDs, the ways in which Measure B infringes on protected First Amendment rights, and the impact Measure B has on the output of adult films. *See supra* 10-11.

Putative Intervenors AHF *et al*. moved to intervene on March 1, 2013. (E.R. 192-93)  Vivid opposed intervention, arguing *inter alia*, that AHF lacked standing under Article III. *Id*. 186-89.  On April 16, 2013, the District Court granted AHF party status, finding in relevant part that "[n]either the United States Supreme Court nor the Ninth Circuit has explicitly addressed" whether intervenors must "independently fulfill the requirements of Article III." *Id*. 43 (citing, *inter alia*, *Perry v. Prop. 8 Proponents*, 587 F.3d 947, 950 n.2 (9th Cir. 2009)).  Thus, noting that "the Ninth Circuit has repeatedly allowed intervention without … Article III standing," and finding that, as proponents of a ballot measure, AHF had a protectable interest under *Perry v. Brown*, 52 Cal. 4th  1116 (2011), the District

Court allowed AHF to intervene and become parties to the case. (E.R. 45-47) Putative Intervenors were then allowed to move to dismiss the Complaint,[4] and to oppose the motion for preliminary injunction (though AHF largely repeated arguments from the dismissal motion and offered little evidence disputing that which Vivid had proffered). The County did not oppose or file any response to the preliminary injunction motion.

On June 26, 2013, the Supreme Court issued its decision in *Hollingsworth v. Perry,* holding that intervenors must have Article III standing, and that those sponsoring ballot initiatives cannot, on that basis alone, satisfy standing requirements. 133 S. Ct. at 2661-63. As this decision undermined precedent that the District Court had relied upon to grant AHF party status, Appellants brought it to the court's attention the day of the Supreme Court's ruling (E.R. 78-82), followed shortly thereafter by a motion for reconsideration of the order granting intervention, *id.* 74-77, which AHF opposed. *Id.* 59.

On July 11, 2013, with the motion for reconsideration pending, the District Court heard argument on the motions to dismiss and for preliminary injunction, in which AHF was allowed to fully participate (E.R. 73, 67-74), after which, on

---

[4] Putative Intervenors' entry also motivated the District Court to vacate, *sua sponte* and *sub silentio*, Vivid's motion for judgment on the pleadings, which had been filed after the County answered, ostensibly on grounds that pleadings were no longer closed once AHF intervened and moved to dismiss rather than answered.

August 2, 2013, it denied the motion for reconsideration of AHF's intervenor status. *Id*. 35-39. In doing so, the District Court acknowledged that "[t]he Supreme Court made clear that initiative proponents do not have standing to defend their ballot measures after those measures become law." *Id*. 37. But in the District Court's view, *Hollingsworth* "implicitly approved the framework currently at issue: at the district court level, intervention by initiative proponents is proper when the government is enforcing the initiative but refuses to defend it, regardless of whether the interveners have standing independent of the government defendants." *Id*. 37-38. The District Court based this conclusion on its observation that "the Supreme Court[ ] left the [*Hollingsworth*] district court's judgment intact," without recognizing, however, that unlike the present case, the government *had* defended at the district court level in *Hollingsworth*. *Id*. 37.

### D. The District Court's Preliminary Injunction Order

On August 16, 2013, the District Court issued its Order granting in part and denying in part the motion for preliminary injunction, and granting in part and denying in part the motion to dismiss. The court first rejected AHF's argument that Vivid lacked standing to challenge Measure B, given the constitutional interests at stake and credible threat of County enforcement, and the modifications and impediments to expressive endeavors that Measure B requires. (E.R. 4-7) Then, concluding that "sexual intercourse engaged in for the purpose of creating

commercial adult films is expressive conduct" as to which "any restriction … requires First Amendment scrutiny," the court refused to dismiss Vivid's central First Amendment claim. *Id*. 8. Though the court declined to find Measure B content-based and apply strict scrutiny, it determined under intermediate scrutiny that Vivid sufficiently alleged that Measure B is not narrowly tailored, and that the First Amendment claim accordingly could not be dismissed.[5]

The District Court next held Vivid also stated a claim that Measure B is a prior restraint, finding it "does not provide sufficient procedural safeguards [or] narrowly tailored requirements, and gives the County unbridled discretion." *Id*. 13-14. Specifically, the allowance for suspension and revocation of Measure B permits, before judicial determination, is unconstitutional. *Id*. 15-16. Measure B also affords unbridled enforcement discretion by allowing permit denials if "adult film makers violate unnamed, undescribed 'standards affecting public health,'" and by allowing permit suspensions and criminal charges for matters outside Measure B's scope, as to which it gives inadequate guidance. *Id*. 16-18. The District Court further found Measure B not narrowly tailored because it requires condoms for vaginal and anal sexual intercourse, but applies more broadly to films that do not

---

[5] The court did dismiss a stand-alone claim that referendums are not a proper means of regulating First Amendment-protected activity, holding that "undeferential review of … findings does not equate to an automatic resolution" invalidating a law. *Id*. 12-13. That holding is not a subject of this appeal. *But see infra* notes 11 & 12.

include such activity, *id*. 18-20, which renders its "adult film" definition "unconstitutionally overbroad and vague." *Id*. 19 n.14. The Court also invalidated Measure B's fees as not revenue-neutral, and the County's setting the amount at $2,000-$2,500 as unsupported by any evidence. *Id*. 20-21.

However, the District Court dismissed Vivid's vagueness claims, holding that most of Measure B's terms cited as vague are "sufficiently clear," *id*. 23, and that those which may not be clear could survive once reformulated by the court. *Id*. 22 n.16. The court also dismissed all but one aspect of Vivid's due process claims (while noting they "largely duplicate" prior restraint arguments that the court accepted), *id*. 24-25, preserving only that resting on Measure B's creation of an unconstitutional system of warrantless searches and seizures. *Id*. 24-26. As to that claim, the court found that Measure B authorizes a "health officer to enter and search any part of a private home in the middle of the night, because he suspects violations are occurring," which is akin to an unconstitutional general warrant, and that otherwise, the exception for warrantless administrative searches of closely regulated industries was not satisfied. *Id*. 26.

Applying these holdings to the preliminary injunction motion, the District Court preliminarily enjoined significant portions of Measure B, but allowed continued enforcement of the condom requirement for filming vaginal or anal sexual intercourse, and of the need to apply for and obtain permits (though with no fee

paid). The court first concluded that Appellants' First Amendment claim regarding Measure B's condom requirement was unlikely to succeed on the merits because the statute is narrowly tailored, rejecting again claims that strict scrutiny should apply. *Id*. 27. Then, relying on a single letter from the Department *that AHF proffered* – which the District Court acknowledged was "in tension" with Vivid's evidence – it held Measure B targets real harms and does not burden substantially more speech than necessary. *Id*. 26-29.

The District Court next found Vivid likely to succeed on the challenges to Measure B's fee, administrative search, and prior restraint provisions, and enjoined them. *Id*. 29-30. It found AHF had failed to offer any evidence that the fee and prior restraint provisions were narrowly tailored, or that the fees are revenue-neutral. *Id*. 29-30. The court then determined that, because these constitutional claims were likely to succeed, the "remaining preliminary injunction factors weigh in favor of granting an injunction." *Id*. 30.

The District Court then analyzed whether Measure B's offending provisions were severable. *Id*. 30-34. Applying California law, the District Court determined that Measure B's permit fees, provisions for revoking and suspending permits, and allowance for administrative searches could be severed. *Id*. 32. It also concluded that the portions of Measure B governing revocation of permits and levying penalties could be stricken while leaving remaining provisions enforceable. *Id*.

The District Court similarly concluded that the "adult film" definition, which the court re-crafted to narrow it to only sex acts for which Measure B requires condoms, remained enforceable. *Id*. 22 n.16, 32-33.   Measure B thus remained operational without the stricken language, the court reasoned, because condoms could still be required for filming vaginal and anal sexual intercourse, permits could still be required for such productions, fines and criminal charges could still be sought, and searches could still occur, albeit with a warrant. *Id*. 33.  Given that, in the court's view, voters would have passed Measure B in this narrowed form, and because as modified it could serve the overall purpose of preventing STDs, those portions survived Vivid's preliminary injunction motion. *Id*. 34.

## SUMMARY OF ARGUMENT

The District Court committed legal error in refusing to preliminarily enjoin Measure B in full after holding that the law regulates First Amendment-protected activity, that Appellants are likely to succeed in showing it acts as a prior restraint, and that it gives officials excessive discretion, creates unconstitutional search authority, and imposes unconstitutional fees.  The Court erred by engaging in judicial blue-lining to preserve unconstitutional portions of the law, by sustaining Putative Intervenors' party status despite a lack of Article III standing, and in the constitutional analysis of the portions not enjoined.

Courts may not rewrite a law to conform it to constitutional norms, and must eschew such tampering in order to avoid judicial legislation. Courts may *construe* enactments to apply reasonable interpretations to avoid invalidation – but *amendment* cannot be substituted for construction, and courts may not exercise legislative functions to save an unconstitutional law. Here, the District Court amended Measure B to save it, not just by striking certain provisions, but by rewriting others, including key definitions. Based primarily on its belief that the rewrite caused no "grammatical problem," the District Court allowed Measure B's condom mandate and permit requirement to be enforced. But the District Court's finding that Appellants sufficiently pled that Measure B's provisions violate the First Amendment cannot be reconciled with its conclusion that Appellants are not sufficiently likely to succeed on the merits of their constitutional claims.

The severability analysis below was similarly flawed – the portions not enjoined were not "severed," they were rewritten. Severable provisions are only those that were presented to voters so that their significance can be seen and evaluated independently in the light of the proposed enactment's purposes. The District Court's editing cannot be viewed as leaving behind something that it can be said with confidence that voters focused attention upon in enacting Measure B. Any finding that the electorate would have supported Measure B as judicially redrafted is pure speculation.

The District Court compounded these errors by allowing AHF to become parties to the case, and to remain even after the Supreme Court's *Hollingsworth* decision. Were there ever any question, *Hollingsworth* made plain that putative intervenors must have Article III standing, and left no doubt this means at all stages of litigation, including "courts of first instance," *i.e.*, district courts. It also made clear that ballot proponents, once their measure passes, have no personal stake in defending it as is distinguishable from any other citizen, that gives rise to Article III standing. AHF thus did not and could not have Article III standing. Had AHF properly been removed from the case, it would have left as uncontroverted the evidence that, even under the District Court's analysis, would have compelled preliminarily enjoining Measure B in full. Indeed, as the County did not participate substantively, Appellants' motion would have been unopposed and should have been granted on that basis alone.

Though the District Court correctly found that Measure B targets protected expressive activity and erects prior restraints, and thus enjoined most of its provisions as not narrowly tailored, the court committed legal error in its constitutional analysis of the condom and permit requirements. Measure B is content-based, as even the District Court initially agreed at hearing, in that it targets "adult film," and specific adult films at that. It also affects what can be shot, and thus should have been invalidated in full under strict scrutiny.

20

But regardless what level of potentially applicable scrutiny applies, Measure B fails as a whole because it is not narrowly tailored.  As AHF admits, adult film-makers can simply cross the County line to shoot condom-less sex.  While that places significant burdens on the expression, it means Measure B does nothing to prevent the spread of STDs among performers or from performers to the public, to the extent such transmissions occur at all.  Indeed, there is no record evidence in the first instance that transmissions from adult film performers to the public occur, or that anything other than increased general-population STD testing – *i.e.*, exactly what adult filmmakers already require for performers – is called for.

There is also no record support for concluding that the vestigial permitting regime – stripped of suspension, revocation, and inspection provisions, and limited to requiring training and sign-posting – advances any government objective and survives constitutional scrutiny as narrowly tailored.  Measure B also remains vague and both over- and under-inclusive.  The District Court erred in not giving full consideration to these concerns, and by placing the burden on Appellants to prove "other meanings" for Measure B's vague terms.

After finding most of Measure B constitutionally suspect, the District Court should have enjoined its operation in full pending a final ruling on the merits.  The irreparable injury that the court found supported enjoining Measure B's principal provisions still results from operation of the portions it rewrote to preserve.  The

21

balance of equities and public interest thus fall in Appellants' favor, and Measure B's condom-use mandate and remaining permitting must be preliminarily enjoined.

## ARGUMENT

The District Court erred by failing to preliminarily enjoin Measure B in its entirety. The court held that Measure B regulates activity protected by the First Amendment and that Appellants are likely to succeed on claims that it imposes a prior restraint, vests County officials with excessive discretion, creates unconstitutional search authority, and imposes unconstitutional permit fees. Yet it nevertheless declined to enjoin a remaining portion of the law – but only after rewriting both its definitions and intended scope. Such judicial lawmaking is not the proper domain of a district court. These errors were compounded by allowing Putative Intervenors to become parties to the case, and to remain so even after the Supreme Court overruled Circuit authority relied upon, and were exacerbated by reliance on AHF's arguments to support partial denial of preliminary injunctive relief.

After finding most of Measure B constitutionally suspect, the District Court should have enjoined its operation pending a final ruling on the merits. The irreparable injury that the court found supported enjoining Measure B's principal provisions will still result from operation of the portions that the court rewrote to preserve. The balance of equities and public interest thus fall in Appellants' favor, and Measure B's condom-use mandate and remaining permit requirements must be

preliminarily enjoined.  *See*, *e.g.*, *Sanders County Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 744 (9th Cir. 2012).  *See also* E.R. 30 (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)).

Though this Court's standard of review for denials of preliminary injunctions is generally limited and deferential under an abuse-of-discretion standard, reversal is required if a district court bases its decision on erroneous legal standards or clearly erroneous findings of fact, *Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1119 (9th Cir. 2009), after this Court reviews all conclusions of law *de novo*. *American Trucking Ass'ns, Inc. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009).  *See also Bullock*, 698 F.3d at 744 (where "essential issues are matters of law, we review the district court's conclusions *de novo*").  In this case, the District Court committed errors of law through its judicial blue-lining to preserve portions of Measure B that are unconstitutional, by securing Putative Intervenors' role as parties in the case and relying on evidence they proffered, and in its constitutional analysis of the portions of Measure B it refused to enjoin. Accordingly, its denial of portions of Vivid's motion for preliminary injunction should be reversed.

## I.   THE DISTRICT COURT IMPROPERLY LINE-EDITED MEASURE B TO SAVE IT FROM BEING ENJOINED IN FULL

The portions of Measure B that survived review below must also be preliminarily enjoined because the District Court improperly undertook "heroic measures" to preserve them from invalidation as unconstitutional.[6]   By overstepping its bounds to substantially edit and reformulate Measure B's provisions to avoid preliminarily enjoining them, the District Court committed clear error of law, as it is well-settled that courts are not permitted to "rewrite a ... law to conform it to constitutional requirements." *United States v. Stevens*, 559 U.S. 460, 481 (2010) (quoting *Reno v. ACLU*, 521 U.S. 844, 884-85 (1997) (quoting *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (omission in original))).   District courts in particular are "not free to take a blue pencil to statutes." *Elmore v. North Fork Bancorp.*, 325 F. Supp. 2d 336, 340 (S.D.N.Y. 2004) (citing, *inter alia*, *Nelson v. Chase Manhattan Mtg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)).

### A.   The District Court Engaged in Judicial Legislation

As the Supreme Court cautions, "tamper[ing] with the text of [a] statute" is a practice that courts must "strive to avoid." *United States v. National Treasury Employees Union*, 513 U.S. 454, 478-79 (1995) (statute limiting federal employee

---

[6]   (E.R. 19 n.14, 22 n.16, 30-34)   *Cf.* Stedman's Med. Dict. (28th ed. 2005) (defining "heroic measure" as an aggressive procedure for the dangerously ill that in itself may endanger the patient but also has a possibility of being successful, while lesser action would inevitably result in failure).

freedom to engage in expressive activities violated First Amendment). Such limits are part of a court's abiding "obligation to avoid judicial legislation." *Id*. While "it is the duty of a court in considering the validity of an act to give it such reasonable construction as can be reached to bring it within fundamental law," it is "very clear that amendment may not be substituted for construction, and that a court may not exercise legislative functions to save the law from conflict with constitutional limitation." *Yu Cong Eng v. Trinidad*, 271 U.S. 500, 518 (1926).

Here, the District Court thoroughly amended Measure B in order to save it, not just by striking provisions, but by rewriting others, including key definitions. The court correctly held that "Measure B, which requires producers to obtain a permit before shooting 'any film, video or multimedia or other representation of sexual intercourse' is a prior restraint." (E.R. 14) It had little trouble finding in this regard that Measure B "forbid[s] certain communications … in advance of the time that such communications are to occur," and thus "bears a heavy burden against its constitutionality." *Id*. 13 (quoting *Alexander v. United States*, 509 U.S. 544 (1993); *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009)).

The District Court went on to hold correctly that, "[p]ursuant to the most lenient scrutiny that Measure B could be reviewed under, a prior restraint's provisions must be narrowly tailored [to] not burden substantially more speech than is necessary to achieve a substantial government interest." *Id*. 18. It thus determined

25

that, because Measure B "does not provide sufficient procedural safeguards, does not have narrowly tailored requirements, and gives the County unbridled discretion," most of its provisions had to be enjoined. *Id*. 14-20, 29-30.

Significantly, the District Court also held that, "[s]ince Measure B only requires condoms for vaginal and anal sexual intercourse, and since Measure B's purpose is condom-focused, Plaintiffs [] stated a claim that the permit requirement is not narrowly tailored because it applies to adult films without vaginal or anal intercourse." *Id*. 20. It also correctly held that Measure B's definition of "adult films" is unconstitutionally overbroad and vague, because the activities included in the definition were not adequately described or limited, *id*. 19 n.14, leaving its scope too broad. *Id*. And the provisions of Measure B left intact also are not narrowly tailored due to the failure – erroneously ignored by the District Court – to address Measure B's "recited harms" so as to "alleviate [them] in a direct and material way," without "burden[ing] substantially more speech than is necessary, as shown below." *Infra* § III.A.2 (citing E.R. 11 (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664-65 (1994)); *Brown v. Entertainment Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011)).

But rather than preliminarily enjoining these provisions as it did the others it found unconstitutional, the District Court went out of its way to edit Measure B to save the condom mandate and a vestige of the permitting requirement. (E.R. 27-30)

26

*See also id.* 33 ("adult film actors must still use condoms" and "[a] permit is still required").  Most glaring is the District Court's modification to the definition of "adult film" which in many ways is Measure B's key provision, in that it controls which films are regulated, by encompassing:

> any film, video, multimedia or other representation of sexual inter-course in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger, or inanimate object; oral contact with the anus or genitals of another []; and/or any other sexual activity that may result in the trans-mission of blood and/or any other potentially infectious materials.

L.A. Code § 11.39.010.  The District Court found this definition "problematic," and determined portions of it were "unconstitutionally overbroad and vague." (E.R. 19 n.14)  Because of these deficiencies, the court found for purposes of the motion to dismiss that Measure B was not narrowly tailored and was therefore an unconstitutional prior restraint.  *Id.* 20.

Yet when ruling on the preliminary injunction, the District Court took it upon itself to modify the "adult film" definition to something the court deemed constitutional by newly defining "adult film" as any depicting "sexual intercourse in which performers actually engage in vaginal or anal penetration by a penis." *Id.* 22 n.16.  Based primarily on how this rewrite caused no "grammatical problems," the court allowed this central provision of Measure B to stand, and the condom mandate and permitting requirement that depend upon it to escape injunction.  *Id.* 32-33 & n.24.  Notably, this redrafting is utterly unlike, *e.g.*, the District Court's

27

invalidation of the warrantless enforcement provision of Measure B, which saw the entire section enjoined.[7]

It is entirely incongruous for the District Court to hold, for example, that Appellants sufficiently pled that the condom mandate violates the First Amendment (E.R. 11) but, in the next breath, that they are not sufficiently likely to succeed on the merits of that claim as to have the condom provision preliminarily enjoined. If such a claim has been stated, it must be because a regulation targets speech, has an impact on that speech, and arguably violates the First Amendment if applied. This, at a minimum, raises a "serious question going to the merits," *see*, *e.g.*, *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011), and insofar as it is a question affecting speech where irreparable harm is presumed, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), a preliminary injunction should follow.

Significantly, that is consistent with the approach the District Court took when preliminarily enjoining, as to all of Appellants' other claims held to survive the motion to dismiss. (E.R. 26-27) ("the Court GRANTS a preliminary injunction

---

[7] *Id*. 29-30, 32. The District Court did not ground its redrafting in the fact that the sex acts it excised from the definition are incapable of resulting in transmissions of STDs, the evil that Measure B purports to target, but on the fact that they were not among the acts for which Measure B required condoms. *Id.* 19. Putting aside how this questions from yet another angle the true intentions of Measure B's proponents, it also shows the District Court purported to solve an over-inclusiveness problem by creating an under-inclusiveness problem.

on Plaintiffs' other claims that survived the motion to dismiss"). In any event, while the District Court wholly ignored that Measure B's condom requirement cannot, in practice, serve any legitimate objective, Appellants showed a likelihood of success on the merits inasmuch as Measure B's proponents suggested that adult film producers and performers just shoot outside the County. *See infra* 44-45.

## B. The Preserved Portions of Measure B Are Not Severable

The severability analysis that the District Court employed in justifying its editing of Measure B is similarly flawed. (E.R. 30-34) The provision at issue was not "severed," it was rewritten. This perforce fails the requirement that "the provisions to be severed must be so presented to the electorate in the initiative that their significance may be seen and independently evaluated in the light of the assigned purposes of the enactment. The test is whether it can be said with confidence that the electorate's attention was sufficiently focused upon the parts to be severed so that it would have separately considered and adopted them in the absence of the invalid portions." *People's Advocate, Inc. v. Superior Ct. of Sacramento Cnty.*, 181 Cal. App. 3d 316, 332-33 (1986).

The District Court's slicing and dicing *within* Measure B's "adult film" definition, for example, can hardly be said to leave behind something that "it can be said with confidence [] the electorate's attention was [] focused upon" in originally voting to enact Measure B. *Id. See also Acosta v. City of Costa Mesa*, 718

F.3d 800, 818 (9th Cir. 2013) (where "terms are interwoven" court "c[ould ]not say that [the enactor's] attention was sufficiently focused on" the provision severed). Grammatical severability also does not permit individual words to be excised from the middle of a clause or phrase. *Acosta*, 718 F.3d at 820. *Cf. id*. at 821 ("If a statute does not meet any one criteria (grammatical, functional, *or* volitional severability), then a court may not sever text from a statute.").

The conclusion that the electorate would have supported Measure B as redrafted by the District Court, based solely on Measure B's severability clause (E.R. 31, 34), is purely surmise. *Santa Barbara Sch. Dist. v. Superior Ct. of Santa Barbara Cnty.*, 13 Cal. 3d 315, 331 (1975) (existence of severability clause alone "does not conclusively dictate" that a statute can be severed)). Excising key clauses of the "adult film" definition that defines Measure B's breadth also excludes a potentially large portion of films that Los Angeles County voters were told would be covered. Similarly, the mere act of getting a permit – all that is left of the permitting regime – does not prevent the spread of STDs, and there is no indication that voters would have enacted such an empty exercise. Each of these instances of inseverability "taints the remainder" of Measure B. *People's Advocate*, 181 Cal. App. 3d at 330. *Cf. Acosta*, 718 F.3d at 818-19 ("[T]he California Supreme Court explained that 'we know of no precedent for holding that a clause of a statute, which as enacted is unconstitutional, may be changed in meaning in

30

order to give it *some operation*, when admittedly it cannot operate as … in-tended.'") (quoting *Metromedia, Inc. v. City of San Diego*, 32 Cal. 3d 180, 189 n.10 (1982)).

The same can be said of other portions of Measure B that the District Court selectively excised (though Appellants agree they are unconstitutional and properly enjoined). For example, the District Court enjoined collection of any permit fees. (E.R. 32) However, it is possible – perhaps even likely – that voters would not have approved Measure B without a fee provision, as unfunded implementation and enforcement costs may divert funds available for other obligations shouldered by the Department of Public Health, which, along with most if not all other California government entities, faces increasing budget restrictions. Whether it did so in Appellants' favor, or to their detriment, the District Court was not empow-ered to redraft *any part of* Measure B to preserve it, especially based on guesses about what the electorate would have accepted. This Court should thus reverse the District Court's refusal to preliminarily enjoin all of Measure B.

## II.   THE DISTRICT COURT RELIED UPON IMPERMISSIBLE EVIDENCE TO DENY PRELIMINARY INJUNCTIVE RELIEF

The District Court also erred by allowing Putative Intervenors to remain parties below after the Supreme Court issued its decision in *Hollingsworth*, 133 S. Ct. 2652. This error manifested itself in the order denying full preliminary injunctive relief when the District Court relied on evidence offered by improper

intervenors. Accordingly, this Court should reverse the denial of Vivid's motion to preliminarily enjoin Measure B's condom requirement and all permitting, and order the entry of a preliminary injunction against the balance of Measure B.

### A. The District Court Improperly Allowed Intervenors to Remain Parties After the Supreme Court's Decision in *Hollingsworth*

Putative Intervenors should have been dismissed from this action and their motions and other submissions vacated and stricken based on the Supreme Court's clear ruling that intervenors must demonstrate Article III standing "throughout all stages of litigation." *Hollingsworth*, 133 S. Ct. at 2661. Instead, the District Court allowed AHF to remain in the case, and relied exclusively on evidence that they offered in rejecting First Amendment claims that Vivid made in the preliminary injunction motion.

Those seeking to qualify as a party with standing to litigate must show, first and foremost, that they are affected by a matter in a "personal and individual way," and thus "possess a direct stake in the outcome of the case." *Hollingsworth*, 133 S. Ct. at 2662, 2666 (internal quotation marks & citation omitted)). "A 'generalized grievance,' no matter how sincere, is insufficient to confer standing." *Id.* at 2662. A litigant "raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the

Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not [have] Article III" standing. *Id.*

*Hollingsworth* made clear that once a ballot measure is approved by voters, it becomes a duly enacted ordinance for which its proponents "have no role – special or otherwise – in [its] enforcement" before the courts. *Id*. at 2663. Ballot proponents thus have no "personal stake" in defending an enacted measure "that is distinguishable from the general interest of every citizen" sufficient to give rise to Article III standing. *Id*. In this respect, it is like taxpayer standing. *Cf. Drake v. Obama*, 664 F.3d 774, 782 (9th Cir. 2011) (taxpayer standing requires more than a "generalized grievance"), *cert. denied*, 132 S. Ct. 2748 (2012). Even where, as here, government officials decline to defend a passed ballot measure, the Supreme Court has never "upheld the standing of a private party to defend [its] constitutionality," and it "decline[d] to do so for the first time" in *Hollingsworth*. 133 S. Ct. at 2668.

In denying the post-*Hollingsworth* reconsideration motion, the District Court did not find Putative Intervenors satisfied Article III. Indeed, AHF itself effectively conceded that, in view of *Hollingsworth*, they would not have standing to act as parties before *this* Court. *See* E.R. 61. Nevertheless, the District Court held the Supreme Court "implicitly approved" of intervenors like AHF having party status, on grounds that *Hollingsworth* did not "undercut prior authority indicating that

interveners do not need to establish independent standing at the district court." (E.R. 37-39)  That conclusion directly contradicts the holding in *Hollingsworth*, and is thus error.[8]

The Supreme Court left no doubt that intervening parties must satisfy Article III at <u>all</u> stages of a case.  It explained that an "essential aspect" of Article III's requirements "is that any person invoking the power of a federal court must demonstrate standing."  *Hollingsworth*, 132 S. Ct. at 2661.  The Article III requirements apply "*throughout all stages* of litigation," such that "standing must be met … ***[upon] appearing in courts of first instance***," just as they "'must be met by persons seeking appellate review.'"  *Id.* (emphases added) (citation omitted).  Such "first instances" include, among other things, qualifying as a party at the trial (district) court level.

Significantly, and counter to the reasoning below, the Court in *Hollingsworth* did not emphasize that intervenors in that case were appellants.  Instead, by stating that proponents of Proposition 8 lacked any "personal stake in defending" once Proposition 8 was enacted, the Supreme Court made clear that the *Hollings-*

---

[8]  The error of the District Court's initial ruling on intervention should have been obvious to it in the wake of *Hollingsworth* based solely on how heavily AHF had relied in its motion to intervene on *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), which the Supreme Court vacated in *Hollingsworth*. (E.R. 194-98)

*worth* intervenors had *never* had standing.[9]  As the penultimate paragraph of the decision noted, "[w]e have never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to," a statement that is in no way limited to parties on appeal.  *Id.* at 2668.

It is inescapable that intervening parties, including ballot-measure proponents like AHF here, must have Article III standing, *id.* at 2661-62, and that any prior authority to the contrary has been expressly overruled.  The District Court's ruling improperly ignored *Hollingsworth*'s broad language and took an erroneously narrow view of the Supreme Court's decision.  The requirement that Putative Intervenors satisfy Article III is not overcome by the District Court's interest in having AHF "sharpen the issues." (E.R. 39)  They never should have been permitted into the case initially, and certainly should not have been allowed to remain parties after *Hollingsworth*.[10]

---

[9]  *Id.* at 2663.  This conclusion is reinforced by the balance of the opinion, where the Court rejected other arguments in support of standing.  *See generally id.* at 2663-67 (holding, *inter alia*, that "Petitioners here hold no office and have always participated in this litigation solely as private parties," that their "interest is by definition a generalized one, and it is precisely because proponents assert such an interest that they lack standing," and that they "are plainly not agents of the State – 'formal' or otherwise" and thus cannot claim standing via agency).

[10]  The District Court's interpretation of *Hollingsworth* also makes no practical sense.  As all agree – including putative Intervenors (E.R. 61) – there must be Article III standing to intervene as parties in an appellate court.  Under the District Court's reasoning, persons or entities unable to satisfy Article III may nonetheless appear in district courts as parties – *however*, if such intervenor does not prevail in

**B.    The District Court Improperly Relied on Evidence Proffered By Putative Intervenors in Denying the Motion for Preliminary Injunction**

As the County did not respond to the motion for preliminary injunction, the only opposition evidence was that submitted by Putative Intervenors and for which they requested judicial notice, which after *Hollingsworth* should have been stricken rather than considered by the District Court.  Yet the court relied heavily on AHF's proffers in concluding (incorrectly) that Measure B is sufficiently narrowly tailored. (E.R. 27-29)  Specifically, the District Court found "compelling" a letter for which AHF requested judicial notice, despite contradictory evidence submitted by Appellants that the District Court admitted was "in tension" with AHF's proffer.  *Id.* 28.  Had AHF been properly dismissed, that would have left only Vivid's uncontroverted evidence, in "tension" with nothing, before the District Court.  Even under the District Court's reasoning, then, absence of AHF's evidence would have required it to find Measure B not narrowly tailored, and to preliminarily enjoin its remaining provisions.

That is especially so in that courts cannot rely on Measure B's "findings." As a ballot measure, Measure B's "Findings and Declaration" about adult films

---

the district court and its aligned party is disinclined to appeal, the intervenor cannot do so; and, if the intervenor does prevail (as here) in the district court, and an adverse party appeals, there is no one to oppose the appeal if the intervenor's aligned party below declines to do so.

and the spread of STDs in Los Angeles County are unsupported by references or facts, were not directly considered or adopted by the County, and thus receive no deference. *See Perry v. Brown*, 671 F.3d at 1075. As one court put it, "no court has accorded legislative deference to ballot drafters." *Daggett v. Webster*, 1999 WL 33117158, at *1 (D. Me. May 18, 1999) (citing, *inter alia*, *Yniguez v. Arizonans for Official English*, 69 F.3d 920, 945 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 43 (1997) (deference normally accorded legislative findings does not apply with same force when First Amendment rights are at stake; in addition, ballot initiatives are not subject to extensive hearings or considered legis-lative analysis)).[11] There is thus no basis for evaluating the government interest in enforcing Measure B, identifying an "actual problem in need of solving," or establishing a "direct causal link" between adult film and the spread of STDs, as constitutional scrutiny requires.[12]

---

[11] Courts decline to accord legislative deference to laws arising from initiative processes because their adoption does not enjoy any fact-gathering or evaluation process that in part justifies deference to legislative enactments, and/or because no systematic study is undertaken in conjunction with ballot measures. *California Prolife Council PAC v. Scully*, 989 F. Supp. 1282, 1299 & n.42 (E.D. Cal. 1998), *aff'd*, 164 F.3d 1189 (9th Cir. 1999).

[12] *E.g.*, *Brown*, 131 S. Ct. at 2738. Appellants argued below that Measure B violates the First Amendment by curtailing freedom of expression via ballot initiative, in part – but by no means only – because regulating by public vote is inherently content-based. (E.R. 117-20 (citing *West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943); *Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 194 (1999); *Board of Regents of Univ. of Wis. Sys. v.*

Further, because the County did not oppose the preliminary injunction motion, had Putative Intervenors been properly dismissed, the motion would have been unopposed in the first instance, and should have been granted on that basis alone. *See* C.D. Cal. R. 7-12 ("failure to file any required document … may be deemed consent to the granting … of [a] motion."); *Prawoto v. PrimeLending*, 720 F. Supp. 2d 1149, 1151 n.4 (C.D. Cal. 2010) (court may grant a motion based on adverse party's failure to file opposition). In fact, as Appellees made no arguments in support of Measure B below, and failed to cross-appeal, they have waived the ability to defend Measure B here. *E.g.*, *Chaker v. Crogan*, 428 F.3d 1215, 1220 (9th Cir. 2005). And, with AHF's effective admission that they lack standing in this Court under *Hollingsworth*, this appeal is effectively unopposed. *Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir. 1993) ("Generally, we do not consider on appeal an issue raised only by an amicus.").

## III. THE DISTRICT COURT ERRED IN NOT PRELIMINARILY ENJOINING MEASURE B'S CONDOM MANDATE AND REMAINING PERMITTING REQUIREMENT

The District Court was correct in concluding that "sexual intercourse engaged in for the purpose of creating adult films is expressive conduct, is

---

*Southworth*, 529 U.S. 217, 235-36 (2000)). As the District Court's rejection of that claim appears to have had little role in the partial denial of preliminary injunctive relief, Appellants do not raise it here. *See id.* 12-13. However, Appellants reserve the right to appeal that determination at an appropriate time, just as all arguments that may not be ripe for consideration on this interlocutory appeal are preserved.

therefore speech, and therefore any restriction on this expressive conduct requires First Amendment scrutiny." (E.R. 8 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 224 (1990))  It was also correct, therefore, to preliminarily enjoin most of Measure B as, *e.g.*, an impermissible prior restraint. (E.R. 29-30)  However, if Measure B's permitting and other provisions that the court enjoined are unconstitutional prior restraints because, *inter alia*, they are not narrowly tailored, *id*. 29-30, the District Court erred in not reaching the same result for Measure B's condom mandate and remaining permitting requirement.

### A.   The District Court Erred in Holding Appellants are Unlikely to Succeed on Their First Amendment Challenge to the Preserved Portions of Measure B

The District Court's preservation of Measure B's condom-use requirement and allowance of continued permitting constituted legal error.  At the outset, the court erred in not applying strict scrutiny and in upholding Measure B instead under intermediate scrutiny.[13]  The "precise nature of [a First Amendment] restric-

---

[13]   (E.R. 8-10 & n.4 (citing *Fly Fish, Inc. v. City of Cocoa Beach*, 337 F.3d 1301, 1306-09 (11th Cir. 2003) (applying "secondary effects" analysis to "adult entertainment establishment" zoning ordinance)).   The resort to "secondary effects" doctrine to justify intermediate scrutiny further reveals the District Court erred in its constitutional analysis in that the secondary effects doctrine that the court employed from adult entertainment zoning and related cases is "irrelevant" to adult filmmaking.  *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 815 (2000) (describing "zoning cases" employing secondary effects, including *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48 (1986) (cited E.R. 9 & n.4), and *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976)).

tion[]" governs the "appropriate level of scrutiny for [] review." *Utah Educ. Ass'n v. Shurtleff*, 512 F.3d 1254, 1264 (10th Cir. 2008), *vacated on other grounds*, 565 F.3d 1226 (10th Cir. 2009). Here, the District Court found Measure B is a prior restraint, which means it is presumed unconstitutional, and strict scrutiny should have also applied insofar as Measure B is content-based. *See* E.R. 13-14 (citing *Alexander*, 509 U.S. 544; *Berger*, 569 F.3d at 1037); *Brown*, 131 S. Ct. at 2738.

Indeed, there was no real dispute below that whether a law is content based can be "determined on [its] face," or that, "if [it] describes speech by content … it is content based." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1071 (9th Cir. 2006); *see also Berger*, 569 F.3d at 1051 ("regulation is content-based if … by its very terms, [it] singles out particular content for differential treatment"). As such, the court should have applied strict scrutiny that it "is rare [for] a regulation" to survive. *Brown*, 131 S. Ct. at 2738 (citing *Playboy Entm't*, 529 U.S. at 818). In any event, regardless of the level of scrutiny applied, the provisions of Measure B that the District Court preserved are not narrowly tailored and are thus unconstitutional.

### 1. Measure B Should Have Been Enjoined as Content-Based

Measure B plainly "describes speech." Specifically, it targets "adult films," a category based on content, insofar as it focuses on specific acts, *i.e.*, films where "performers actually engage in" any "sexual intercourse" or "other sexual activity

that may result in the transmission of blood and/or potentially infectious materials." L.A. Code § 11.39.010. And, as reformulated by the District Court, the term is even more content-targeted as limited to only two particular sex acts. [14] Measure B engages in such targeting all in order to regulate in a way that, as will be shown, confers no practical benefits, yet intrudes deeply on expressive activities and imposes significant economic and other burdens. *See infra* 44-46.

In addition, as Putative Intervenors admitted, Measure B restricts the industry to depicting sex without condoms only "digitally or through simulation" (E.R. 177), which by definition limits how performances must be staged. (E.R. 128-32, 135-36, 140) Thus, for example, Appellants cannot film, and thus cannot explicitly show, condom-less acts of "actual[ ] … vaginal or anal penetration." *See* §§ 11.39.010, 11.39.110.A. Even if Measure B does not require condoms to be seen on film, the condom requirement means that, to comply, producers must either show sex acts with condoms in view, shoot them so that condoms are not visible, or use after-the-fact digital trickery or edits to make the condoms "disappear." Each of these cut directly to producers' and performers' expressive choices, and affects even how producers script movies, and the settings and moods

---

[14]  Measure B also does not apply to any other commercial "film, video, multimedia or other representation" where the activity depicted "may result in transmissions of blood and/or any other potentially infectious materials." L.A. Code § 11.39.010. Nor does it apply to noncommercial adult filmmaking that may pose the same asserted risks that Measure B purports to cover.

41

they can evoke, as well as diminishing not only creative imperatives, but the level of output producers and performers maintain. (E.R. 128-32, 135-36; 140-41) *Cf. id.* 10 n.4 (acknowledging that, "[i]f condomless sex in adult films is inherently expressive, then requiring condoms would completely block that expression, and strict scrutiny would be required"). Even the District Court initially "agree[d] that it's a content-based statute" during hearing on the motions, or at least was "more than likely a content-based statute" (E.R. 71-72), before reversing course and concluding otherwise in the order now on appeal. *Id.* 8-10 & n.4.

### 2.  The Provisions of Measure B that the District Court Did Not Preliminarily Enjoin Are Not Narrowly Tailored

No matter whether Measure B is deemed content-based and subject to strict scrutiny, or only intermediate scrutiny applies, the District Court erred in that the provisions left intact do not satisfy the minimum narrow tailoring requirement of addressing "recited harms" to a substantial government interest that "are real and not merely conjectural," so as to "alleviate [them] in a direct and material way," without "burden[ing] substantially more speech than is necessary." (E.R. 11 (quoting *Turner*, 512 U.S. at 664-65)) *Cf. Brown*, 131 S. Ct. at 2738 (strict scrutiny requires compelling government interest that regulation is narrowly drawn to serve); *United States v. Alvarez*, 132 S. Ct. 2537, 2548, 2551 (2012) (content-based restrictions on protected speech receive most exacting scrutiny, which re-

quires use of least restrictive means of advancing compelling government interest). To begin with, the District Court relied on a letter by the Department ("DPH Letter") to determine that the purported harms Measure B claims to target are real and not conjectural. Regardless of the propriety of the District Court considering the letter in the first place,[15] it contains no findings that allegedly higher incidents of STDs in the adult film industry have any impact on the health of the general population of Los Angeles County, protecting against which is Measure B's stated purpose. *See* Measure B § 3.

The District Court also ignored evidence disputing the conclusions that are, in fact, in the DPH Letter. Appellants showed that Los Angeles County recently posted a "Comprehensive" HIV Plan that does not even mention "adult films," "pornography," or any other activity Measure B targets. (E.R. 88-89; RJN Ex. 2) If the spread of STDs among and/or by adult film performers played *any* significant role in the incidence of HIV in the County, one would think that would warrant at least a mention in the Plan. Rather, the Plan's goal appears to be more testing and screening of the general population – that is, exactly what the adult film industry already does. (E.R. 125-27, 134-35) Yet the District Court did not address

---

[15]   As discussed above, it was error to consider the DPH Letter to the extent it was offered by Putative Intervenors, who should have been dismissed as parties, and had their request for judicial notice containing the letter stricken. *Supra* § II.B.

this evidence in concluding that the DPH Letter's disputed conclusions were "compelling." (E.R. 28)

Even more glaring was the District Court's failure to address the second narrow tailoring requirement that Measure B "in fact alleviate [] harms in a direct and material way." *Turner*, 512 U.S. at 664-65.  The District Court wholly ignored Appellants' showing that Putative Intervenors' position concedes Measure B's condom requirement will have ***no*** impact on the health of the general population of Los Angeles County.  Specifically, Putative Intervenors repeatedly noted that film-makers need only cross the Los Angeles County line if they wish to film condom-less scenes of vaginal or anal sexual intercourse. (E.R. 102, 106, 107)

This makes clear that Measure B has ***no*** public health benefit, even accepting Measure B's (incorrect) claims about transmission of STDs in adult films.  Simply forcing producers to transport performer(s) to another county, and film them there, after which they return to Los Angeles County to intermingle with those in the general population – just as they would had they shot in Los Angeles County – produces no tangible health benefit.[16]  The District Court's failure to address this point means Measure B fails the narrow tailoring requirement.  *Cf.*

---

[16]    Nothing in the DPH Letter suggests that the use of condoms will reduce the purported incidence of STDs within the adult film industry, and, more importantly, it contains no evidence that use of condoms in the creation of adult films will have any impact on "public health and the quality of life of citizens [] in Los Angeles."

44

*Freeman*, 46 Cal. 3d at 427 ("The fact that the People concede that a film identical to that in this case could be made lawfully if the performers were not paid also belies the asserted 'public health' interest," rendering it "not credible").

The District Court's analysis on whether Measure B burdens substantially more speech than necessary is fatally flawed as well. It concluded that the mandatory STD testing that the adult film industry already requires "has proven insufficient," based again on the DPH Letter (reliance on which was impermissible and unsound, as shown). (E.R. 28) But for the same reasons that Measure B's condom mandate cannot advance any government interest, it was error to conclude that "requiring condoms is a permissible way … to target and prevent the spread of STIs" without being overly burdensome, on grounds that the "proffered alternative" of industry testing "may be ineffective." (E.R. 28) If adult producers and performers can just cross County lines to film condom-less sex, the condom requirement does not "target and prevent the spread of STIs." *Id.* 28-29. *See supra* 44-45. If the condom requirement confers no benefit, the alternative of testing indisputably shows that a condom mandate (or having to maneuver to avoid it) is unduly burdensome. *See, e.g.*, *Ashcroft v. ACLU*, 542 U.S. 656, 665 (2004) (in challenge to speech restriction, "burden is on the [restriction's proponent] to prove … proposed alternatives will not be as effective as the challenged statute"). Indeed, such private, non-governmental and/or market-based options can be less

restrictive alternatives for purpose of this analysis.  *See id*. at 666-70; *Reno v. ACLU*, 521 U.S. at 876-77.[17]

There is also nothing in the record below to support that the remnants of Measure B's permitting regime left intact are narrowly tailored.  The District Court invalidated and preliminarily enjoined Measure B's provisions governing permit modification, suspension and revocation, as well as its inspection regime (along with the ability to charge fees). (E.R. 15-16, 17-18, 25-26, 29-30 (enjoining L.A. Code §§ 11.39.110.D, 11.39.110.E, 11.39.110.F, 11.39.110.H, 11.39.130)  All that leaves (apart from the condom mandate already discussed[18]) are requirements that adult film producers complete County-approved blood-borne pathogen training, file applications attesting as much to obtain a permit to film, and post the permit all places that shooting adult films occurs.  There was already no legislative or other

---

[17]   The District Court ignored another less restrictive alternative to Measure B's condom requirements that Appellants offered – state-wide standards dictated by Cal-OSHA.   As admitted below, Cal-OSHA rules already regulate workplace situations where there is a risk of exposure to blood-borne pathogens. (E.R. 85-87, 103-05)  Thus, there was no dispute that the Cal-OSHA rules are a less restrictive alternative to Measure B, because they do not impose a prior restraint, require training, or include the myriad other Measure B requirements that the District Court enjoined.  *See Playboy Entm't*, 529 U.S. at 816 ("When a plausible, less restrictive alternative is offered" to a speech restriction, it falls to regulation's proponent to "prove [] the alternative will be ineffective to achieve its goals.").

[18]   Section 11.39.090.B also would continue to include posting requirements for signs stating that use of condoms is required for all acts of vaginal or anal sex during production.  It can be assumed that, if the underlying condom mandate is enjoined, that would necessarily also enjoin the posting requirement based on it.

record showing the permitting regime, even without pruning, would effectively advance any government interest, or that it would do so without burdening more speech than necessary, and the District Court made no such finding.   There accordingly is no basis for concluding here that the vestigial permitting regime – stripped of all suspension, revocation, and inspection provisions, and limited to requiring blood-borne pathogen training and sign-posting – survives constitutional scrutiny as narrowly tailored.[19]

### 3.    Measure B Remains Unconstitutionally Vague and Over- and Under-Inclusive

The District Court gave short shrift to most of Appellants' arguments that important individual terms, and some whole phrases, in Measure B are unconstitu-

---

[19]   The District Court concluded without explanation that the blood-borne pathogen training requirement "do[es] not leave much, if any, room for discretion." (E.R. 16)  But it is unclear what training programs the County might approve, nor does anything in Measure B provide guidance.  The District Court suggested "the proper issue is whether the Department has too much discretion in terms of who receives a permit, not whether they have too much discretion in selecting [] training classes."  *Id*. 17 n.12.   But as a permit cannot be obtained absent "successful completion of a blood borne pathogen training course *that has been approved by the department*," L.A. Code § 11.39.080.A (emphasis added), Department approval of the training class relied upon *is* discretion over "who receives a permit."  Measure B's lack of guidance precludes the training requirement from being the kind of "narrowly drawn, reasonable and definite standard[]" that even the least stringent constitutional review requires.  *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 326 (2002).

tionally vague, or make it unconstitutionally over- or under-inclusive.[20]  Among others, the Complaint challenged as vague Measure B's terms "adult film," "producer of adult film," "principals," "management-level employees," and "commercial purposes." (E.R. 219).  It also challenged these terms' incorporation into onerous requirements found in Measure B that are over- and/or under-inclusive because they apply only to "producers of 'adult films'" (however those vague terms may be construed).  *Id*. 221-223.  The District Court relegated consideration of this over- and under-inclusiveness largely to footnotes, such that its refusal to deal with these constitutional failings in their entirety is reversible error.

The District Court correctly held that Measure B's definition of "adult films" is unconstitutionally overbroad and vague, noting that the activities included in the definition were not adequately described or limited (E.R. 19 n.14), but misapplied the law in other respects.  One of the District Court's footnotes on this point brushed aside Appellants' under-inclusiveness claims based on a highly conclusory rationale.  *Id*. 29 n.20.  It reasoned Measure B is not under-inclusive, in part because it could not apply "to individuals having sex in a private place for non-

---

[20]  (E.R. 21-23)  *But see id*. 19 n.14, 22 n.16.  *See also supra* notes 7, 14, *infra* note 21.  In some cases, this is harmless error for purposes of appeal, where terms and provisions in question are bound up in parts of Measure B that were nonetheless preliminarily enjoined.  But in others, failure of the court below to seriously address these infirmities bear on the condom requirement and remaining permitting, and must be addressed.

commercial purposes," and "sex in public places appears to be already prohibited by public decency laws." *Id*. It also rejected Appellants' claims ostensibly for failing to provide evidence of non-commercial films "whose performers are exposed to the risks (accepting arguendo the Measure's assumptions) that are the same as those for performers in commercial adult entertainment."[21]

These observations overlook the main point on under-inclusiveness, which was that Measure B does not address STD risks to the overall population of Los Angeles County, which is its only stated objective. The issue is not whether Measure B could legally dictate how adults engage in sexual activity, but whether Measure B actually does anything on the issue it claims to address. It also is the *fact* that non-commercial films expose performers to the same STD risks as performers in commercial films that is relevant to the under-inclusive analysis, not the *number* or *scope* of these non-commercial productions, as the District Court appeared to conclude.[22]

---

[21]  *Id*. Also, notwithstanding the District Court's line-editing of Measure B to reach not all "sexual intercourse" in its "adult film" definition, but only vaginal and anal sexual intercourse, *see supra* 27, 41, the condom mandate remains unconstitutionally under-inclusive. Measure B also still fails to address adult films that are not for a commercial purpose yet pose the same health risks that Measure B purports to target, *see* L.A. Code § 11.39.080.C, and still fails take into account STD risks from vaginal and anal intercourse to the overall population of Los Angeles County, of which the adult film industry is only a tiny percentage.

[22]  In addition, the District Court's conclusion that the adult film industry is "uniquely problematic" in the spread of STDs relied on the DPH Letter, which, as

The District Court further erred in rejecting Appellants' showing that certain terms and mandates contained within Measure B are impermissibly vague by improperly putting the burden on Appellants to show other possible meanings for them. (E.R. 22-23) The government cannot use vague standards for the sensitive task of regulating constitutionally protected speech, *e.g.*, *Reno v. ACLU*, 521 U.S. at 874, but rather must set "reasonably clear guidelines for law enforcement [] and triers of fact … to prevent arbitrary and discriminatory enforcement." *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974). The District Court agreed with Appellants that the defined term "adult film" was unconstitutionally vague, even though it is defined in Measure B (E.R. 19 n.14, 22 n.16), yet failed to conduct similar analysis of, *e.g.*, the term "producer of adult film," apparently on the sole ground that Measure B purports to define it.[23] Otherwise, the District Court refused to go further, apparently because Appellants "d[id] not analyze these terms' meaning or their potential for confusion." *Id*. 23.

It is not Appellants' burden to suggest any or all possible meanings of a term in order to demonstrate vagueness. Appellants need only show that terms leave

---

discussed above, should not have been considered and contains conclusions that are disputed by evidence that the District Court refused to consider. *Supra* 43-44.

[23] *See id*. 22 n.16. Similarly, the District Court noted that two other terms, "principal" and "management-level employees," had online dictionary definitions and determined – again without any other analysis – that they, too, were "sufficiently clear." *Id*. 22-23 (citing http://www.merriam-webster.com).

persons of common intelligence unsure as to their specific meaning, and force them to necessarily guess as to what specific actions and/or characteristics would be subject to regulation. *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012). The burden then shifts to those seeking to administer and enforce a regulation to demonstrate the identified provisions are not vague. *See Reno v. ACLU*, 521 U.S. at 872-74. Yet the District Court did not point to any argument or explanation from Putative Intervenors that explains how these terms are clear.[24]

### B.    A Preliminary Injunction Against the Whole of Measure B Should Be Entered

As the portions of Measure B that the District Court preserved act as prior restraints and fail narrow tailoring, they are doomed to the same fate as the provisions held unconstitutional below. The condom requirement must be preliminarily enjoined as unconstitutional because it is content-based, because regardless whether strict or intermediate scrutiny applies it is not narrowly tailored, and because Measure B remains vague and over- and under-inclusive. The permitting regime, like the provisions enjoined below, imposes an unconstitutional prior restraint, and there is nothing in Measure B or in the record to show that requiring

---

[24] And, of course, the County, having chosen to "sit out" the constitutional fray, did not offer any explanation. The County's silence here is particularly significant, as it is the body charged with implementing and enforcing Measure B, and one of the doctrinal underpinnings of constitutional vagueness is that there must be "reasonably clear guidelines for law enforcement officials … to prevent arbitrary and discriminatory enforcement." *Goguen*, 415 U.S. at 572-73.

blood-borne pathogen training for adult film producers, and requiring permits that cannot be modified, suspended, or revoked, and under which no inspections assure compliance, would advance any government interest. As the District Court properly held, "once a [moving party] shows [] that a constitutional rights claim is likely to succeed, the remaining preliminary injunction factors weigh in favor of granting an injunction." (E.R. 30 (citing *Melendres v. Arpaio*, 695 F.3d at 1002; *Klein v. City of San Clemente*, 584 F.3d at 1208)

There is irreparable harm by definition, because "loss of First Amendment freedoms, for even minimal periods … unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. at 373; *see also Klein*, 584 F.3d at 1207; *Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973-74 (9th Cir. 2002), and in any event, Appellants' uncontroverted declarations illustrate how Measure B drastically impedes the full exercise of First Amendment rights to produce constitutionally protected adult films. *See generally* E.R. 124-41; *supra* 10-11. The balance of equities tips in Appellants' favor, as they will continue to suffer irreparable injury if the surviving portions of Measure B are not enjoined, whereas little or no harm will ensue if the County is enjoined from enforcing Measure B, given the testing regime and other safeguards adult filmmakers already follow to protect performers from STDs, and by extension, the public. (E.R. 122) Finally, as this Court has held, the public interest "collapses" into Appellants' showing of

likelihood of success to favor a preliminary injunction against all the ways that Measure B infringes First Amendment rights. *Sammartano*, 303 F.3d at 974 ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles.").

## CONCLUSION

For all of the above reasons, this Court should reverse the order denying in part Appellants' Motion for Preliminary Injunction and order the entry of a preliminary injunction in the form requested. (E.R. 174-75 (proposed Order))

RESPECTFULLY SUBMITTED this 16th day of September, 2013.

DAVIS WRIGHT TREMAINE LLP
ROBERT CORN-REVERE
RONALD G. LONDON
JANET L. GRUMER
MATTHEW D. PETERSON

LIPSITZ GREEN SCIME CAMBRIA LLP
PAUL J. CAMBRIA, JR.

SANTEN & HUGHES LPA

H. LOUIS SIRKIN


By:    /s/ Robert Corn-Revere
        Robert Corn-Revere

Attorneys for Plaintiff and Appellant
VIVID ENTERTAINMENT, LLC;
CALIFA PRODUCTIONS, INC.;
JANE DOE a/k/a Kayden Kross; and
JOHN DOE a/k/a Logan Pierce

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 32(a)(7) because it contains 12,950 words, excluding those parts exempted by FRAP 32(a)(7)(B)(iii), as determined by the word-counting feature of Microsoft Word.

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

___/s/ Ronald G. London_____
Ronald G. London

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellants Vivid Entertainment, LLC *et al.* state that they are aware of no related cases currently pending in this Court as defined in Rule 28-2.6.

    /s/ Ronald G. London    
Ronald G. London

## APPENDIX OF PERTINENT STATUTES
## AND CONSTITUTIONAL PROVISIONS

**Constitution of the United States of America**

<u>Amendment I</u>

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

**County of Los Angeles Safer Sex In the Adult Film Industry Act (as enacted)**

The people of the County of Los Angeles ordain as follows:

<u>Section 1. Title</u>

This ordinance shall be known and may be cited as the County of Los Angeles Safer Sex in the Adult Film Industry Act.

<u>Section 2. Findings and Declaration</u>

The people of the County of Los Angeles hereby find and declare all of the following:

(a) The HIV/AIDS crisis, and the ongoing epidemic of sexually transmitted infections as a result of the making of adult films, has caused a negative impact on public health and the quality of life of citizens living in Los Angeles.

(b) Safer sex practices are a prime method of preventing and reducing the spread of HIV I AIDS and other sexually transmitted infections.

(c) The California Supreme Court has determined that the production of sexually explicit adult films is legal in the State of California.

(d) The Los Angeles County Department of Public Health has documented widespread transmission of sexually transmitted infections associated with the activities of the adult film industry within Los Angeles County.

1

(e) The Los Angeles County Department of Public Health has stated that the use of condoms is the best and most effective way to stem the spread of sexually transmitted infections within the adult film industry.

(f) Multiple organizations committed to protecting the public health have called for use of condoms in the production of adult films, including the American Medical Association, the American Public Health Association, the California Conference of Local AIDS Directors, the California STD Controllers Association, the National Coalition of STD Directors, the National Association of City and County Health Officials, AIDS Healthcare Foundation and the California Medical Association.

(g) Producers of adult films are required by California Code of Regulations Title 8, Section 5193 to use barrier protection, including condoms, to protect employees during the production of adult films.

(h) The Los Angeles County Department of Public Health has found that many producers of adult films in Los Angeles consistently violate the worker safety provisions of California Code of Regulations Title 8, section 5193.

Section 3. Purpose and Intent

The people of the County of Los Angeles hereby declare their purpose and intent in enacting this ordinance is to minimize the spread of sexually transmitted infections resulting from the production of adult films in the County of Los Angeles, which have caused a negative impact on public health and the quality of life of citizens living in Los Angeles. This Act will require the producers of adult films to obtain a permit from the Los Angeles County Department of Public Health to ensure that producers comply with preexisting law requiring, among other things, that performers are protected from sexually transmitted infections by condoms. The Act further authorizes the Los Angeles County Department of Public Health to take appropriate measures to enforce the Act, and conditions any film permit issued by the County for the production of an adult film on the use of condoms and other safety precautions.

Section 4.

Chapter 11.39 is hereby added to Division 1 of Title 11 of the Los Angeles County Code to read:

CHAPTER 11.39
ADULT FILMS
ADULT FILMS, SHORT TITLE AND PUBLIC POLICY

## Part 1 DEFINITIONS

11.39.005      Definitions
Unless the provision or the context otherwise requires, the definitions in this part shall govern the construction of this chapter.

11.39.010      Adult film
An "adult film" is defined as any film, video, multimedia or other representation of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger, or inanimate object; oral contact with the anus or genitals of another performer,· and/or any other sexual activity that may result in the transmission of blood and/or any other potentially infectious materials.

11.39.020      County.
"County" means the County of Los Angeles.

11.39.030      Department.
"Department" means the Los Angeles County Department of Public Health.

11.39.040      Departmental regulations.
"Departmental regulations" means the regulations pertaining to filming of adult films promulgated by the department as currently written or as may from time to time be amended. When adopted by the department, these regulations are incorporated in and become part of this chapter.

11.39.050      Exposure control plan.
"Exposure control plan" means a written plan that meets all requirements of Title 8 California Code of Regulations sections 3203 and 5193, to minimize employees' risk of exposure to blood or potentially infectious material.

11.39.060    Filmed or filming.
        "Filmed" and "filming" means the recording or real-time broadcast of any adult film, regardless of the medium used.

11.39.070    Potentially infectious material.
        "Potentially infectious material" shall have the same meaning as defined in Title 8 California Code of Regulations Section 5193 (b), or any successor regulation.

11.39.075    Producer of adult film
        "Producer of adult film" means any person or entity that produces, finances, or directs, adult films for commercial purposes.

11.39.076    Permittee
        "Permittee " means any person or entity issued an adult film production public health permit pursuant to this chapter.

## Part 2 GENERAL REQUIREMENTS

11.39.080    Adult film production public health permit.

        A.

                Producers of adult films shall obtain a public health permit by filing a completed application form with the department and paying the required fee. The fee shall be set by the Department in an amount sufficient to provide for the cost of any necessary enforcement.

                1.

                        During the twelve (12) months immediately following the effective date of this chapter, adult film production public health permits may be issued on a conditional basis. An individual issued a conditional permit shall have up to six months from the date of application to provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department. If permittee is a business entity rather than an individual, permittee shall have up to six months from the date of application to provide the department with proof of successful completion of a blood borne pathogen training course that has

4

been approved by the department for all principals and management-level employees of permittee, including, but not limited to, all film directors. Failure to provide such proof within the prescribed time shall cause the conditional adult film production public health permit to be revoked immediately.

2.

At all times after the twelve (12) months following the effective date of this chapter, each applicant who is an individual must also provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department. Each applicant who is a business entity rather than an individual must provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department for all principals and management-level employees of permittee, including but not limited to all film directors.

B.

Upon successful completion of the permit application process described in subsection A of this section, the department shall issue an adult film production public health permit to the applicant. The adult film production public health permit will be valid for two years from the date of issuance, unless revoked.

C.

No producer of adult films may engage in the making of adult films in Los Angeles County for commercial purposes unless that producer of adult films has a valid adult film production public health permit issued by the department.

D.

An adult film production public health permit is nontransferable.

11.39.090     Posting requirements.

A.

The adult film production public health permit issued to the producer of adult films must be displayed at all times at the

5

location where any adult film is filmed in an area that is visible to performers.

B.

A legible sign shall be displayed at all times at the location where any adult film is filmed in any conventional typeface with a font size not smaller than 36 points, that provides the following notice so as to be clearly visible to performers in said films:

The use of condoms is required for all acts of anal or vaginal sex during the production of adult films to protect performers from sexually transmitted infections.

Any public health concerns regarding any activities occurring during the production of any adult films should be directed to the Los Angeles County Department of Public Health:

_____
_____
_____

(the program office address and telephone number to be provided by the county health officer).

11.39.100    Permit --Reporting requirements.
Every person that possesses a valid adult film production public health permit or registration shall report to the department any changes in status to the business made reportable by departmental regulations within fifteen (1 5) days of the change.

11.39.100    Permit --Reporting requirements.
Every person that possesses a valid adult film production public health permit or registration shall report to the department any changes in status to the business made reportable by departmental regulations within fifteen (15) days of the change.

11.39.110 Permit--Suspension and revocation and fines.

A.

Any permit issued pursuant to this chapter may be suspended or revoked by the department and fines consistent with the provisions of this chapter may be imposed by the department for a violation of this chapter or any other violation of law creating a risk of exposing performers to sexually transmitted infections, including

6

any violation of applicable provisions of the Los Angeles County Code, the California Health and Safety Code, the blood borne pathogen standard, California Code of Regulations Title 8, section 519 3 or the exposure control plan of the producer of adult films, or any combination of such violations. The failure of a producer of adult films to require performers to use condoms during any acts of vaginal or anal sexual intercourse is a violation of this chapter.

B.

Whenever the department determines that a permittee has failed to comply with the requirements of this chapter, any other violation of law creating a risk of exposing performers to sexually transmitted infections, including any violation of applicable provisions of the Los Angeles County Code, the California Health and Safety Code, the blood borne pathogen standard, California Code of Regulations Title 8, section 5193 or the exposure control plan of the producer of adult films, or any combination thereof a written notice to comply shall be issued to the permittee. The notice to comply shall include a statement of the deficiencies found, set forth the corrective measures necessary for the permittee to be in compliance with this chapter, and inform the permittee that failure to comply may result in the imposition of a fine or other penalty, including suspension and/or revocation of any and all permits. The notice to comply shall also advise the permittee of his or her right to an administrative review.

C.

A written request for an administrative review must be made by the noticed permittee within fifteen (15) calendar days of the issuance of the notice to comply. The failure to request an administrative review within the prescribed time shall be deemed a waiver of the right to an administrative review. The administrative review shall be held within fifteen (15) calendar days of the receipt of a written request for a review. Upon the written request of permittee or on its own motion, the department may advance or postpone the scheduled administrative review date, if permittee demonstrates good cause.

D.

7

The department shall issue a written notice of decision specifying any penalties imposed on permittee to the permittee within five (5) days of the administrative review or waiver, excluding weekends and holidays. For permits that have been suspended or revoked, the notice of decision shall specify the acts or omissions found to be in violation of this chapter, and, in the case of a suspended permit, shall state the extent of the suspension. The notice of decision shall also state the terms upon which the permit may be reinstated or reissued, if any.

E.

Notwithstanding any other provision of this chapter, if any immediate danger to the public health or safety is found or is reasonably suspected, the department may immediately suspend the adult film production public health permit, initiate a criminal complaint and/or impose any fine permitted by this chapter, pending a determination of an administrative review, as provided herein. Immediate danger to the public health and/or safety shall include any condition, based upon inspection findings or other evidence, that can cause, or is reasonably suspected of causing, infection or disease transmission, or any known or reasonably suspected hazardous condition.

1.

Whenever an adult film production public health permit issued is immediately suspended or a fine is imposed pursuant to this subdivision E of this section, the department shall issue to the permittee so suspended or fined, a written notice to comply setting forth the acts or omissions with which the permittee is charged, specifying the sections of the Los Angeles County Code, California Health and Safety Code, blood borne pathogen standard, California Code of Regulations Title 8, section 5193 or the exposure control plan of the producer of adult films, or the combination of alleged violations, and informing the permittee of the right to an administrative review.

2.

At any time within fifteen (15) calendar days of service of such notice to comply, the permittee may request, in writing, an administrative review by the department to show cause why the

imposed suspension or fine is unwarranted. The administrative
review shall be held within fifteen (15) calendar days of the
receipt of a request. A failure to request an administrative
review within fifteen (15) calendar days shall be deemed a
waiver of the right to such review.

3.

At any time prior to an administrative review or waiver thereof
the recipient of a notice to comply issued pursuant to this
subsection F, may correct the deficiencies noted in the notice to
comply and request a reinspection at any time when the
producer of adult films is actually filming an adult film.

4.

In the case of a request for reinspection as set forth in
subsection E.3 above, the department shall reinspect as soon as
practical. In the event the deficiencies noted in the notice to
comply are corrected to the satisfaction of the health officer, the
department has discretion to reinstate or modify any suspension
of a permit and cancel or modify any fine imposed pursuant to
this subsection F. If the department determines that the
deficiencies identified in the notice to comply have been
corrected, but the department elects not to reinstate the
suspension or cancel the fine imposed pursuant to this
subsection F, the department shall notify the permittee of this
decision in writing. The permittee shall have fifteen (15)
calendar days from receipt of said notification to seek an
administrative review of this decision.

F.

The department may, after an administrative review or waiver
thereof, modify, suspend, revoke or continue all such action
previously imposed upon a permittee pursuant to this chapter or
impose any fine imposed by law for violations of this chapter or
any other laws or standards affecting public health and safety,
including but not limited to the Los Angeles County Code, the
California Health and Safety Code, the blood borne pathogen
standard, California Code of Regulations Title 8, section 5193 or
the exposure control plan of the permittee, or any combination

thereof, or for interference with a county health officer's performance of duty.

G.

A permit issued pursuant to this chapter may be reissued or reinstated, if the department determines that the conditions which prompted the suspension or revocation no longer exist and any fine imposed pursuant to this chapter has been satisfied.

H.

In the event a permit is suspended or revoked, the producer of adult films whose permit was revoked shall cease filming any adult film unless and until the permit is reinstated or reissued.

## Part 3 COMPLIANCE AND ENFORCEMENT

11.39.120    Compliance with the provisions in this chapter shall be mandatory:

A.

The provisions of this chapter are in full force and effect in the county.

B.

Any producer of adult films filming any adult films within the county, including any person or entity owning or operating any business regulated by this chapter, must comply with the provisions of this chapter.

C.

In addition to any other penalty provided for under this chapter, consistent with the process set forth herein for notice and administrative review, the department may impose a fine on persons violating any provision of this chapter or any law, regulation or standard incorporated into this chapter. The department may impose a civil fine upon such violators in an amount not to exceed $500.00 per violation, as appropriate. The imposition of such fines shall, in no way, limit the authority or ability to impose other requirements of this chapter or seek other remedies against alleged violators.

10

D.

Any person or entity who produces or films adult films for commercial purposes within the county without a valid adult film production public health permit, or any person, who violates any law, ordinance or regulation governing any activity regulated by this chapter, or who, upon demand of the county health officer, refuses or neglects to conform to a lawful order or directive of a county health officer pertaining to conduct regulated by this chapter, is guilty of a misdemeanor, punishable by fine of $1, 000. 00, imprisonment in the county jail for a period not to exceed six months, or both. Each such act is punishable as a separate offense.

11.39.130       Health officer--Enforcement.

The county health officer may enter and inspect any location suspected of conducting any activity regulated by this chapter, and, for purposes of enforcing this chapter, the county health officer may issue notices and impose fines therein and take possession of any sample, photograph, record or other evidence, including any documents bearing upon adult film producer's compliance with the provision of the chapter. Such inspections may be conducted as often as necessary to ensure compliance with the provisions of this chapter.

11.39.140       Noncompliance with county health officer--Injunctive relief

Any act or failure to act which is a violation of this chapter may be the subject of a civil action to enjoin the person or entity so acting or failing to act to conform his or her conduct to the provisions of this chapter.
A civil action to enforce the provisions of this section may be brought by the county counsel, the district attorney or any person directly affected by said failure to comply with the provisions of this chapter. The filing and prosecution of such an action shall, in no way, limit the authority or ability to impose other requirements of this chapter or remedies or penalties as permitted by law.

Part 4 OPERATIONS

11.39.150       Exposure control plan and reporting.

11

Every producer of adult films shall provide a written exposure control plan, approved by the department, describing how the requirements of this chapter will be implemented The exposure control plan shall meet requirements established in departmental regulations.

Section 5.

Chapter 22.56.1925 of the Division 1 of Title 22 of the Los Angeles County Code is amended as follows:

22.56.1925    Movie on-location filming.

    A.

Notwithstanding the other provisions of this Part 14, applications for movie on-location filming permits shall be filed with the filming permit coordination office which shall approve such application for a time period not to exceed the time period specified in this Title 22 where it finds that the findings set forth in Section 22.56.1860 and subsection A 1 of Section 22.56.1880 have been met by the applicant. In addition, in lieu of subsection A2 of Section 22.56.1880, the filming permit office shall also find that such approval will not result in a frequency of usage likely to create incompatibility between such temporary use and the surrounding area. Where an application is denied due to frequency of usage, the filming permit office shall specify the minimum time period between approvals which, in its opinion, is necessary to prevent such incompatibility.

    B.

In interpreting the other provisions of this Part 14 in relation to movie on location filming, the filming permit office shall be substituted for the director, and the provisions of Sections 22.56.1840 and 22.56.1870 shall not apply.

    C.

Any person or entity issued a permit for the filming of an adult film, as defined in section 11.39.010 of this Code, under this chapter or any other law authorizing the issuance of permits for commercial filming are required to maintain engineering and work

12

practice controls sufficient to protect employees from exposure to blood and/or any other potentially infectious materials controls, in a manner consistent with California Code of Regulations, Title 8, Section 519 3. Any such permit shall contain the following language: "Permittee must abide by all applicable workplace health and safety regulations, including California Code of Regulations Title 8, Section 5193, which mandates barrier protection, including condoms, to shield performers from contact with blood or other potentially infectious m:aterial during the production of films." The county shall charge, or shall direct any other person or entity contracting with the county to administer the film permitting process, to charge, entertainment industry customers seeking permits for the production of adult films a fee sufficient to allow periodic inspections to ensure compliance with the conditions set forth in Section 11.39.010.

Section 6. Competing Measures

In the event that this measure and another measure or measures relating to the permit process for adult films shall appear on the same ballot, the provisions of the other measures shall be deemed to be in conflict with this measure. In the event that this measure shall receive a greater number of affirmative votes, the provisions of this measure shall prevail in their entirety, and the provisions of the other relating to the permit process for adult films shall be null and void.

Section 7. Amendment and Repeal

This chapter may be amended to further its purposes by an ordinance passed by a majority vote of the Board of Supervisors.
This chapter may not be repealed, except by an ordinance proposed either by petition or by the Board of Supervisors at its own instance and adopted by a vote of the electors, or by an amendment of the charter superseding the ordinance.

Section 8. Severability

If any provision of this Act, or part thereof, is for any reason held to be invalid or unconstitutional, the remaining provisions shall not be affected, but shall remain in full force and effect, and to this end the provisions of the Act are severable.

13

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 16, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I further certify that Putative Intervenors below, who were served with the Notice of Appeal and were listed in the Representation Statement, and who have not entered an appearance in this matter, and whose attorneys do not appear to be registered CM/ECF users for this case, have been mailed a courtesy copy of the foregoing document by First-Class Mail, postage prepaid, to the following address:

> Tom Myers
> Samantha R. Azulay
> Christina Yang
> AIDS HEALTHCARE FOUNDATION
> 6255 W. Sunset Blvd., 21st Floor
> Los Angeles, CA90028
> Telephone:      (323) 860-5200
> Facsimile:      (323) 467-8450

      /s/ Matthew D. Peterson
Matthew D. Peterson