**No. 13-56445**
_____

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

**VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,**
*Plaintiffs-Appellants,*
v.
**JONATHAN FIELDING, Director of Los Angeles County Department of Public Health; JACKIE LACEY, Los Angeles County District Attorney; and COUNTY OF LOS ANGELES,**
*Defendants-Appellees.*
_____

**On Appeal from the United States
District Court for the Central District of California
Hon. Dean D. Pregerson, Case No. CV13-00190 DDP (AGRx)**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPELLANTS' EXCERPTS OF RECORD
Volume 2 of 2
Pages ER0052 – ER0261**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

Robert Corn-Revere                    Janet L. Grumer
Ronald G. London                      Matthew D. Peterson
DAVIS WRIGHT TREMAINE LLP             DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., NW, Suite 800 865 South Figueroa Street, Suite 2400
Washington, DC  20006                 Los Angeles, CA  90017-2566
(202) 973-4200                        (213) 633-6800

Attorneys for Plaintiffs and Appellants
VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.;
JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce
(counsel continue on inside cover)

Paul J. Cambria, Jr.
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA  90026
(323) 883-1807

H. Louis Sirkin
SANTEN & HUGHES LPA
600 Vine Street, Suite 2700
Cincinnati, OH  45202
(513) 721-4450

# APPELLANTS' EXCERPTS OF RECORD

## Table of Contents

**Volume One**

| | **Description** | **Docket No.** | **Date** | **Page** |
|---|---|---|---|---|
| 1. | Order Denying in Part and Granting in Part Interveners' Motion Dismiss; Denying in Part and Granting in Part Plaintiffs' Motion for a Preliminary Injunction; and Vacating Plaintiffs' Motion for Judgment on the Pleadings | 79 | 8/16/13 | ER0001 |
| 2. | Order Denying Plaintiffs' Motion for Reconsideration | 78 | 8/2/13 | ER0035 |
| 3. | Order Granting Motion to Intervene | 44 | 4/16/13 | ER0040 |

**Volume Two**

| | **Description** | **Docket No.** | **Date** | **Page** |
|---|---|---|---|---|
| 4. | Plaintiffs' Notice of Appeal | 80 | 8/19/13 | ER0052 |
| 5. | Intervenors' Memorandum of Points and Authorities in Opposition to Motion for Reconsideration of Court's Order Granting Motion to Intervene | 71 | 7/22/13 | ER0059 |
| 6. | Reporter's Transcript of Hearing on Motions | | 7/11/13 | ER0067 |
| 7. | Order re: Motion for Preliminary Injunction and Motion to Dismiss | 66 | 7/11/13 | ER0073 |
| 8. | Plaintiffs' Notice of Motion and Motion for Reconsideration of Court's Order Granting Intervenors' Motion to Intervene | 63 | 7/5/13 | ER0074 |
| 9. | Plaintiffs' Notice of Supplemental Authority and Notice of Intent to File Motion for Reconsideration of Ruling on Motion to Intervene | 61 | 6/26/13 | ER0078 |
| 10. | Plaintiffs' Reply in Support of Motion for Preliminary Injunction | 59 | 6/17/13 | ER0083 |

| | **Description** | **Docket No.** | **Date** | **Page** |
|---|---|---|---|---|
| 11. | Intervenors' Request for Judicial Notice in Support of Opposition to Plaintiffs' Motion for Preliminary Injunction | 58 | 6/10/13 | ER0090 |
| 12. | Exhibit A to Intervenors' Request for Judicial Notice in Support of Opposition to Plaintiffs' Motion for Preliminary Injunction | 58-1 | 6/10/13 | ER0095 |
| 13. | Intervenors' Opposition to Plaintiffs' Motion for Preliminary Injunction | 57 | 6/10/13 | ER0101 |
| 14. | Plaintiffs' Request for Judicial Notice; Declaration of Matthew D. Peterson | 56 | 5/29/13 | ER0108 |
| 15. | Plaintiffs' Notice of Motion and Motion for Preliminary Injunction | 55 | 5/29/13 | ER0115 |
| 16. | Declarations and Exhibits D-E in Support of Plaintiffs' Notice of Motion and Motion for Preliminary Injunction | 55-1 | 5/29/13 | ER0123 |
| 17. | Proposed Order RE Plaintiffs' Motion for Preliminary Injunction | 55-2 | 5/29/13 | ER0174 |
| 18. | Intervenors' Notice of Motion and Motion to Dismiss Complaint | 49 | 5/10/13 | ER0176 |
| 19. | Defendants' Response to Plaintiffs' Motion for Judgment on the Pleadings an Motion for Preliminary Injunction | 43 | 4/15/13 | ER0178 |
| 20. | Defendants' Supplemental Statement of Non-Opposition to Proposed Intervenors' Motion to Intervene | 35 | 3/29/13 | ER0181 |
| 21. | Plaintiffs' Opposition to Motion to Intervene | 34 | 3/25/13 | ER0184 |
| 22. | Defendants' Statement of Non-Opposition to Proposed Intervenors' Motion to Intervene | 28 | 3/11/13 | ER0190 |
| 23. | Proposed Intervenors' Notice of Motion, Motion to Intervene, and Memorandum of Points and Authorities in Support | 24 | 3/1/13 | ER0192 |
| 24. | Defendants' Answer to Plaintiffs' Complaint | 21 | 2/27/13 | ER0199 |

| **Description** | **Docket No.** | **Date** | **Page** |
|---|---|---|---|
| 25. Plaintiffs' Complaint for Declaratory and Injunctive Relief | 1 | 1/10/13 | ER0203 |
| 26. Docket Report | | | ER0241 |

PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES <br><br> Defendants. | Case No. **CV13-00190 DDP (AGRx)** <br> Assigned to the Hon. Dean D. Pregerson <br><br> **PLAINTIFFS VIVID ENTER-TAINMENT, LLC'S, CALIFA PRODUCTIONS, INC.'S, JANE DOE A/K/A KAYDEN KROSS'S, AND JOHN DOE A/K/A LOGAN PIERCE'S NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** <br><br> Courtroom 3 <br><br> Action Filed:     January 10, 2013 |

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0052

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0053

Notice is hereby given that Plaintiffs-Appellants Vivid Entertainment Group, Califa Productions, Inc., and Jane Doe and John Doe, also known professionally as, respectively, Kayden Kross and Logan Pierce, hereby appeal to the United States Court of Appeals for the Ninth Circuit from the Order Denying in Part and Granting in Part Interveners' Motion to Dismiss; Denying in Part and Granting in Part Plaintiffs' Motion for a Preliminary Injunction; and Vacating Plaintiffs' Motion for Judgment On The Pleadings, entered in this case on August 16, 2013, and all interlocutory orders that gave rise to that Order.  A true and correct copy of the Order is attached hereto as Exhibit A.

Attached to this Notice as Exhibit B is Plaintiffs-Appellants' Representation Statement, pursuant to Federal Rule of Appellate Procedure 12(b) and Ninth Circuit Rules 3-2(b) and 12-2.

DATED: August 19, 2013     LIPSITZ GREEN SCIME CAMBRIA LLP
                            PAUL J. CAMBRIA, JR.

                            SANTEN & HUGHES LPA
                            H. LOUIS SIRKIN

                            DAVIS WRIGHT TREMAINE LLP
                            ROBERT CORN-REVERE
                            RONALD G. LONDON
                            JANET L. GRUMER
                            MATTHEW D. PETERSON

                            By:   /s/ Matthew D. Peterson
                                  Matthew D. Peterson

                            Attorneys for Plaintiffs
                            VIVID ENTERTAINMENT, LLC;
                            CALIFA PRODUCTIONS, INC.;
                            JANE DOE a/k/a Kayden Kross; and
                            JOHN DOE a/k/a Logan Pierce

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax (213) 633-6899

ER0054

Appendix A, District Court Decision, omitted as duplicative – see E.R. 1-34

.

# EXHIBIT B

ER0056

## CIRCUIT RULE 3-2 REPRESENTATION STATEMENT

Pursuant to Federal Rule of Appellate Procedure 12(b) and Ninth Circuit Rules 3-2(b) and 12-2, Plaintiffs-Appellants Vivid Entertainment Group, Califa Productions, Inc., and Jane Doe and John Doe, also known professionally as, respectively, Kayden Kross and Logan Pierce, hereby certify that the parties in this case and the names, addresses, and telephone numbers of their respective counsel, are as follows:

Counsel for Plaintiffs-Appellants
    Robert Corn-Revere
    Ronald G. London
    DAVIS WRIGHT TREMAINE LLP
    1919 Pennsylvania Avenue, N.W., Suite 800
    Washington, DC 20006
    Telephone: (415) 276-6500
    Facsimile: (415) 276-6599

    Janet L. Grumer
    Matthew D. Peterson
    DAVIS WRIGHT TREMAINE LLP
    865 South Figueroa Street, Suite 2400
    Los Angeles, California 90017-2566
    Telephone: (213) 633-6800
    Fax: (213) 633-6899

    Paul J. Cambria, Jr. (State Bar No. 177957)
    LIPSITZ GREEN SCIME CAMBRIA LLP
    1631 West Beverly Blvd., Second Floor
    Los Angeles, CA 90026
    Telephone: (323) 883-1807

    H. Louis Sirkin (Admitted Pro Hac Vice)
    SANTEN & HUGHES LPA
    600 Vine Street, Suite 2700
    Cincinnati, OH 45202
    Telephone: (513) 721-4450

Counsel for Defendants-Respondents
    Patricia L. Glasser
    Joel N. Klevens
    John Ly
    GLASER WEIL FINK JACOBS HOWARD AVCHEN & SHAPIRO LLP
    102500 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
    Telephone: (310) 553-3000
    Facsimile: (310) 556-2920

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., S
LOS ANGELES, CALIFOR
(213) 633-6800
Fax: (213) 633-6899
ER0057

Counsel for Putative Intervenors Below
    Tom Myers
    Samantha R. Azulay
    Christina Yang
    AIDS HEALTHCARE FOUNDATION
    6255 W. Sunset Blvd., 21st Floor
    Los Angeles, CA 90028
    Telephone:  (323) 860-5200
    Facsimile:  (323) 467-8450

DWT 22444281v1 0097322-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0058

Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450
*Attorneys for Intervenors*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,<br><br>Plaintiffs,<br><br>vs.<br><br>JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES,<br><br>Defendants, and<br><br>MICHAEL WEINSTEIN, MARIJANE JACKSON, ARLETTE DE LA CRUZ, MARK MCGRATH, WHITNEY ENGERAN, and the CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION<br><br>Defendants-Intervenors. | Case No.: 13-CV-00190-DDP-AGR<br><br>**INTERVENORS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT'S ORDER OF APRIL 16, 2013, GRANTING INTERVENORS' MOTION TO INTERVENE**<br><br>Date:, August 12, 2013<br>Time: 10:00 a.m.<br>Judge: Dean D. Pregerson<br>Location: Courtroom 3 |

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

ER0059

The official proponents and campaign committee for Measure B, Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation (collectively referred to as "Intervenors"), submit the following Memorandum in Opposition to Plaintiffs' Motion for Reconsideration of Court's Order of April 16, 2013.

## INTRODUCTION

Plaintiffs' Motion for Reconsideration makes one simple argument—that the United States Supreme Court's decision in *Hollingsworth v. Perry,* No. 12-144, 2013 U.S. LEXIS 4919 (June 26, 2013), 570 U.S. __, No. 12-144 (slip op.) (hereafter "*Hollingsworth*")[1] to deny Proposition 8 intervenors the right to appeal the District Court's decision based upon a lack of Article III standing, necessarily means that Intervenors in this case lack Article III standing here in the District Court. Plaintiffs are wrong. *Hollingsworth* does not change the status or propriety of Intervenors' right to intervene in this matter as it decided a much more narrow issue–that is, the authority of a particular intervenor to appeal a judgment that did not order relief from that intervenor, and where no other parties sought to appeal. Such is not the case here.

Further, the Ninth Circuit has expressly held that intervenors need not demonstrate Article III standing in order to intervene in the lower courts. *See*, *e.g.*, *United States v. Imperial Irrigation Dist.*, 559 F.2d 509, 521 (9th Cir. 1977), *rev'd sub nom. and vacated on other grounds*, *Bryant v. Yellen*, 447 U.S. 352 (1980). This long-established precedent remains law within the Ninth Circuit.

In addition, Intervenors have shown that they do possess Article III standing in that they have a personal stake in the enforcement of the Safer Sex in the Adult

---

[1] Page numbers referenced in this Opposition coincide with the 2013 U.S. LEXIS 4919 citation rather than the Slip Opinion.

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

ER0060

Film Industry Act, Title 11, Division 1, Chapter 11.39 of the Los Angeles County Code ("Measure B") because of their own risk of contracting a disease. Further, Intervenors' demonstration of a "significantly protectable interest" under Rule 24 implicitly satisfies Article III. Accordingly, this Court should deny Plaintiffs' Motion for Reconsideration of the Court's April 16, 2013 Order.

In any event, and especially if Intervenors are denied the full opportunity to participate in this matter, the Court should dismiss this case in its entirety, based upon: (1) lack of jurisdiction for failure to satisfy the "case" and "controversy" requirement of Article III; and (2) principles of abstention dictating that the appropriate forum for these constitutional questions is a State court of California.

This is no ordinary case. The law at issue is the result of direct democracy; a ballot initiative passed by a majority of Los Angeles County voters. Undeniably, it expresses the will of the people. Without Intervenors, there is no one in this case to defend that will. Further, even if the Court affirms its decision to allow Intervenors in the case, since Intervenors potentially could not appeal an adverse decision, the more appropriate forum is a California State court. Because Intervenors and/or the citizens of Los Angeles County would have full rights in the California State courts to defend Measure B, and because uniquely Californian issues are a predominant part of this case, the Court should abstain from exercising jurisdiction over this matter.

## ARGUMENT

## I.   LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(6) is a catch-all provision that allows relief from a court order for "any other reason that justifies relief." Reconsideration of a decision, however, is to be "used sparingly as an equitable remedy to prevent manifest injustice." *See Mullens v. Harrington*, No. CV 09-9118-RSWL (DTB), 2013 U.S. Dist. LEXIS 16219, at **6-7 (9th Cir. Feb. 5, 2013) (citing *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008) (internal

1   quotation marks omitted)).  Motions for reconsideration are a "tightly guarded

2   remedy" and should not be granted "absent highly unusual circumstances, unless

3   the district court is presented with newly discovered evidence, committed clear

4   error, or if there is an intervening change in the controlling law."  *See Kinetics*

5   *Noise Control, Inc. v. ECORE Int'l, Inc.*, No. CV 10-7902 PSG (JEMx), 2011 U.S.

6   Dist. LEXIS 32294, at *4 (C.D. Cal. Mar. 14, 2011) (quoting *Carroll v. Nakatani*,

7   342 F.3d 934, 945 (9th Cir. 2003)).

8       Similarly, Local Rule 7-18 provides that a motion for reconsideration of the

9   decision on any motion may be made only on three grounds, including "a *material*

10  difference in fact or law from that presented to the Court before such decision that

11  in the exercise of reasonable diligence could not have been known to the party

12  moving for reconsideration at the time of such decision."  L.R. 7-18 (emphasis

13  added).

14      Here, Plaintiffs do not present the Court with "highly unusual

15  circumstances" nor do they present the Court with a material change in controlling

16  law.  The Court in *Hollingsworth* did not address intervenor standing at the lower

17  court level, and therefore did not change well-established Ninth Circuit precedent.

## II.   *HOLLINGSWORTH* DID NOT ADDRESS INTERVENOR STANDING AT THE DISTRICT COURT LEVEL; AND TO ANY EXTENT IT DID, IT VALIDATED BALLOT INITIATIVE SPONSORS' STANDING AT THE DISTRICT COURT LEVEL

### A.   *The Analysis In Hollingsworth Only Reaches Appellate Standing*

23      The precise issue presented to the Supreme Court in *Hollingsworth* was

24  whether petitioners/intervenors there had standing to appeal the District Court's

25  judgment when no other parties appealed.  *See Hollingsworth* at *16.  The exact

26  ruling of the case was that the proponents did not have standing to appeal the

27  decision of the District Court because they had not been ordered by the Court to do

28  or refrain from doing anything.  *Hollingsworth* at *34.

The case in no way directly touched upon whether the District Court's grant of intervention, and whether the presence of the proponents in the District Court, was proper. Thus, this Court's statement that the United States Supreme Court has not explicitly addressed the issue of whether proposed intervenors must independently fulfill the requirements of Article III standing, remains true. (April 16, 2013 Order at 4, Dkt. 44).

It is no coincidence that every single case on which the *Hollingsworth* Court based its opinion regarding Proposition 8 proponents' standing, involved an intervenor who wished to appeal a lower court decision.[2] In none of these cases did the Supreme Court opine about the propriety of intervenor standing at the District Court level. In fact, there is no mention in the *Hollingsworth* opinion of the District Court's analysis under Rule 24 of the Federal Rules of Civil Procedure, nor was there even any mention of Rule 24 itself. Thus, *Hollingsworth* drew no conclusions regarding an intervenor proponent's right to participate in a case at the District Court level under Rule 24.

If there is any conclusion to be drawn from *Hollingsworth* regarding standing at the District Court level, it is that the Proposition 8 intervenors were appropriately allowed to intervene in the case —*Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2012). The Supreme Court left that decision by the lower

---

[2] *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997) (dismissing proponents/intervenors who sought to appeal the lower court's decision that a law restricting abortion was unconstitutional); *Diamond v. Charles,* 476 U.S. 54, 62 (1986) ("Standing to defend on appeal in the place of an original defendant, no less than standing to sue, demands that the litigant possess 'a direct stake in the outcome.'")*; Karcher v. May,* 484 U.S. 72 (1987) (after District Court and Court of Appeals decisions, legislators lost their standing to appeal to the United States Supreme Court because they lost the leadership positions that conferred them standing in the first place); *Don't Bankrupt Washington Committee v. Continental Ill. Nat. Bank & Trust Co. of Chicago,* 460 U.S. 1077 (1983) (dismissing initiative proponent's appeal from a decision holding the initiative unconstitutional).

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

court in *Perry* intact, and therefore indirectly affirmed that their participation in the underlying trial court was proper. Specifically, the District Court in *Perry* did not require the Proposition 8 intervenors to demonstrate Article III standing. *See* Order Granting Motion to Intervene at 2-3, *Perry*, 704 F. Supp. 2d 921 (attached hereto as Exhibit A). The District Court analyzed intervention under Federal Rule of Civil Procedure Rule 24(a), and did not discuss the Article III "Case or Controversy" requirement. *See id.* Again, *Hollingsworth* did nothing to change this decision.

Plaintiffs dispute that the *Hollingsworth* decision is limited to parties at the appellate stage of litigation by pointing out that the Justices in *Hollingsworth* affirmed the principle that "Article III demands that an actual 'controversy' persist throughout all stages of litigation" and "must be met by persons appearing in courts of the first instance." (Reconsideration Motion at 7:10-13) (citing *Hollingsworth* at *16). But Plaintiffs' deduction from these legal principles fails; the requirement of a controversy at each stage of the litigation does not mean that Intervenors need to make an independent showing of standing. As explained below in Section IV, once another party confers jurisdiction upon a court, an intervenor may piggyback on that party's standing.

    B.    *Applying Hollingsworth Beyond Its Narrow Ruling Would Result In Poor Policy And Improper Policymaking By The Courts*

To interpret *Hollingsworth* any more broadly would essentially gut direct citizen lawmaking through the ballot initiative process, and render it empty and meaningless. It would mean that government officials would now have the power to nullify any voter-approved ballot measure they disagree with simply by declining to defend the measure in court. This is particularly damaging to basic democratic principles because, as was the case here, ballot measures are raised and passed precisely because the government has failed to act to address the perceived

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR RECONSIDERATION**

**ER0064**

issue.[3]  Specifically, when citizens are frustrated that their elected officials are not passing necessary legislation, they may initiate a ballot measure.  The same government officials who would not enact this legislation will almost certainly refuse to adopt the measure once the proponents of the measure present it to them after the requisite signatures are gathered, thus causing the measure to be placed on a ballot.  Once the ballot measure is passed by a majority of the voters, all a plaintiff must do to invalidate this people's initiative, is to challenge the initiative, making sure to shop for a federal forum.  And there, the same government officials that refused to enact the legislation and refused to adopt the ballot initiative, need only decline to defend the new law.  If these officials do not defend the law, and as Plaintiffs submit, proponents are not authorized to participate in this case, then most likely the law will not receive a defense.  The validity of the new law would be left in the hands of one Honorable District Court Judge who, because there would be no party in Court to defend the law and paint a full picture for the Court to make an informed decision, would only have a limited sense of what the law is, and why it came to pass.

To take such a holding from *Hollingsworth* would diminish the rights of all Californians and essentially eviscerate the California Elections Code.  *See* Cal. Elec. Code § 9100 *et seq.*  In fact, this broad interpretation of *Hollingsworth* would have widespread effects on all 27 states that have elections codes allowing ballot initiatives by the people.  Not only is this poor policy, but it runs against the very principles set forth by the *Hollingsworth* Court: "The doctrine of standing we

---

[3]  In the case of Measure B, prior to its enactment, two branches of government - the courts and the Los Angeles County government - rejected citizen efforts to address STD infection during filmmaking.  *See AIDS Healthcare Foundation v. Los Angeles County Dep't of Public Health*, Verified Petition for Writ of Mandate, LASC Case No. BS121665 (filed July 16, 2009) (attached as Exhibit B to Request for Judicial Notice in support of Intervenors' Opposition to Plaintiffs' Motion for Judgment on the Pleadings).

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

recently explained, 'serves to prevent the judicial process from being used to usurp the powers of the political branches.'" *See Hollingsworth* at **15-16 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. __ (2013)). The Court explained that the requirement of cases or controversies "is an essential limit on our power: It ensures that we act *as judges*, and do not engage in policymaking properly left to elected representatives." *Id.* at *9 (emphasis in the original); *see also Allen v. Wright*, 468 U.S. 737 (1984) ("The law of Art. III standing is built on a single basic idea - the idea of separation of powers.") (internal citations omitted). To prohibit ballot initiative proponents access to the trial court through the intervention procedures of Rule 24 would do just that—allow a federal court to make policy regarding a state law.

The Supreme Court Justices certainly did not intend for their narrow court ruling in *Hollingsworth* to have this kind of sweeping effect.

## III. THE NINTH CIRCUIT DOES NOT REQUIRE INTERVENORS TO MAKE A SEPARATE SHOWING OF ARTICLE III STANDING

### A. *The Ninth Circuit Does Not Require That Proposed Intervenors Make An Independent Showing Of Article III Standing At This Stage Of The Proceedings*

Under well-established Ninth Circuit law, Article III standing requirements are not applicable to Intervenors in District Court proceedings. The reason for this is that the Ninth Circuit has not required that proposed intervenors independently demonstrate Article III standing where they seek to intervene at the outset of the litigation. *See Pickup v. Brown*, No. 2:12-CV-02497, 2012 U.S. Dist. LEXIS 172027, at *3-4 n.1 (E.D. Cal. Dec. 4, 2012).

Though a circuit court split exists as to whether a proposed intervenor must establish Article III standing independently of other parties, and the United States Supreme Court has not yet explicitly resolved this issue, courts within the Ninth Circuit do not require proposed intervenors to demonstrate Article III standing. *See, e.g.*, *United States v. Imperial Irrigation Dist.*, 559 F.2d 509, 521 (9th Cir.

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION**

ER0066

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3         HONORABLE DEAN D. PREGERSON, JUDGE PRESIDING

4    VIVID ENTERTAINMENT, LLC,         )
                                       )
5                                      )
                                       )
6                        Plaintiffs,   )
                                       )
7                                      )
                                       )
8         Vs.                          )   No. CV 13-00190 DDP
                                       )
9                                      )
                                       )
10   JONATHAN FIELDING, ET AL.,        )
                                       )
11                                     )
                                       )
12                       Defendants.   )
                                       )
13   _____   )

14

15

16        REPORTER'S TRANSCRIPT OF HEARING ON MOTIONS

17             LOS ANGELES, CALIFORNIA

18        THURSDAY, JULY 11, 2013; 1:40 P.M.

19

20

21           LEANDRA AMBER, CSR 12070, RPR
         OFFICIAL U.S. DISTRICT COURT REPORTER
22           312 NORTH SPRING STREET, # 408
             LOS ANGELES, CALIFORNIA 90012
23                www.leandraamber.com
                    (213) 894-6603
24

25

2

1                     **A P P E A R A N C E S**

2


3       **IN BEHALF OF THE PLAINTIFF,**
        **VIVID ENTERTAINMENT, LLC:**          SANTEN & HUGHES
4                                              BY:  H. LOUIS SIRKIN, ESQ.
                                               600 VINE STREET
5                                              SUITE 2700
                                               CINCINNATTI, OH 45202-2409
6                                              (513) 721-4450
                                               hls@santen-hughes.com
7

8                                              LIPSITZ GREEN SCIME CAMBRIA
                                               BY:  PAUL J. CAMBRIA JR., ESQ.
9                                              42 DELAWARE AVENUE
                                               BUFFALO, NY 14202
10                                             (716) 849-1333
                                               pcambria@lglaw.com
11

12


13      **IN BEHALF OF THE DEFENDANT,**
        **JONATHAN FIELDING, ET AL.:**         GLASER WEIL FINK JACOBS
14                                             BY:  JOEL N. KLEVENS, ESQ.
                                               10250 CONSTELLATION
15                                             BOULEVARD
                                               19th FLOOR
16                                             LOS ANGELES, CA 90067
                                               (310) 553-3000
17                                             jklevens@glaserweil.com

18

19      **IN BEHALF OF THE INTERVENORS:**      AIDS HEALTHCARE FOUNDATION
                                               BY:  SAMANTHA R. AZULAY, ESQ.
20                                             6255 WEST SUNSET BOULEVARD
                                               21st FLOOR
21                                             LOS ANGELES, CA 90028
                                               (323) 860-5223
22                                             samantha.azulay@aidshealth.org

23


24      **ALSO APPEARING:**  STEVEN HIRSCH

25

                        UNITED STATES DISTRICT COURT

**ER0068**

1

## I N D E X

2                                                                              **PAGE**

3

4    **HEARING:**    HEARING ON MOTIONS

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
 1        LOS ANGELES, CALIFORNIA; THURSDAY, JULY 11, 2013; 1:40 P.M.

 2                              -o0o-

 3

 4

 5            THE CLERK:  Calling item number one CV 13190 Vivid

 6   Entertainment, et al., versus Fielding, et al.

 7            Counsel, may we have appearances, please.

 8            THE COURT:  Start over here.

 9            MR. CAMBRIA:  Paul Cambria -- good afternoon, your

10   Honor -- on behalf of the plaintiffs.  And our client from

11   Vivid is here, Mr. Steven Hirsch.

12            THE COURT:  Good afternoon.

13            MR. SIRKIN:  Mr. Louis Sirkin, your Honor,

14   appearing for the plaintiffs.

15            THE COURT:  Good afternoon.

16            MS. AZULAY:  Good afternoon.

17            Samantha Azulay on behalf of interveners.

18            THE COURT:  Good afternoon.

19            MS. YANG:  Good afternoon, your Honor.

20            Christina Yang on behalf of the interveners.

21            MR. KLEVENS:  Good afternoon.

22            Joel Klevens for the defendants.

23            THE COURT:  Good afternoon.

24            Okay.  Why don't I start with the moving party.

25            Counsel?
```

13:40:18 (line 5)
13:40:31 (line 10)
13:40:41 (line 15)
13:40:52 (line 20)
13:41:02 (line 25)

**ER0070**

1          MR. CAMBRIA:  Yes, your Honor.

2          THE COURT:  Would you like to be heard?

3          MR. CAMBRIA:  I do.

4          THE COURT:  Go ahead.

13:41:19 5          MR. CAMBRIA:  Your Honor, we have a, as you know, a

6    motion for a preliminary injunction; and we also have filed a

7    motion which is not returnable today with regard to the

8    interveners and their status in the case.  It is our position

9    that they do not have standing and their pleadings should not

13:41:31 10   be considered.  They should be struck.

11          THE COURT:  I understand that.  I think that issue

12   is well briefed though.  So let's go on to the next issue.

13          MR. CAMBRIA:  Okay.  Your Honor, we believe that a

14   preliminary injunction should be issued in this case because

13:41:51 15   this statute is unconstitutional for a number of reasons.  It

16   begins by the fact that it deals with expression.  It deals

17   with the first amendment.  It is a content-based statute.  I

18   say that because when we look at the definition -- and

19   again --

13:42:12 20          THE COURT:  I agree that it's a content-based

21   statute.

22          MR. CAMBRIA:  Thank you.

23          THE COURT:  Just as the case in Renton was a

24   content-based statute.  So I agree with you.  It's more than

13:42:22 25   likely a content-based statute.  I think the issue then is

1    for where the focus is and what is the expression.

2        MR. CAMBRIA:  First of all, the expression that

3    we're dealing with here is of course all the machinations of

4    making movies and whether or not this statute in some way

13:42:52 5    dictates the content of the movies, which it does.

6        It indicates that individuals cannot be portrayed

7    as having sexual relations of a defined nature in the statute

8    unless they're wearing condoms, which of course effects the

9    content of the film and the expression that the producer may

13:43:11 10    want to portray.

11        THE COURT:  Well, why is the expression -- I

12    understand it in terms of copyright how would you

13    characterize the set, the lighting, the camera -- all of that

14    as being protectable, but in the First Amendment context we

13:43:31 15    focus on the message.

16        MR. CAMBRIA:  And it dictates the story line, your

17    Honor, because it says that a producer is not in a position

18    to create a movie which shows sex without condoms and it

19    forbids that.

13:43:42 20        And indeed so that's one portion of it.  So that

21    also dictates even if someone says, "Well, you can edit that

22    out," then that dictates how they should edit the piece as

23    well.

24        THE COURT:  Sure.  But a dancer in an adult

13:44:02 25    nightclub has been required -- and those statutes have been

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    CV 13-00190 DDP (AGRx)                    Date    July 11, 2013

Title    VIVID ENTERTAINMENT, LLC; et al. -V- JONATHAN FIELDING, et al.

Present: The Honorable    DEAN D. PREGERSON, U.S. DISTRICT JUDGE

| John A. Chambers | Leandra Amber | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

H. Louis Sirkin
Paul J. Cambria , Jr

Attorneys Present for Defendants:

Joel N. Klevens

Attorneys Present for the Interveners:

Samantha Robin Azulay
Christina Yang

Proceedings:

MOTION FOR PRELIMINARY INJUNCTION FILED BY PLAINTIFF CALIFA PRODUCTIONS, INC., JANE DOE A/K/A KAYDEN KROSS, JOHN DOE A/K/A LOGAN PIERCE, AND VIVID ENTERTAINMENT, LLC  (DOCKET NUMBER 39)
MOTION TO DISMISS CASE FILED BY INTERVENORS CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION, ARLETTE DE LA CRUZ, WHITNEY ENGERAN, MARIJANE JACKSON, MARK MCGRATH, MICHAEL WEINSTEIN (DOCKET NUMBER 49)
MOTION FOR PRELIMINARY INJUNCTION
(DOCKET NUMBER 55)

Court hears oral argument and takes the matters under submission.

| | 1 hour | : | 14 mins. |
|---|---|---|---|

Initials of Preparer    JAC

ER0073

PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES <br><br> Defendants. | Case No. **CV 13-00190 DDP (AGRx)** <br><br> Assigned to the Hon. Dean D. Pregerson <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF COURT'S ORDER OF APRIL 16, 2013 (DOCKET NO. 44); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: August 12, 2013 <br> Time: 10:00 a.m. <br><br> Courtroom 3 <br><br> Action Filed: January 10, 2013 |

ER0074

1  *Additional counsel for Plaintiffs:*

2  JANET L. GRUMER (State Bar No. 232723)
       janetgrumer@dwt.com
3  MATTHEW D. PETERSON (State Bar No. 251490)
       matthewpeterson@dwt.com
4  DAVIS WRIGHT TREMAINE LLP
5  865 South Figueroa Street, Suite 2400
   Los Angeles, CA  90017-2566
6  Telephone: (213) 633-6800

7
   H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
8      HLS@santen-hughes.com
   Santen & Hughes LPA
9  600 Vine Street, Suite 2700
   Cincinnati, OH 45202
10 Telephone: (513) 721-4450

11
   ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
12     bobcornrevere@dwt.com
   RONALD G. LONDON (*Admitted Pro Hac Vice*)
13     ronnielondon@dwt.com
   DAVIS WRIGHT TREMAINE LLP
14 1919 Pennsylvania Avenue, NW, Suite 800
   Washington, DC 20006
15 Telephone: (202) 973-4200

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR RECONSIDERATION

1

ER0075

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, August 12, 2013, at 10:00 a.m., before the Honorable Dean Pregerson, in Courtroom 3, 2nd Floor, located at 312 N. Spring Street, Los Angeles, CA 90012, Plaintiffs, Vivid Entertainment Group, Califa Productions, Inc., and Jane Doe and John Doe, also known professionally as, respectively, Kayden Kross and Logan Pierce, will and hereby do move this Court for reconsideration of its order of April 16, 2013, granting the Motion to Intervene filed by Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation ("Intervenors") (Docket No. 44).

Reconsideration is proper under Fed. R. Civ. P. 60(b) and Local Rule 7-18(a) because the Supreme Court clarified the law and explained that proponents of a ballot initiative, like Intervenors here with Measure B, "have no 'personal stake' in defending its enforcement … distinguishable from the general interest of every citizen of California," and thus lack standing under Article III of the United States Constitution. *Hollingsworth v. Perry*, 570 U.S. ___, No. 12-144 (2013) (slip op., at 8). *See also id*. at 9-10, 16-17 ("We have never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to."). Accordingly, Intervenors do not have standing and cannot remain parties to this action. In addition, the pleadings and motions filed by Intervenors must be vacated. Finally, Plaintiffs' Motion for Judgment on the Pleadings (Docket No. 37), which was vacated upon Intervenors being granted party status (Docket Nos. 44, 46), should be reinstated.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all other records and files in this action, and upon such further oral and/or documentary matters as may be presented to this Court at or before the hearing on this motion.

MOTION FOR RECONSIDERATION

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0076

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on June 27, 2013.

DATED: July 5, 2013

LIPSITZ GREEN SCIME CAMBRIA LLP
PAUL J. CAMBRIA, JR.

SANTEN & HUGHES LPA
H. LOUIS SIRKIN

DAVIS WRIGHT TREMAINE LLP
ROBERT CORN-REVERE
RONALD G. LONDON
JANET L. GRUMER
MATTHEW D. PETERSON

By:          /s/ Matthew D. Peterson
                  Matthew D. Peterson

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC;
CALIFA PRODUCTIONS, INC.;
JANE DOE a/k/a Kayden Kross; and
JOHN DOE a/k/a Logan Pierce

MOTION FOR RECONSIDERATION

ER0077

PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES <br><br> Defendants. | Case No. **CV 13-00190 DDP (AGRx)** <br> Assigned to the Hon. Dean D. Pregerson <br><br> **PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY AND NOTICE OF INTENT TO FILE MOTION FOR RECONSIDERATION OF RULING ON MOTION TO INTERVENE (DOCKET NO. 44)** <br><br> Action Filed: January 10, 2013 |

ER0078

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

NOTICE OF SUPPLEMENTAL AUTHORITY

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0079

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that attached hereto as Exhibit A is supplemental authority that bears on Intervenors' standing to proceed as a party in this action, to wit, the Supreme Court's decision in *Hollingsworth v. Perry*, No. 12-144 (U.S. June 26, 2013). ). In *Hollingsworth*, the Court holds that the proponents of ballot initiatives, like Intervenors here with Measure B, "have no 'personal stake' in defending its enforcement … distinguishable from the general interest of every citizen of California" and thus lack Article III standing. Slip op. 8. *See also id.* at 9-10, 16-17 ("We have never before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to.").

The decision in *Hollingsworth* bears not only on the Court's grant of Intervenors' Motion to Intervene (Docket No. 44), but also on the pending Intervenors' Motion to Dismiss (Docket No. 49) and Plaintiffs' Motion for Preliminary Injunction (Docket No. 55), which Intervenors opposed but Defendants did not. All courts have an obligation to ensure standing and jurisdiction at all stages of a case. *See Hollingsworth*, Slip Op. 6 ("Article III demands that an 'actual controversy' persist throughout all stages of litigation."); *see also*, *e.g.*, *Bashkin v. Hickman*, 2008 WL 183696, at *7 (S.D. Cal. Jan. 17, 2008) ("Court has a continuing duty to examine its own jurisdiction to grant relief").

PLEASE TAKE FURTHER NOTICE that Plaintiffs Vivid Entertainment, LLC, Califa Productions, Inc., Jane Doe a/k/a Kayden Kross and John Doe a/k/a Logan Pierce (collectively "Plaintiffs") intend to file a motion for reconsideration of the Court's ruling on Intervenors' Motion to Intervene (Docket No. 44), in light of

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0080

the Supreme Court's ruling in *Hollingsworth*, after attempting to meet and confer with Intervenors on the proposed motion.


DATED: June 26, 2013          LIPSITZ GREEN SCIME CAMBRIA LLP
                              PAUL J. CAMBRIA, JR.

                              SANTEN & HUGHES LPA
                              H. LOUIS SIRKIN

                              DAVIS WRIGHT TREMAINE LLP
                              ROBERT CORN-REVERE
                              RONALD G. LONDON
                              JANET L. GRUMER
                              MATTHEW D. PETERSON


                              By:_____/s/ Matthew D. Peterson_____
                                       Matthew D. Peterson

                              Attorneys for Plaintiffs
                              VIVID ENTERTAINMENT, LLC;
                              CALIFA PRODUCTIONS, INC.;
                              JANE DOE a/k/a Kayden Kross; and
                              JOHN DOE a/k/a Logan Pierce

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0081

Slip Opinion in *Hollingsworth v. Perry* omitted

PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC;<br>CALIFA PRODUCTIONS, INC.;<br>JANE DOE a/k/a Kayden Kross;<br>and JOHN DOE a/k/a Logan Pierce,<br><br>        Plaintiffs,<br><br>    vs.<br><br>JONATHAN FIELDING, Director of<br>Los Angeles County Department of<br>Public Health, JACKIE LACEY, Los<br>Angeles County District Attorney, and<br>COUNTY OF LOS ANGELES<br><br>        Defendants. | ) Case No. **CV 13-00190 DDP (AGRx)**<br>)<br>) **PLAINTIFFS VIVID ENTER-**<br>) **TAINMENT, LLC'S, CALIFA**<br>) **PRODUCTIONS, INC.'S,**<br>) **JANE DOE A/K/A KAYDEN**<br>) **KROSS'S, AND JOHN DOE**<br>) **A/K/A LOGAN PIERCE'S REPLY**<br>) **IN SUPPORT OF MOTION FOR**<br>) **PRELIMINARY INJUNCTION**<br>)<br>) Date:     July 1, 2013<br>) Time:    10:00 a.m.<br>) Crt. Rm.:  3<br>)<br>) |

ER0083

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA  90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S  FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0084

maker's ability depict all sorts of fire and explosions, as long as fire safety require-
ments are met. *See* Intvrs RJN Exs. D, E.[3] Conversely, in order to maintain the
permit required by Measure B, adult film producers and performers must limit the
content in their films, insofar as they absolutely may not film an act of anal or
vaginal penetration without barrier protection. Intervenors effectively admit this
content-based restriction when they claim condom-less sex could be simulated or
digitally depicted instead. Motion to Dismiss (Dkt. 49) ("MTD") at 11:16-18. The
cited ordinances also do not contain anything similar in scope or breadth to Measure
B's permitting, inspection, search-and-seizure, permit suspension and revocation, or
civil- and criminal-punishment provisions. Nor do they suffer Measure B's numer-
ous facial infirmities, including vagueness, over- and under-inclusiveness, and
constitutional violations discussed in the Motion and herein.[4]

Intervenors cannot avoid Measure B's constitutional and other infirmities
by arguing that it imposes no new restrictions on Plaintiffs. They make much of
the argument that Cal/OSHA regulations may already require the use of condoms,
claiming repeatedly and in italics, that there can thus be no First Amendment harm to
this county-wide redundancy. *E.g.*, Opp. at 1:8-11; 7:22-28. But Intervenors' own
efforts to distinguish Measure B from Cal/OSHA regulations show the fallacy of this
position. Intervenors explain that "Measure B [is] not coextensive with" Cal/OSHA,
because "Measure B applies to all persons, regardless of employment relationship,"

---

[3] Filmmakers can even blow up whole, actual buildings, which negates Inter-
venors' reliance on pyrotechnic regulations (Opp. at 5:11-6:2). *See, e.g.*, Cindy
Ramirez, *El Paso City Hall Demolition: From Hollywood to Historic, Firm Topples
Towers Nationwide*, El Paso Times, Apr. 7, 2013, 2013 WLNR 8461526; *Holy
Fireballs, Batman! The Hospital Exploded*, Chi. Trib., Aug. 30, 2007, at 8, 2007
WLNR 17035465.

[4] Intervenors' reference to "undefined" terms in Los Angeles County's condi-
tional use permit regulations is unavailing. Opp. at 4:27-5:1. If those "undefined"
requirements are imposed in a content-based manner and/or restrict impermissibly
what may be filmed, an as-applied constitutional challenge would lie at that time;
here, Measure B does that in <u>all</u> applications, and is thus invalid on its face.

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0085

Opp. at 20:18, and claim (incorrectly) that "Cal OSHA jurisdiction only extends to a relationship between employee and employer," while "independent contractors are not subject to Cal OSHA jurisdiction." *Id.* at 19:12-15.[5] They also explain that "Measure B's training encompasses owners … and management-level employees, regardless whether … they are exposed to blood-borne pathogens," yet recognize that, "most if not all owners and mid-level employees [of adult-film producers] are not performers, and therefore will not be exposed." *Id.* at 20:20-25. Intervenors further explain that Measure B's exposure control plan requirement is broader than Cal/OSHA's, (*id.* at 20:26-21:2), and admit that Measure B's "permit and posting requirements . . . have no analog in the Cal OSHA regulations." *Id.* at 20:25-26.

In short, the existence of the Cal/OSHA regulations defeats both Intervenors' asserted justification for Measure B and its constitutional defense. Intervenors cannot show a significant governmental interest where an existing, less restrictive measure is in place. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000) ("If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."). Moreover, Intervenors actively undermine their assertion that Measure B would have any positive health benefit whatsoever by repeatedly stating that filmmakers need only cross the county line to film all the condom-less sex they want. *Brown v. Entertainment Merchs. Ass'n*, 131 S. Ct. 2729, 2740 (2011) (invalidating regulation as under-inclusive); *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489 (1995) (speech regulation is invalid even under intermediate scrutiny where it has numerous exemptions and inconsistencies). And, despite such a weak justification for the ordinance, Intervenors ask this Court to affirm a far more draconian regulatory scheme that – by their own admission – is far different from Cal/OSHA rules, because Measure B applies more broadly (albeit only locally) and

---

[5] As discussed *infra*, at 20, this is an incorrect statement of the extent of Cal/OSHA's applicability, as the regulations do apply to independent contractors.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0086

requires advance permission to engage in activity protected by the First Amendment. It may well be that Cal/OSHA requirements also raise some First Amendment problems as applied, *see infra* note 15, but Measure B's prior restraint scheme is unconstitutional on its face.

All of this, along with the above block-quoted concession how Measure B uniquely targets a specific industry based on its speech, not only illustrates vividly how Measure B regulates protected expression, in ways far exceeding any regulation of general application, including Cal/OSHA, it explains Plaintiffs' First Amendment concerns, and their right to injunctive relief notwithstanding Cal/OSHA regulations that operate in some of the same areas.

### III. MEASURE B IS CONTENT BASED

The language of Measure B itself belies any claim that "Measure B is not a content-based restriction" and "does not restrict speech," Opp. § III.B, as do Intervenors' admissions on how adult filmmakers "may still create films," provided they do so as Measure B requires. *Id.* at 22:12-14. At the outset, as noted in one case on which Intervenors rely heavily, "[w]hether a statute is content neutral or content based … can be determined on the face of it; if the statute describes speech by content then it is content based." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1071 (9th Cir. 2006) (internal quotation marks and citation omitted) (cited Opp. at 7:4-7, 9:22-25, 10:3-6, 15:10-12); *see also Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) ("A regulation is content-based if … by its very terms, [it] singles out particular content for differential treatment.").[6] Here, Measure B describes speech – specifically, "adult film" – in terms of content, *i.e.*, that in which

---

[6] Even to the extent one test of whether a law is content based is whether it "was adopted out of disagreement with a message sought to be conveyed" (Opp. at 7:4-7), the Motion offers evidence that just such a disagreement exists (*see* Mot. at 15 n.13 & accompanying text). In any event, this is but one way to tell if a regulation is content based – the fact that it targets specific content on its face, as in *G.K. Ltd. Travel* and *Berger*, cited above, is far more telling.

REPLY ISO MOTION FOR PRELIMINARY INJUNCTION

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0087

deliberation, [] dynamic dialog with the City's residents and businesses[,] extensive hearings," and "reliance on the experience of other cities." 436 F.3d at 1073. None of these occurred with respect to Measure B.

Intervenors offer a letter from the Los Angeles County Department of Public Health to support the interests underlying Measure B, on the asserted grounds that the rate of STD infection for performers in adult films depicting actual sex acts is higher than among the general population, and that "STDs contracted during the making of adult films can be and are transmitted to other residents of Los Angeles County." Opp. at 1:16-25 (citing Intvrs RJN, Ex. A). But Intervenors offer no explanation for their claim that the rate of STD infection of adult film performers is higher than that in the general population. This assertion is hardly surprising given that adult film performers are the most consistently tested and reported population when it comes to STD testing, and it may simply reflect that reporting is more complete in this part of the population. And – tellingly – the risk to the general population that Intervenors claim appears nowhere in the portions of the County letter to which Intervenors cite (or elsewhere therein).

Most importantly, Intervenors do not demonstrate how the small segment of the population they seek to regulate affects public health generally in any meaningful way. Los Angeles County recently posted a "Five-Year Comprehensive HIV Plan" that does not even mention "adult films," "pornography," or any other activity that Measure B targets. *See* http://ph.lacounty.gov/aids/docs/LAC_FiveYear_Compre-hensiveHIVPlan2013-2017.pdf. If the spread of STDs among and/or by adult film performers played *any* significant role in the incidence of HIV in the County, one would think it would warrant at least a mention in the Plan. Rather, the goal of the Plan appears to be more testing and screening of the general population. In other words, exactly what the adult film industry already does for its participants. *See* Hirsch Decl. ¶¶ 8-17; Kross Decl. ¶¶ 5-6. Significantly, though Intervenors raise

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0088

certain evidentiary objections regarding the proffer of information on this point,[8] they do not dispute the underlying facts relating to the industry's testing protocols.

Intervenors undercut their own position regarding the STD-prevention interests underlying Measure B, *see* Opp. at 1:16-19, by claiming Plaintiffs can avoid First Amendment injury by simply creating adult films in a place other than Los Angeles County. *Id.* at 11:3-6, 22:22-23, 24:9-11. This argument makes clear that Measure B has ***no*** public health benefit, even accepting Intervenors' (incorrect) claims about transmission of STDs in adult films. Simply forcing adult film producers to transport any supposedly infected performer(s) to another county, and film them there, after which they return to Los Angeles County to intermingle with those in the general population – just as they would have had they shot in Los Angeles County – produces no tangible health benefits. Thus, Measure B serves no governmental interest. Though they try to have it both ways, it seems Intervenors are more correct in their claim that Measure B is *not* a safety and health standard. Opp. at 19 n.8. *Compare id*., *passim*. In any event, Measure B cannot withstand either strict or intermediate scrutiny, and Intervenors do not even attempt to show that it does.

Even assuming that Measure B is not content-based, it is not a narrowly tailored time, place and manner regulation. Opp. § III.C. Even if, for purposes of argument, Measure B need not be the least restrictive alternative, it still may not "unnecessarily impose[] significant burdens on First Amendment-protected speech." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 950 (9th Cir. 2011) (citing *Thompson v. Western States Med. Ctr.*, 535 U.S. 357, 373 (2002) ("If the First Amendment means anything, it means that regulating speech must be a last – not first – resort.")), *cert. denied*, 132 S. Ct. 1566 (2012). Putting aside that the "secondary effects" analysis Intervenors appear to rely on (Opp. at

---

[8]  *See* Intervenors' Objections to Evidence Supported in Support of Plaintiffs' Motion for Preliminary Injunction, Dkt. 57-1. *But see also infra* note 19.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0089

Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450
*Attorneys for Intervenors*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,<br><br>Plaintiffs,<br><br>vs.<br><br>JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES,<br><br>Defendants, and<br><br>MICHAEL WEINSTEIN, MARIJANE JACKSON, ARLETTE DE LA CRUZ, MARK MCGRATH, WHITNEY ENGERAN, and the CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION<br><br>Defendants-Intervenors. | Case No.: 13-CV-00190-DDP-AGR<br><br>**INTERVENORS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      July 1, 2013<br>Time:      10:00 a.m.<br>Judge:     Dean D. Pregerson<br>Location:  Courtroom 3<br><br>*[Filed concurrently with Opposition to Plaintiffs' Motion for Preliminary Injunction; Objections to Plaintiffs' Evidence in support of Motion for Preliminary Injunction]* |

INTERVENORS' REQUEST FOR JUDICIAL NOTICE ISO OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ER0090

Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation (collectively referred to as "Intervenors") respectfully request that this Court take judicial notice of the items listed below.

Judicial notice is appropriate where the fact is not subject to reasonable dispute because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Judicial notice by a court is mandatory "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). Therefore, Intervenors request that the Court take judicial notice of the following items:

1. A letter from Dr. Jonathan E. Fielding to each Supervisor of the County of Los Angeles, regarding "Adult Film Industry," dated September 17, 2009. A true and correct copy of this document is attached hereto as Exhibit A.

2. Measure B, Title 11, Division 1, Chapter 11.39 of the Los Angeles County Code. A true and correct copy of this document is attached hereto as Exhibit B.

3. Los Angeles County Code § 22.56.1830 *et seq.* A true and correct copy of these code sections is attached hereto as Exhibit C.

4. Los Angeles County Code, Title 32, § 101.1 *et seq.* ("Los Angeles Fire Code"). A true and correct copy of relevant portions of this code is attached hereto as Exhibit D.

5. California Fire Code § 4801 *et seq.* A true and correct copy of these code sections is attached hereto as Exhibit E.

6. Los Angeles Municipal Code § 12.22.1, "Safer Sex." A true and correct copy of this document is attached hereto as Exhibit F.

INTERVENORS' REQUEST FOR JUDICIAL NOTICE ISO OPPOSITION TO PLAINTIFFS' MOTION FOR **ER0091**
PRELIMINARY INJUNCTION

7.   A letter from James D. Clark, Staff Counsel, California Division of Occupational Safety and Health ("Cal/OSHA"), to the City Council of the City of Los Angeles, regarding the subject "Position of the California Division of Occupational Safety and Health Concerning Possible Conditions on the City's Film Permits Issued to Adult Film Producers," dated July 20, 2011.  A true and correct copy of this document is attached hereto as Exhibit G.

8.   A news article from CNBC, by Chris Morris, dated Jan. 15, 2013, *available at* http://www.cnbc.com/id/100359796.  A true and correct copy of this document is attached hereto as Exhibit H.

9.   A news article from CBS News, by CBS/AP, dated June 5, 2013, *available at* http://www.cbsnews.com/8301-504083_162-57587791-504083/porn-star-syphilis-case-jesse-spencer-aka-mr-marcus-sentenced-to-jail-for-knowingly-exposing-co-stars-to-disease-prosecutors-say/.  A true and correct copy of this document is attached hereto as Exhibit I.

Requests to take judicial notice of government documents and records generally are granted.  *See, e.g.*, *Lopez v. Wachovia Mortg.*, 2010 U.S. Dist. LEXIS 72439, at *5-6 (N.D. Cal. July 19, 2010) (taking judicial notice of documents that were public records and government documents, because they were not subject to reasonable dispute); *Carroll v. Yates*, 2013 U.S. Dist. LEXIS 2321, at *19-20 (E.D. Cal. Jan. 4, 2013) (granting judicial notice of government document, as it was issued by a government agency and the document was a public record); *Gens v. Wachovia Mortg. Corp.*, 2010 U.S. Dist. LEXIS 54932, at *6-7 (N.D. Cal. May 12, 2010) (taking judicial notice of letter issued by government agency, as it complied with the requirements of Rule 201(b)(2) of the Federal Rules of Evidence).

ER0092

Taking judicial notice of codes, regulations, and ordinances is proper.  *See Cuviello v. City & County of San Francisco*, 2013 U.S. Dist. LEXIS 53656 (N.D. Cal. Apr. 15, 2013) (taking judicial notice of city code section and ordinance); *MM v. San Ramon Valley Unified Sch. Dist.*, 2013 U.S. Dist. LEXIS 57395 (N.D. Cal. Apr. 22, 2013) (taking judicial notice of specific division of state code of regulations); *Tollis v. County of San Diego,* 505 F.3d 935, 938 n.1 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice.").

The Court may also take judicial notice of news articles.  *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458-459 (9th Cir. 1995) (proper to take judicial notice of newspaper article that reflecting fact "generally known in Southern California and which would be capable of sufficiently accurate and ready determination"); *see also Patel v. Parnes,* 253 FRD 531, 549 (C.D. Cal. 2008) (trial court took judicial notice of news articles regarding corporate officers' stock in corporation and corporate activities).

Further, Courts in the Ninth Circuit routinely grant judicial notice of press releases.  *See, e.g., In re Netflix, Inc. Securities Litig.,* 2005 U.S. Dist. LEXIS 30992, *5-6 (N.D. Cal. Nov. 18, 2005); *In re Ligand Pharmaceuticals, Inc. Securities Litig.,* 2005 U.S. Dist. LEXIS 44911, 2005 WL 2461151, *2 n. 1 (S.D. Cal. Sept. 27, 2005); *In re Homestore.com. Inc. Sec. Litig.,* 347 F. Supp. 2d 814, 816-17 (C.D. Cal. 2004).

//
//
//
//
//
//
//
//

For the foregoing reasons, Intervenors respectfully request that this Court take judicial notice of Exhibits A through I, as attached hereto.

Respectfully Submitted,

DATED:  June 10, 2013                    INTERVENORS


By:/s/ Samantha R. Azulay
      TOM MYERS
      SAMANTHA R. AZULAY
      CHRISTINA YANG
      *Attorneys for Intervenors*

# Exhibit A

ER0095



COUNTY OF LOS ANGELES
# Public Health

JONATHAN E. FIELDING, M.D., M.P.H.
Director and Health Officer

JONATHAN E. FREEDMAN
Chief Deputy Director

313 North Figueroa Street, Room 708
Los Angeles, California 90012
TEL (213) 240-8156 • FAX (213) 481-2739

www.publichealth.lacounty.gov

BOARD OF SUPERVISORS

Gloria Molina
First District

Mark Ridley-Thomas
Second District

Zev Yaroslavsky
Third District

Don Knabe
Fourth District

Michael D. Antonovich
Fifth District

September 17, 2009

TO:        Each Supervisor

FROM:    Jonathan E. Fielding, M.D., M.P.H. *Jonathan E Fielding*
           Director and Health Officer

SUBJECT:    **ADULT FILM INDUSTRY**

This is to provide you with an update on the Department of Public Health's (DPH) activities to investigate and address sexually transmitted disease related to the adult film industry (AFI). This is an update to our June 19, 2009 memo.

As outlined in this report, DPH has taken action to address sexually transmitted disease (STD) and HIV in the AFI, and continues to monitor and take action on AFI-related disease cases. DPH, in conjunction with County Counsel, has also explored expanded local regulatory strategies, however these methods have substantial implementation and enforcement challenges, are likely to be only partially effective because the industry extends beyond the reach of Los Angeles County, and may possibly be subject to legal challenge. Consequently, DPH continues to recommend State legislation to increase surveillance of occupational exposures, enhanced penalties and enforcement of condom use in the AFI.

## Background

Working conditions in the AFI typically involve a worker having unprotected, prolonged and repeated sexual intercourse with multiple sexual partners over short periods of time, increasing the likelihood of transmission of sexually transmitted diseases including HIV. Since 2003, DPH has monitored the AFI by: working with health-related organizations associated with the industry to enhance education and outreach in the adult film industry to prevent HIV and other STDs; collaborating with Cal/OSHA to develop guidelines to reduce disease exposure in the AFI and request workplace investigations; and working with County Counsel, the CEO and County legislative advocates to support State legislation to implement regulations to ensure protection of workers in this industry.

**ER0096**

Each Supervisor
September 17, 2009
Page 2


## STD and HIV in the Adult Film Industry

The Adult Industry Medical (AIM) Healthcare Foundation and Talent Testing Services are organizations which provide STD and HIV screening and limited medical care to individuals working in the AFI and are required by law to report cases of HIV and STDs to DPH.

Since 2004 DPH received reports of 2,396 cases of Chlamydia (CT), 1389 cases of gonorrhea (GC), and five syphilis cases among AFI performers; 20.2% of performers diagnosed with STD had one or more repeat infections within a one year period. Between 2004 and 2008, repeat infections were reported for 25.5% of individuals. Due to the failure to routinely screen for rectal and oralpharyngeal infections, a sustained high level of endemic disease among AFI workers persists. Furthermore, these disease rates and reinfection rates are likely to be significantly underestimated as rectal and oral screening is not done routinely and these anatomic sites are likely to be a reservoir for repeat reinfection.

Analyses of 2008 data also indicated that AFI performers experience significantly higher rates of infection (20%) than the general public (2.4%) or in the area of the County (SPA 6) experiencing the highest rates of STDs (4.5%).

Data is less clear for HIV since occupation is not reported in HIV/AIDS reports. Since 2004, AIM has reported 25 cases of HIV. However, it is difficult to confirm the number of actual performers infected with HIV/AIDS as not all those tested are current performers and may have other roles in the AFI, or are partners of an AFI performer, or may otherwise be referred to AIM for testing. AIM claims that a minority of the 25 cases are performers, but even if this is accurate, it is reasonable to assume that some of the remaining 25 infected individuals were tested because they wished to work in the AFI in Los Angeles or were partners of AFI performers.

## DPH Activities in Addressing the STD and HIV in the AFI

In addition to its role in surveillance, DPH has taken several actions to address these public health issues in the AFI including:

- Worked with Cal/OSHA to develop a model Exposure Control Plan applicable to this industry based on existing standards, in Title 8, California Code of Regulations, specifically including the Injury and Illness Prevention Program standard (Section 3203), and the Bloodborne Pathogens standard (Section 5193).

- Following development of the model Exposure Control Plan, initiated discussion with the State Labor and Workforce Development Agency to develop educational outreach plans and materials for both producers and performers.

- In May 2004, secured technical assistance from the National Institute of Occupational Safety and Health (NIOSH), to investigate workplace hazards in this industry, and issue recommendations.

ER0097

Each Supervisor
September 17, 2009
Page 3

- In June 2004, testified before a California Assembly Committee in support of legislation to regulate the AFI to (1) require condom use for all high risk sexual encounters; (2) have screening requirements for STDs set by the state with screening costs paid by the industry, and offer vaccinations for appropriate preventable conditions; (3) mandate education and training of all adult film industry performers; and (4) assure monitoring to ensure compliance by state and local health departments paid for by the industry.

- Conducted periodic dialogue with producers and performers in both straight and gay male roles of the industry, as well as with other relevant agencies, including the California Department of Health Services, STD Control Program and the State Office of AIDS to better understand health and safety issues in this industry, and develop appropriate screening recommendations and interventions. During these meetings, DPH has consistently asserted that it is the responsibility of the industry to require male performers to wear condoms to minimize risk of preventable serious illness.

- Requested Cal/OSHA conduct investigations of recent incidents of presumed workplace infection with STDs and HIV. Between April 2004 and June 2009 nine requests were made to Cal/OSHA for investigations of presumed workplace STD infections. Although two of these cases are pending, the completed investigations resulted in ten violations.

- Initiated investigations, as needed, seeking to determine the extent of potential exposure and actual disease transmission.

- DPH offered additional HIV and STD testing services to performers, provided counseling and medical referrals for those performers who were infected with HIV, and offered partner contact and referral services to their private sex partners.

It has been the consistent position of the Department that screening alone is insufficient to prevent STDs and HIV/AIDS. Screening can only detect infection and while it is vital for containing new or existing infections, there are other preventive measures that should be employed in the AFI such as condom use and hepatitis B vaccination.

### Additional Local Regulatory Measures to Address STD and HIV in the AFI

DPH has explored whether expanded local regulation of the AFI can be used to reduce exposure to STD and HIV. Our consultations with County Counsel have yielded the following approaches that could be used.

Health Officer Order: County Counsel has determined that existing health officer authority may be used to set health protection requirements on adult film production companies to protect performer health. In order to utilize health officer authority, a detailed written order would need to be served on all necessary parties outlining the nexus between the behavior and spread of disease within the industry.

ER0098

Each Supervisor
September 17, 2009
Page 4

DPH would then need to develop a mechanism to monitor compliance with the order, and enforcement of the order would require proof of service of the order on parties and evidence of an alleged violation. Violation of the order could be prosecuted by the District Attorney as a misdemeanor. A County health officer order would not apply to Long Beach and Pasadena, as they are separate public health jurisdictions.

County Code: County Counsel has also indicated that County Code could be amended to set requirements on the AFI. This approach could be similar to the County Code requirements on Commercial Sex Venues and require AFI production firms to secure a public health permit to operate.

The public health permit would be conditioned upon the entity's adherence to preventive measure requirements.

Similar to the health officer order approach, DPH would then need to develop a mechanism to monitor compliance with the order. Compliance time frames and penalties would need to be specified in the Code. This approach would be applicable in the unincorporated areas of the County and in those cities which adopt the County ordinance, and would not apply to Long Beach and Pasadena.

**Challenges with Local Regulatory Approaches**

Both the health officer order and the County Code amendment have inherent implementation challenges that would severely limit either approach in controlling STDs and HIV in the AFI. Under a health officer order approach the noticing requirements would be administratively challenging and resource intensive. There are an estimated 200 production companies in Los Angeles County, employing approximately 1,200 workers who engage in direct work-related sexual contact. Filming locations are difficult to ascertain, usually taking place at private homes or, to a lesser degree, in small film studios. Producers planning a film recruit performers independently or may use a talent agency to identify performers for their films. Performers are usually hired as independent contractors (not employees) for a specific film. Although there are regulations that require permits for filming, productions in homes or short term rental commercial space is often completed without permit. In addition, the fixed assets for filming in the AFI are limited and it is easy to change locations or move production to another county. Due to these factors, it is likely that there would be a high degree of non-compliance with a regulatory County Code approach.

Further, with either approach DPH would need to devote significant staff resources to identify sites of the production companies and to monitor compliance with performer protection requirements. This would likely also entail the viewing of commercial AFI video productions to ascertain compliance, assuming we could identify who produced each film, when it was produced and where it was shot. The staff resources that would be needed for this have not been determined, but would require significant new funding to accomplish.

In addition to these practical challenges, County Counsel indicates that an expanded local regulation of the AFI, would likely face constitutional challenge on freedom of speech grounds. The outcome of such a legal challenge could not be predicted with certainty.

ER0099

Each Supervisor
September 17, 2009
Page 5


**Conclusion and Next Steps**

DPH has taken an active role in addressing STDs and HIV in the AFI including disease investigation, surveillance, and outreach and education efforts to reduce the risk of infection. At present, DPH monitors AFI-related STDs and HIV cases, takes action to investigate cases of disease, and makes referral to Cal/OSHA, which has subpoena power and can impose penalties, for further investigation and action with respect to workplace safety violations.

A health officer order or a new requirement in County Code will be difficult to implement and resource intensive, possibly subject to legal challenge, and, overall, unlikely to be an effective approach to prevent AFI performers from acquiring preventable STDs including those that are life-altering.

The best scenario would entail expanded statutory requirements on the AFI. The County has supported these efforts in the past, but none of the legislative proposals have been successful. DPH recommends the Board sponsor or support measures to strengthen penalties and enforce condom use related to the AFI in the upcoming legislative session.

If you have any questions or need additional information, please let me know.

JEF:lm

c:    Chief Executive Officer
      Acting County Counsel
      Executive Officer, Board of Supervisors

ER0100

Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450
*Attorneys for Intervenors*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES, <br><br> Defendants, and <br><br> MICHAEL WEINSTEIN, MARIJANE JACKSON, ARLETTE DE LA CRUZ, MARK MCGRATH, WHITNEY ENGERAN, and the CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION <br><br> Defendants-Intervenors. | Case No.: 13-CV-00190-DDP-AGR <br><br> **INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: July 1, 2013 <br> Time: 10:00 a.m. <br> Judge: Dean D. Pregerson <br> Location: Courtroom 3 <br><br> *[Filed concurrently with Request for Judicial Notice; Objections to Plaintiffs' Evidence in support of Motion for Preliminary Injunction]* |

ER0101

Like films that depict death without actually killing performers, Plaintiffs are free to make and sell a final product that depicts unprotected sex, if that is the message they seek to express. Further, because these films are viewed virtually everywhere, and the performance (unlike, say, a play or concert) is not location-specific, filmmakers who want to film sexual intercourse without using condoms can simply make their films in another place, **and then show those films in Los Angeles County.**[1] Alternative modes of communication need only be "ample" (*Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir. 1998), *amended on denial of rehearing*, 1998 U.S. App. LEXIS 17149, No. 97-16061 (9th Cir. 1998)), not equivalent or as subjectively desirable, nor (assuming Plaintiffs' objection to filming elsewhere is cost) as inexpensive as possible.[2] Plaintiffs have ample channels of communication, even with Measure B.

### D. Measure B Does Not Violate Plaintiffs' Due Process Rights.

Plaintiffs' due process argument – that training must occur before permits are issued,[3] and permits may be revoked for any alleged violation *prior to any notice or opportunity to be heard,* and that once a permit is suspended, Plaintiffs

---

[1] In fact, from Plaintiffs' evidence (London Decl., Ex. D), it appears Pierce is enthralled that he is flown to Spain for work (Dkt. 55-1 at p. 33), and Kross leaves

[2] In their declarations (Hirsch ¶¶ 24-32; Pierce ¶¶ 10-11; Kross ¶¶ 14-15), Plaintiffs make it clear that their primary concern is economic – viewers won't want to purchase films with condoms, and moving production out of Los Angeles will limit access to existing filmmaking infrastructure, such as "French Chateau" sets. However, the First Amendment does not require a government to ensure that a specific industry will be able to run their business at low costs; it requires that the government refrain from effectively denying operation of that business as a whole. *See Renton*, 475 U.S. at 54 ("we have never suggested that the First Amendment compels the Government to ensure that adult theaters, or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices"); *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 78 (1976) (the inquiry for First Amendment purposes is not concerned with economic impact).

[3] This is a misreading of Measure B – Section 11.39.080 expressly allows conditional permits, pending completion of training.

ER0102

The limitation reserved above is codified in Labor Code Section 144(e), which states that the preemptive reach of these laws is expressly limited only to explicit enforcement of Cal/OSHA's own regulations and standards:

> Nothing in this section shall affect or limit the authority of any state or local agency as to any matter *other than the enforcement of occupational safety and health standards adopted by the board*. . . .

As stated by Cal OSHA, "[t]he Legislature allows local safety action, other than explicit enforcements of the Division's own regulations.  It has done so in express and unambiguous terms." As also concluded by Cal OSHA, "[L]ocalities may adopt and enforce their own standards as long as long as that adoption is within the localities' police powers.  This is true even if the local standards could be construed as 'occupational safety and health standards.'"[8]

Finally, Cal OSHA jurisdiction only extends to a relationship between employee and employer; independent contractors are not subject to Cal OSHA jurisdiction.  Cal. Lab. Code Section 6307; RJN, Ex. G at p. 3.  By these express limitations on the scope of Cal OSHA jurisdiction, the legislature has made it clear that local regulation of local interests, even if they may have some impact on occupational health and safety, has not been preempted.

### 4.    There Is No Implied Preemption.

Plaintiffs' argument that the supposedly vast scope and range of Cal OSHA regulation implies preemption is easily addressed:

> The Legislature's 'preemptive action in specific and expressly limited areas weighs against an inference that preemption by implication was intended elsewhere.'In addition, and specifically pertinent here, "[p]reemption by implication of legislative intent may not be found when the Legislature has expressed its intent to permit local

---

[8] Plaintiffs' assertion that only Cal OSHA may adopt occupational safety and health standards (Cal. Lab. Code §142.3) is beside the point, as Measure B is not such a standard.

regulations. Similarly, it should not be found when the statutory scheme recognizes local regulations.'

*Big Creek Lumber*, 38 Cal.4th at 1157.

As in *Big Creek Lumber*, both bars to implied preemption exist here. The Labor Code limits Cal OSHA jurisdiction to employees and to enforcement of Cal OSHA standards. Likewise, the Labor Code expressly allows for local regulation of workplaces. There is no implied preemption.

### 5. Measure B Does Not Duplicate Or Contradict State Laws.

As a threshold matter, the doctrine of preemption by duplication does not apply to Measure B, as the doctrine is largely confined to state penal ordinances, due to double jeopardy concerns. *See Fireman's Fund Ins. Co. v. City of Lodi*, 2002 U.S. App. LEXIS 20999, at *71-72 (9th Cir. Aug. 6, 2002) (citing *Cohen v. Bd. of Supervisors*, 40 Cal. 3d 277, 475 n.12 (1985)).

Moreover, "[l]ocal legislation is 'duplicative' of general law when it is coextensive therewith." *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal. 4th 893, 897 (1993). There is not sufficient duplication; any requirements in Measure B are not coextensive with the requirements in 8 Cal. Code Regs. 5193. RJN, Ex. G at p. 3-4. Again, unlike Section 5193 which is limited only to employees, Measure B applies to all persons, regardless of employment relationship. Further, the training requirements of Section 5193 apply *only* to employees who are exposed to bloodborne pathogens (§ 5193(g)(2)(A)), while Measure B's training encompasses owners (who, by definition, are not employees) and management-level employees, regardless of whether or not they are exposed to blood-borne pathogens (indeed, most if not all owners and mid-level employees are not performers, and therefore will not be exposed) (Measure B, § 11.39.080(A)(1)).

Furthermore, the permit and permit posting requirements of Measure B (§§ 11.39.080, 11.39.090) have no analog in the Cal OSHA regulations. In addition, the exposure control plan required in Measure B (§ 11.39.150), while it

1    incorporates parts of the Cal OSHA regulations, must expressly set out and

2    describe how the plan will comply with the requirements of Measure B itself.

3        To the extent there may be overlap between Cal OSHA standards to protect

4    employee health, and Measure B's protection of public health and safety during

5    filmmaking, such overlap is allowable.  RJN, Ex. G at p. 3-4; *see also Big Creek*

6    *Lumber,* 38 Cal. 4th at 1159,1160 (localities may regulate impacts of logging, even

7    when state has regulated general conditions of logging:  "[l]ogging, even when

8    conducted  according to state regulations, may have *some* impacts properly

9    addressed by the [local] zoning authority. That the state has sought to reduce and

10   control these same occurrences through general regulation does not preempt local

11   zoning control, any more than the state and federal regulation of industrial air

12   pollution would preclude a local zoning authority from relying on air pollution as a

13   reason for excluding industrial plants from residential districts.").

14       Finally, there is nothing contradictory about the two laws.  A law is not

15   contradictory to another is if it is not "inimical" to it – in other words, "the

16   ordinance does not prohibit what the statute commands or command what it

17   prohibits."  *Sherwin-Williams*, 4 Cal. 4th at 902.  None of the requirements of

18   Measure B is inimical to or contradicts Cal/OSHA standards.

19       In sum, Section 5193 is a wide-ranging regulatory scheme regarding

20   bloodborne pathogen exposure and control, set out across all industries.  Measure

21   B, by contrast, is local regulation of filmmaking and public health that targets a

22   specific act in a specific industry, and directs specific persons not necessarily

23   covered by Section 5193, to take specific steps that are not necessarily required by

24   Section 5193.  The State of California specifically limited Section 5193's reach

25   and scope in order to allow local governments to regulate in this area.  There is no

26   preemption.

27   **J.    Plaintiffs Have Failed To Show That They Will Suffer Immediate**

28   **Irreparable Harm Absent Preliminary Injunctive Relief.**

---

ER0105

Plaintiffs attempt to establish that Measure B has caused them irreparable harm in two ways:  (1) their allegations of First Amendment violations require a presumption of irreparable harm, and (2) Plaintiffs cannot produce or perform in films in *exactly the manner they want* (*i.e.,* without condoms) in Los Angeles County.

As established above, Measure B does not preclude Plaintiffs from freely exercising their free speech rights.  Measure B only regulates the conditions under which a film may be made, to protect public health and safety, in the same manner as all other regulations applicable to the filmmaking process, such as labor laws, fire codes, and general film permitting regulations.  Given these legitimate rules, Plaintiffs (or any filmmaker or performer) can *never* produce or perform in films in *exactly the manner they want*.[9]  However, Plaintiffs may still create films portraying sexual intercourse, and other sexual acts, and may still show the films containing the precise content they wish in Los Angeles County.

In fact, nowhere do Plaintiffs claim any harm arising from the Measure B permitting process itself.  To show irreparable harm, Plaintiffs must demonstrate a "real and concrete injury or even threat thereof when [they] sought the preliminary injunction." *Los Angeles Memorial Coliseum Com. v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  Plaintiffs are silent on their experience with the application process for a permit under Measure B.  They are silent on whether the County issued them a citation for violation of Measure B.

Also, any harm arising from Measure B is not irreparable, as Plaintiffs are able to conduct filmmaking outside of Los Angeles County.[10]  Further, and it

---

[9] As discussed above in Section III.C, the First Amendment does not guarantee that individuals may express themselves in precisely the manner they most prefer. *See Members of the City Council*, 466 U.S. at 791.

[10] Moreover, as set out in footnote 2 above, the First Amendment does not require that businesses be run as cheaply or as profitably as possible.

1  *Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987).  Moreover, where the impact

2  of an injunction reaches beyond the parties, carrying with it a potential for public

3  consequences, a plaintiff must demonstrate that the public interest favors entering a

4  preliminary injunction.  *See U.S. v. First Nat'l City Bank,* 379 U.S. 378 (1965); *see*

5  *also Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).  Plaintiffs do not

6  meet this burden.

7      Measure B does not regulate the content of films that may be shown in Los

8  Angeles County.  Therefore, there is no expressive harm stemming from Measure

9  B.  The only "harms" from Measure B are the alleged monetary costs to a

10  filmmaker in complying with Measure B and/or with moving his production

11  outside of Los Angeles County.  This "harm" is far outweighed by the harms to the

12  residents of Los Angeles County should Measure B be enjoined.

13      Should Measure B be enjoined, an effective method of preventing STD

14  infection also will be enjoined, which will have a deleterious impact on public

15  health. The disproportionate incidence of STDs among performers who engage in

16  sexual intercourse during the production of films in Los Angeles County is up to

17  ten times that of the general population, and these infections do not stay just within

18  the performer community. RJN, Ex. A, at p. 2.

19      Despite Plaintiffs' cavalier attitude that the current rate of STD infection is

20  somehow acceptable (perhaps Plaintiffs could explain to a person infected during

21  any period of injunction that this is not a "significant harm" and is of "limited

22  impact" (Motion, p. 24)), the "general public has an interest in the health of [city

23  and county] residents and workers."  *See Golden Gate Rest. Ass'n v. City & County*

24  *of S.F.*, 512 F.3d 1112, 1126 (9th Cir. 2008), *overruled on other grounds in part as*

25  *stated in Sattari v. Washington Mut.*, 2010 U.S. Dist. LEXIS 120821 (D. Nev. Oct.

26  29, 2010).  A preliminary injunction of Measure B would absolutely have a

27  negative impact on the public interest in its own health, and public health in

28  general.  Moreover, Plaintiffs' claimed attempts at "self regulation" and "voluntary

INTERVENORS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**ER0107**

PAUL J. CAMBRIA, JR. (State Bar No. 177957)
    pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES <br><br> Defendants. | Case No. **CV 13-00190 DDP (AGRx)** <br><br> **PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE; DECLARATION OF MATTHEW D. PETERSON** <br><br> Date: July 1, 2013 <br> Time: 10:00 a.m. <br><br> Courtroom 3 <br><br> Action Filed: January 10, 2012 <br><br> [Filed concurrently with Plaintiffs' Motion for Preliminary Injunction, Declarations of Ronald London, Steven Hirsch, Logan Pierce and Kayden Kross, and [Proposed] Order] |

REQUEST FOR JUDICIAL NOTICE

ER0108

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0109

In connection with its concurrently-filed Motion for Preliminary Injunction, Plaintiffs Vivid Entertainment, LLC; Califa Productions, Inc.; Jane Doe aka Kayden Kross; and John Doe aka Logan Pierce (collectively "Plaintiffs"), respectfully request that this Court take judicial notice of the following materials and facts pursuant to Federal Rule of Evidence 201:

1.      A letter issued by the County of Los Angeles Department of Public Health, via its director Jonathan E. Fielding, on December 14, 2012, directed to "Producers of Adult Films in Los Angeles County," including Plaintiff Vivid Entertainment, LLC, a true and correct copy of which is attached as Exhibit 1 to the Declaration of Matthew D. Peterson.

Federal Rule of Evidence 201(b) authorizes this Court to take judicial notice of any fact that is "not subject to reasonable dispute in that it is … capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In ruling on a Rule 12(c) motion, this Court may consider not only the complaint and answer, but also matters subject to judicial notice without converting the motion to one for summary judgment. *See e.g. Taylor v. San Bernardino County Deputy Sheriffs*, 2012 WL 6878887, at *4 (C.D. Cal. Nov. 29, 2012) (*citing L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)).

Requests to take judicial notice of government documents generally are granted. *See, e.g., Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n. 1 (9th Cir. 2004) (taking judicial notice of agreements to which a state entity was a party); *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 924 n. 3 (9th Cir.2002) (taking judicial notice of order from a federal agency); *Serrano v. World Saving Bank*, 2011 WL 1668631, at *2 (N.D. Cal. May 3, 2011) (government documents not subject to reasonable dispute and so judicially noticeable); *Lopez v. Wachovia Mortg.*, 2010 WL 2836823, at *2 (N.D. Cal. July 19, 2010) (same). *See also Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0110

1999), *overruled in part on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508-14 (2002) (public records and government documents are generally considered "not to be subject to reasonable dispute"); *United States ex rel. Dingle v. BioPort Corp.*, 270 F.Supp.2d 968, 972 (W.D. Mich. 2003) (same).

This Court may also consider materials on which the Plaintiffs' complaint necessarily relies, even if not attached to the complaint. *In re Silicon Graphics Securities Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (under federal rules, court may consider documents "whose contents are alleged in the complaint and whose authenticity no party questions" even where plaintiff does not attach the documents to the complaint).

Consequently, Plaintiffs respectfully request that this Court take judicial notice of Exhibit 1 to the Peterson Declaration, which is a government document, and the contents of which are alleged in the Complaint. See Complaint ¶ 66 (Docket No. 1).

DATED: May 29, 2013       LIPSITZ GREEN SCIME CAMBRIA LLP
PAUL J. CAMBRIA, JR.

SANTEN & HUGHES LPA
H. LOUIS SIRKIN

DAVIS WRIGHT TREMAINE LLP
ROBERT CORN-REVERE
RONALD G. LONDON
JANET L. GRUMER
MATTHEW D. PETERSON

By: Matthew D. Peterson /S/
          Matthew D. Peterson

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC;
CALIFA PRODUCTIONS, INC.;
JANE DOE a/k/a Kayden Kross; and
JOHN DOE a/k/a Logan Pierce

REQUEST FOR JUDICIAL NOTICE

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0111

# DECLARATION OF MATTHEW D. PETERSON

I, Matthew D. Peterson, declare:

1.     I am a lawyer admitted to practice before all courts in the State of California and before this Court. I am an attorney at the law firm of Davis Wright Tremaine LLP and represent Plaintiffs Vivid Entertainment, LLC; Califa Productions, Inc.; Jane Doe aka Kayden Kross; and John Doe aka Logan Pierce in this action. The matters stated herein are true of my own personal knowledge.

2.     Attached hereto as Exhibit 1 is a true and correct copy of a letter issued by the County of Los Angeles Department of Public Health, via its director Jonathan E. Fielding, on December 14, 2012, directed to "Producers of Adult Films in Los Angeles County," including Plaintiff Vivid Entertainment, LLC.

This declaration was executed on May 29, 2013, at Los Angeles, California. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____/s/ Matthew D. Peterson_____
Matthew D. Peterson

REQUEST FOR JUDICIAL NOTICE

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0112

**EXHIBIT 1**

**ER0113**

COUNTY OF LOS ANGELES
# Public Health

**JONATHAN E. FIELDING, M.D., M.P.H.**
Director and Health Officer

**CYNTHIA HARDING, M.P.H**
Chief Deputy Director

313 North Figueroa Street, Room 806
Los Angeles, California 90012
TEL (213) 240-8117 • FAX (213) 975-1273

www.lapublichealth.lacounty.gov

BOARD OF SUPERVISORS

**Gloria Molina**
First District

**Mark Ridley-Thomas**
Second District

**Zev Yaroslavsky**
Third District

**Don Knabe**
Fourth District

**Michael D. Antonovich**
Fifth District

December 14, 2012

TO:      PRODUCERS OF ADULT FILMS IN LOS ANGELES COUNTY

In order to minimize the spread of HIV and other sexually transmitted infections resulting from the production of adult films in the County of Los Angeles, the people of Los Angeles County enacted an ordinance to improve the safety of workers in the Adult Film Industry (AFI). Measure B requires all adult film producers filming in unincorporated county areas or in any city that has adopted Los Angeles County Health and Safety Code, Title 39, to obtain an Adult Film Production Public Health Permit.

This ordinance, titled the "Safer Sex in the Adult Film Industry Act," became effective December 14, 2012 and regulates film production in all of the unincorporated areas of Los Angeles County and in those cities within the county's boundaries that adopt it. During the first twelve months following the effective date, the Los Angeles County Department of Public Health (DPH) may issue Conditional Adult Film Public Health Permits to producers of adult films. Upon issuance, the conditions to which such producers must comply include: (a) Within six months, provide proof of successful completion of a blood borne pathogen training course specific to the adult film industry and approved by the Department for the individual owner or all company principals and management level employees, including but not limited to all film directors; (b) within six months, submit and receive Departmental approval for an Exposure Control Plan that meets all requirements of the California Code of Regulations, Title 8, Sections 3203 and 5193, identifying how the employees' risk of exposure to blood or other potentially infectious material will be minimized; (c) require the use of condoms for any acts of vaginal or anal sexual intercourse in compliance with existing law (Los Angeles County Code, Title 11, Section 11.39.110A); and (d) display of the Public Health Permit in an area visible to performers at all times at the location where an adult film is being filmed.

The Act further authorizes DPH to take appropriate measures to enforce the Act, and conditions any film permit issued by the County for the production of an adult film on the use of condoms and other safety precautions.

Within the next 90 days, an ordinance will be filed for approval by the County's Board of Supervisors establishing the final fee for the public health permit required by Title 11, Chapter 39 of the Los Angeles County Health and Safety Code. Until that time, a provisional fee ranging from $2,000 to $2,500 per year has been established and will be billed on an annual basis.

If you have any questions regarding this ordinance and its regulations, please contact Los Angeles County Department of Public Health, at 877-777-6006.

Sincerely,

Jonathan E. Fielding, M.D., M.P.H.
Director and Health Officer

**ER0114**

PAUL J. CAMBRIA, JR. (State Bar No. 177957)
   pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
1631 West Beverly Blvd., Second Floor
Los Angeles, CA 90026
Telephone: (323) 883-1807

*See attached for additional counsel for Plaintiffs*

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC; CALIFA
PRODUCTIONS, INC.; JANE DOE A/K/A
KAYDEN KROSS; AND JOHN DOE A/K/A
LOGAN PIERCE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,<br><br>Plaintiffs,<br><br>vs.<br><br>JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES<br><br>Defendants. | Case No. **CV13-00190 DDP (AGRx)**<br>Assigned to the Hon. Dean D. Pregerson<br><br>**PLAINTIFFS VIVID ENTER-TAINMENT, LLC'S, CALIFA PRODUCTIONS, INC.'S, JANE DOE A/K/A KAYDEN KROSS'S, AND JOHN DOE A/K/A LOGAN PIERCE'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: July 1, 2013<br>Time: 10:00 a.m.<br><br>Courtroom 3<br><br>Action Filed:  January 10, 2012<br><br>[Filed concurrently with Request for Judicial Notice; Declarations of Ronald London, Steven Hirsch, Logan Pierce and Kayden Kross, and [Proposed] Order] |

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA
(213) 633-6800
Fax: (213) 633-6899

ER0115

*Additional counsel for Plaintiffs:*

JANET L. GRUMER (State Bar No. 232723)
    janetgrumer@dwt.com
MATTHEW D. PETERSON (State Bar No. 251490)
    matthewpeterson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Telephone: (213) 633-6800

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0116

enforcing Measure B pending judicial review, or to attempt a narrowing construction. To the contrary, Defendants issued an interim permit fee schedule as a first step in implementing Measure B, and have taken the position "they have no discretion" other than to enforce "unless Measure B is held to be unconstitutional or otherwise unenforceable." Answer at 14 (Third & Fourth Aff. Defenses).

### III. PLAINTIFFS SATISFY THE CRITERIA FOR A PRELIMINARY INJUNCTION

The Court should enjoin the enforcement of Measure B until a final determination of its constitutionality, as Plaintiffs satisfy each of the four elements for grant of a preliminary injunction. *See, e.g., Welch v. Brown*, __ F.Supp.2d ___, 2012 WL 6020122, at *2 (E.D. Cal. Dec. 3, 2012) (citing, *inter alia*, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiffs are likely to succeed on their challenge to Measure B, such that irreparable harm is presumed, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and maintaining the *status quo ante* while this case proceeds clearly tilts in Plaintiffs' favor, as does the public interest, which always favors upholding First Amendment principles and preventing constitutional violations. *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002).

### A. Plaintiffs Are Likely to Succeed on the Merits of Their Challenge

Measure B suffers a variety of constitutional and other defects, any of which, standing alone, suffices to require invalidation. So long as Plaintiffs are likely to succeed on any of the following grounds, a preliminary injunction should issue, though, ultimately, Plaintiffs are likely to succeed on each challenge to Measure B.

#### 1. First Amendment Activity Cannot be Restricted by Referendum

Measure B violates the First Amendment by curtailing freedom of expression via county ballot initiative. "One's right to life, liberty, and property, to free speech, a free press, ... and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." *West Va. State Bd. of Educ. v. Barnette*, 319

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017
(213) 633-6800
Fax: (213) 633-6899

ER0117

U.S. 624, 638 (1943). The exercise of First Amendment freedoms cannot be limited by referendum, *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 194 (1999) ("voters may no more violate the … Constitution by enacting a ballot issue than [may] the general assembly"), in part – but by no means solely – because regulating by public vote is inherently content-based.[4] Here, Measure B was on the November 2012 ballot per California's initiative process, whereby if an initiative's proponent collects enough signatures and a county clerk certifies them, the measure is put to public vote,[5] which here resulted in Measure B's adoption. Limiting First Amendment rights in this manner is simply impermissible.

In addition, as Measure B was enacted by referendum, its findings are not backed by any legislative record. *See* Measure B § 2. Its drafters included a section entitled "Findings and Declaration" that makes various statements about adult films and the spread of STDs. Measure B at 1. But these "findings" are not supported by any references or facts, and none were directly considered or adopted by the County, and thus remain unsubstantiated claims that receive no deference,[6] meaning there is no legislative record supporting Measure B's "findings." *See Perry v. Brown*, 671 F.3d 1052, 1075 (9th Cir. 2012), *cert. granted, Hollingsworth v. Perry*, 133 S. Ct. 786 (2012).[7]

---

[4] *Board of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 235-36 (2000). That Measure B purported to be a "public health" ballot measure does not immunize it from First Amendment scrutiny. *Sorrell v. IMS Health, Inc.*, 131 S. Ct.2653 (2011). *See United States v. Caronia*, 703 F.3d 149, 166 (2d Cir. 2012); *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 683 F.3d 539, 556 (4th Cir. 2012).

[5] *See* Cal. Elec. Code § 9100 *et seq.* The Los Angeles County Registrar-Recorder/County Clerk certified the signatures in support of Measure B on July 3, 2012. Though given the opportunity, the County, through its Board, declined to implement Measure B. Docket No. 24 at 3:22-23; Docket No. 25 ¶ 9.

[6] Though a determination to such effect is not necessary to granting a preliminary injunction, Measure B's claims about purported links between adult films and STDs are misleading and incorrect.

[7] *Cf. Daggett v. Webster*, 1999 WL 33117158, at *1 (D. Me. May 18, 1999) ("[N]o court has accorded legislative deference to ballot drafters.") (citing, *inter alia*,

---

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017
(213) 633-6800
Fax: (213) 633-6899

ER0118

Yet as a content-based restriction on protected speech, Measure B is subject to strict scrutiny, which requires demonstrating a compelling government interest that Measure B is narrowly drawn to serve, *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011), or at a minimum, intermediate scrutiny requiring furtherance of important governmental interests through regulation no greater than necessary to achieve those objectives. *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994). Measure B is clearly content-based in that its requirements and restrictions target a category of speech – non-obscene sexual expression – that is protected by the First Amendment. *See, e.g.*, *Schad*, 452 U.S. at 65. Measure B applies not to *all* "film, video, multimedia," etc., where the activity depicted may result in transmissions of blood and/or any other potentially infectious materials," but rather only those that involve "sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration ... and/or any other sexual activity." L.A. Cnty. Code § 11.39.010.

Measure B thus specifically targets Plaintiffs' speech (and that of the adult film industry as a whole), and directs how and what Plaintiffs capture as performances on film. Hirsch Decl. ¶¶ 23-32; Kross Decl. ¶¶ 11-15; Pierce Decl. ¶¶ 8-9. Measure B affects how adult film producers shoot, edit, and even script their movies, the settings and moods they can evoke, and drastically effects both creative and editorial discretion, and the level of output that adult film producers and performers can maintain. *Id.* Intervenors even admit that Measure B restricts Plaintiffs to depicting unprotected sex only "digitally or through simulation," which by definition limits how actors' performances must be staged. Intervenors' Memo in Support of Motion to Dismiss at 11 (Docket No. 49) ("Mot. to Dismiss Mem."). Plaintiffs may

*Yniguez v. Arizonans for Official English*, 69 F.3d 920, 945 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 43 (1997) (deference normally accorded legislative findings does not apply with same force when First Amendment rights at stake; in addition, because measure was ballot initiative, it was not subjected to extensive hearings or considered legislative analysis); *California Prolife Council PAC v. Scully*, 989 F.Supp. 1282, 1299 & n. 42 (E.D. Cal. 1998), *aff'd*, 164 F.3d 1189 (9th Cir. 1999)).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017
(213) 633-6800
Fax: (213) 633-6899

ER0119

not film, and thus could not explicitly "show," a condom-less act of "actual[ ] … vaginal or anal penetration."[8] This specifically targets Plaintiffs' speech (and that of the adult film industry as a whole), directs how and what Plaintiffs may capture as performances in their films, and dictates how adult film producers must shoot and/or edit their speech.

In this regard, Measure B is far different from typical fire codes, production facility, zoning, and/or location-use regulations that generically apply. None of those ordinances regulates based on the type or genre of film that a producer or performer might wish to create – unlike Measure B, which is a content-specific regulation that targets only "adult film." Such generic regulations also do not dictate what acts may be filmed, as does Measure B, the permitting, inspection, suspension/revocation, and punishment provisions of which, in addition to being content-based, are also uniquely broad, heavy-handed, and invasive. In sum, Measure B is quintessential content-based regulation, rendering it subject to the strict scrutiny that it is "rare" for any regulation to survive. *Brown*, 131 S. Ct. at 2738.

## 2. Measure B Imposes an Unconstitutional System of Prior Restraint in Violation of The First Amendment

Regardless of any legislative record – or lack thereof -- the mechanism dictated by Measure B's drafters violates the First Amendment by imposing a prior restraint on producing constitutionally protected films. A prior restraint is any government action or order that restricts or forbids speech in advance of the time it is to be made or disseminated. *Alexander v. United States*, 509 U.S. 544, 550 (1993). As the Supreme Court has made clear, "prior restraints … are the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*,

---

[8] L.A. Cnty. Code §§ 11.39.010, 11.39.110.A. The fact that Measure B may not state that condoms must be seen in the final film does not save it from being content-based. The requirement for condoms in all filmed acts of vaginal or anal penetration means that, to comply, adult film producers must either show the sex act with the condom in view, shoot it in such a way that the condom is not visible, or use after-the-fact digital trickery or other editing to make the condom "disappear."

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017
(213) 633-6800
Fax: (213) 633-6899

ER0120

ment officers and Department officials, who themselves necessarily have to guess at the meaning of these terms and mandates, and their application, affording too much enforcement discretion, and potentially leading to differential application of the law.

### 5.    Measure B is Both Under-inclusive and Over-inclusive

Measure B cannot withstand either strict or even intermediate scrutiny to the extent it is unconstitutionally under-inclusive. Even if the government can demonstrate legitimate ends (which it does not here, as shown above), "when they affect First Amendment rights they must be pursued by means that are [not] seriously under-inclusive[.]" *Brown*, 131 S. Ct. at 2741-42 (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). "Under-inclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Id.* at 2740.

Measure B claims to address the spread of HIV/AIDS and other STDs in Los Angeles County. *See generally* Measure B, §§ 2-3. But Measure B fails to address STD risks to the overall population of Los Angeles County, of which the adult film industry is only a tiny percentage. It also applies only to adult films produced for a commercial purpose, to the exclusion of non-commercial films whose performers are exposed to risks (accepting *arguendo* the Measure's assumptions) that are the same as those for performers in commercial adult films. L.A. Cnty. Code § 11.39.080.

This drastic under-inclusiveness suggests that Measure B is actually intended to disfavor and restrict constitutionally protected speech and expression involved in the creation of adult films, and to target and harm the adult film industry. Indeed, Intervenors' staff member who drafted Measure B has stated publicly that he would like to see adult filmmakers driven out of California.[13] Measure B thus fails for

---

[13] *See* London Declaration Ex. D, Jacob Weis, *No Condoms in Porn Country*, May 9, 2013, http://projectwordsworth.com/no-condoms-in-porn-country/ (quoting AIDS Healthcare Foundation's Mark McGrath, Measure B's drafter, as stating he "considers the adult industry 'quasi-human trafficking" and that "I don't give a shit about their jobs," while questioning whether "these [are] the types of jobs we need in California"). This is also reflective of other jurisdictions motivated by similar

ER0121

### C. Any Harm to Defendants Would Be Minimal If Not Non-Existent, and Is Outweighed by the Irreparable Harm Plaintiffs Face

Defendants will suffer little or no harm if enjoined from enforcing Measure B. Despite Measure B's unsupported claims otherwise, the adult film industry already follows numerous safeguards to protect the health of actors and the public. *See supra* 2 (citing declarations). These efforts ensure that all performers participating in any law-abiding adult film production are protected from STDs, and by extension, that the public is protected, such that maintaining the *status quo ante* is not problematic. *Id.* And because Measure B is so limited as to the segment of the populace to which it applies, even its enforcement will have a minimal impact on overall public health.

Indeed, the County has survived for many years, including over 30 years since HIV/AIDS was identified in the United States, without Measure B. It "would be a stretch of reason to conclude that it would suffer significant harm having to wait a few more months to know whether the law is enforceable," *Welch*, 2012 WL 6020122, at *16, especially given the limited impact on the public outside the adult film industry. Thus, enjoining Measure B's implementation until its legality can be determined will not significantly impact the vast majority of people in Los Angeles County. Given that Plaintiffs have demonstrated irreparable injury if a preliminary injunction does not issue, the balance of equities clearly tips in Plaintiffs' favor. *See Winter*, 555 U.S. at 20.

### D. The Public Interest Favors a Preliminary Injunction

A preliminary junction is particularly warranted in this case because "'it is always in the public interest to prevent the violation of … constitutional rights.'" *Sammartano*, 303 F.3d at 974 (quoting *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)). "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Id.* "Given the limited scope and duration of a preliminary injunction," there should be "no difficulty in concluding that protect-

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA
(213) 633-6800
Fax: (213) 633-6899

ER0122

**DECLARATION**

ER0123

## DECLARATION OF STEVEN HIRSCH

I, Steven Hirsch, declare and state as follows:

1.     I am the co-founder and co-Chairman of Vivid Entertainment Group ("Vivid"), a Plaintiff in this action. I offer this Declaration in support of the Plaintiffs' Motion for Preliminary Injunction against the enforcement of The County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B"). I have personal knowledge of the facts stated herein.

2.     I have been employed in the adult entertainment industry for my entire career. My entry to the adult film industry was working in the warehouse of a distribution firm that my father owned. I later became national sales manager for Cal Vista, one of the largest distributors of adult videos in the industry. In 1984 I founded and now co-own Vivid with David James and Bill Asher. Since that time, I have guided Vivid as a leading provider of adult entertainment and as a pioneer in high-quality entertainment, astute marketing, and technological currency.

3.     At Vivid, I developed a system in which top adult actresses are signed to exclusive contracts, much like stars during the Hollywood film studio era. I also oversaw the creation of glamorous, upscale packaging of the adult videos that allowed them to be sold in mainstream stores for the first time. The faces of "Vivid Girls" have appeared on billboards in high traffic venues such as Sunset Boulevard and Times Square.

4.     As part of my stewardship of Vivid, I led the company in devising a strategy to move beyond production of videos and DVDs into marketing in virtually all distribution channels, from mainstream retail stores, to Internet and broadband video-on-demand (VOD), to building Vivid TV, to name but a few. I helped make Vivid a household name through licensing ranging from publishing and condoms, to Vivid Vodka, and now licensing the Vivid name to gentlemen's clubs starting with venues in Charlotte, North Carolina, Los Angeles, and New York City. These, along with many other products, are cross-promoted with Vivid's DVDs, VOD offerings, and Internet sites.

5.     Vivid also brought adult film into the mainstream through image-building programs such as multiple series on Showtime, frequent appearances on popular television and online news reports such as The Huffington Post and TMZ, as well as being featured in articles in

ER0124

The New York Times, The Economist, Forbes and other leading outlets. Vivid also made a deal with Harper Collins to publish the best-selling book *How to Have a XXX Sex Life: The Ultimate Vivid Guide*, co-authored by the Vivid Girls.

6.      Vivid has always placed heavy emphasis on high quality erotic film entertainment. Early on, Vivid sought to differentiate itself by developing movies that could be enjoyed by couples, and by emphasizing high production values and well-written scripts and plotlines, all wrapped in unequaled sensuality. Today, Vivid has more AVN Awards – the "Oscars" of the adult film industry – than any other studio, as well as the industry's largest archive of movies made by a single studio.

7.      During its nearly 30 year history, Vivid has shot approximately 95 percent of its adult films in Los Angeles County. Over that time, Vivid has engaged the services of hundreds of adult film performers and thousands of other employees in Los Angeles County in the production, advertising, distribution and sale of its adult films, apparel, books, and other products. Vivid has shot adult films in hundreds of locations in Los Angeles County.

8.      Vivid, and the adult film industry in general, is keenly aware of potential health risks to performers from exposure to blood borne pathogens, HIV, and other sexually transmitted diseases ("STDs"), and has a long history of taking steps to address these risks.

9.      While the public was first becoming aware of diseases like HIV/AIDS and hepatitis, the adult film industry made information available to those working in the industry by describing the diseases, how they were transmitted, and ways to prevent exposure.

10.      Since the mid- to late-1990s, Vivid, along with all leading producers of adult films, implemented strict requirements for each production to protect models and performers, and to prevent the spread of HIV and other STDs. Vivid joined with other members of the adult film industry to help fund the Adult Industry Medical Health Care Foundation ("AIM"), as a testing and screening facility, and Vivid contributed financially to AIM's ongoing efforts. AIM provided HIV and STD testing and treatment, as well as counseling services and support group programs, to individuals who work in the adult film industry, as well as to the general public.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0125

11.     More recently, Free Speech Coalition, the trade association of the adult entertainment industry to which Vivid belongs, helped establish Adult Production Health & Safety Services ("APHSS").  APHSS assists adult film producers like Vivid and the performers that Vivid employs to ensure a safe and healthy work environment.

12.     APHSS's database of approved labs provides performers in Vivid's adult films information about places that follow basic testing and notification protocols for HIV and STD safety in adult films.  These protocols require that APHSS-approved clinics screen patients for HIV using the PCR/DNA test, and screen for chlamydia, syphilis, and gonorrhea as well.  The adult film industry maintains a subsidy fund for APHSS testing to make testing affordable and accessible to all performers who appear or intend to appear in adult films.

13.     APHSS-approved clinics provide continually updated information to APHSS on adult film performers who have a current negative-test status, based on testing every 14-28 days, and who are thus available for work in adult films.  Vivid relies on a database that APHSS keeps in turn, which identifies performers who have current negative-test results from APHSS-approved labs, and who are thus available for work in adult films.

14.     Vivid requires performers in films that Vivid produces, and/or that Vivid contracts out for production, to be tested at an APHSS-approved lab at least once every 28 days.  When Vivid produces an adult film, prior to any filming or production, all performers and models must present a driver's license or other form of government identification.  Vivid accesses APHSS's database of available performers to confirm the negative-test status of each performer as of the date of production (which "availability" reflected in the database is based on the performer having tested negative for HIV and other STDs within no more than the last 28 days).  Without a current, negative test (or proper identification), Vivid does not and will not allow any performer to appear in an adult film in a way that would potentially expose anyone to HIV or any other sexually transmitted disease.

15.     I have observed that compliance with this testing regime is universal across the adult film industry.  No law-abiding adult film producer allows performers to appear without a

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0126

1  current APHSS or equivalent negative-test confirmation, and no performer would agree to film

2  without confirming his or her co-performers' negative-test status.

3       16.     The AIM and APHSS regimes, and the other steps Vivid and the adult industry

4  have taken to prevent the transmission of HIV and other STDs, and to ensure safe and healthy

5  work environments, have proved successful. Since 2004, over 300,000 sexually explicit scenes

6  have been filmed by major producers of adult films in Los Angeles County, with zero cases of

7  HIV transmission.

8       17.     With regard to Vivid, this is due in part to our long-standing blood borne pathogen

9  exposure protocol. Under that protocol, Vivid uses containers that comply with guidelines estab-

10  lished by the California Division of Occupational Safety and Health ("Cal/OSHA") for materials

11  that have been in contact with bodily fluids, and we make condoms available to performers on the

12  sets of all Vivid adult film productions. Vivid also produced an instructional video, with the help

13  of a former Cal/OSHA staff member, that informs performers and other employees about HIV and

14  STD safety and awareness. The production manager on the sets of Vivid's productions confirms

15  that performers watch or have seen the video, and will not let performers shoot scenes in adult

16  films until they do so. In addition, notwithstanding their compliance with the AIM and APHSS

17  regimes described above, the production manager visually inspects each performer, including his

18  or her genitalia, to ensure that there are no visible indicia of STDs.

19       18.     It is my understanding that Measure B requires producers of adult films to obtain

20  a permit from the Los Angeles County Department of Public Health ("Department") before any

21  production can take place. In order to secure a permit, we must pay a fee and complete an

22  application form demonstrating successful completion of a blood borne pathogen training course

23  approved by the Department. As a business entity subject to this permitting regime, *all* of our

24  "principals and management-level employees" – including any and all film directors – must have

25  completed the required course.

26       19.     Though Vivid has a blood borne pathogen exposure control plan as described

27  above, no principal of Vivid has completed a blood borne pathogen training course, nor have

28  any of the film directors Vivid employs.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0127

20.     Shortly after Measure B took effect, Vivid requested that the City of Los Angeles cancel an adult film shooting permit the City had previously issued, and that it refund the permit fee Vivid had paid. The City refused to do so. It claimed that producing adult films in the City of Los Angeles remained permissible notwithstanding the enactment of Measure B by Los Angeles County and the County's announcement that Measure B had taken effect. However, when Vivid consulted the City of Los Angeles Police Department, which has enforcement authority for film permits, the Police Department would not confirm that producing adult films in the City of Los Angeles is permissible without complying with Measure B. The Police Department indicated that Vivid's previously issued City permit should be canceled.

21.     Since Los Angeles County has announced that Measure B has taken effect, and given Vivid's experience with City of Los Angeles permitting and its police force, Vivid has stopped shooting adult films in Los Angeles County where Measure B applies. Measure B has thus served to chill Vivid's speech in which, prior to Measure B's enactment, Vivid was able to engage freely.

22.     It is also my understanding that Measure B requires the use of condoms by performers for all acts of anal or vaginal sex during the production of adult films. In Vivid's experience, performers in adult films do not want to use condoms during shooting, for a variety of reasons. Among these is the fact that shooting sexually explicit scenes takes much longer than the depicted sexual activity would take in the "real world." As a result, female performers find condom use over such an extended period to be painful – so much so, that they often cannot work two consecutive days if condoms are used. Similarly, condoms reduce physical sensation for male performers, which makes it more difficult to maintain sexual readiness over the extended period necessary to shoot adult films. In addition, condoms can break, especially during such prolonged use. When that happens, re-shooting and even longer periods of production/sexual activity are required.

23.     The respective effects that condoms have on female and male performers in adult films affect the creative process and thus the expressive work of adult film performers and the producers who depend on them. Thus, notwithstanding that Vivid makes condoms available on

5

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0128

all adult film shoots as stated above, performers rarely use them, opting instead to rely on highly reliable and fastidiously followed HIV and STD testing.

24.     Condoms also interfere with the expressive work of adult film producers and performers because they are inconsistent with the aura of fantasy that adult films create. Condom use in adult films call to mind "real world" sex, where condoms are associated with birth control and avoiding STDs, which is inconsistent with the suspension of disbelief adult film-makers depend upon and strive to sustain for their works.

25.     Adult films audiences react negatively to the use of condoms by performers. In Vivid's experience, adult films that use condoms experience 35 percent lower sales than those that forgo condoms in reliance on APHSS testing and related measures. Vivid's experience is also that its audiences expect to explicitly see that the performers in our films actually engage in the sex acts depicted; consequently, editing or otherwise manipulating the works to avoid showing genital-to-genital or genital-to-anal contact because a condom was used, to disguise the use of condoms, or to otherwise manipulate the image would not be accepted by adult film audiences.

26.     For all of the reasons above, with Measure B's enforcement, Vivid has had no choice but to modify its approach to the production of adult films. Filming in places other than where Measure B is effective in Los Angeles County is not alone a solution. In the first instance, no surrounding county offers Vivid all the services and infrastructure that are available for shooting and otherwise producing films as is available in Los Angeles. That is because Los Angeles County is the seat of non-adult film movie-making as well. Consequently, nowhere else offers the necessary access to services and facilities that exist for non-adult films on which we rely – and which face no impediments under Measure B – including production crews, editors, sound-tracking, equipment suppliers, set directors, location finders, and other needs.

27.     Los Angeles County is also home to the many soundstages that all filmmakers require – including non-adult producers, as well as Vivid – because soundstages provide elements necessary for production like lighting, sets and props (and a place to store them), and special effects (including green-screens). These soundstages also provide the controlled environments

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0129

that are needed for movie sets by any film producer, including Vivid. Such soundstages simply are not available outside Los Angeles County.

28. Even to the extent other facilities and services may exist outside Los Angeles County – in vastly diminished quantity and quality – the effect on Vivid's production, and thus its expression, remains considerable. Due to limitations imposed by Measure B, the many adult film producers accustomed to shooting in Los Angeles County find themselves, like Vivid, greatly constrained. This has resulted in a much tighter concentration of adult film producers being shunted into an increasingly limited number of locations in which to film. The limited availability of these locations means that Vivid cannot produce films as quickly or, therefore, release them as frequently, as it would otherwise, due to the need to wait for locations to become available. Use of the same, limited number of locations also interferes with Vivid's ability to differentiate its expression from that of its competitors, because adult film companies are reduced to using – and re-using – the same settings for their movies. Even the fact that Vivid itself must reuse these locations makes it more difficult to distinguish its various productions from each other.

29. Dispersing locations outside Los Angeles County also means they are much further apart than if they are all centrally located in Los Angeles County as was possible before Measure B. This means performers and others working in adult film must travel much further from pro-duction to production, limiting their ability to work on multiple productions on, *e.g.*, the same day. The added travel time also extends Vivid's already-long production schedules, so much so that, unlike in the past, shooting on consecutive days becomes infeasible. All of this adversely affects the content and frequency of Vivid's releases, while also limiting Vivid's creativity and artistic options for its film settings, which also directly affects the substance of its expression.

30. The impediments to production, and thus expression, imposed by Measure B also interferes with Vivid's ability to claim the cachet of shooting in Los Angeles County, and being a "Hollywood" adult film company. This affects how Vivid's films are perceived by its audience. Even though Vivid may not film performers engaged in actual sex in iconic (outdoor) locations in Los Angeles County, Vivid may still wish to include the locations in its films. It therefore must film performers engaged in actual sex outside Los Angeles County, then bring them back to Los

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0130

Angeles County to shoot exterior scenes that are part of the narratives that tie Vivid to Los Angeles. This inability to have interior and exterior shoots proximate to each other practically doubles our production schedules, and necessarily also affects how frequently Vivid can disseminate works of expression.

31. In addition, there are some locations and settings that are simply not available outside Los Angeles County. There are, for instance, places in Los Angeles County that can stand-in for Paris, France. There are also places, like old 1920s- and 1930s-era warehouses, which evoke their own, specific mood, that are available only in Los Angeles County, and Vivid is thus precluded from using them as settings for its films. Recently, the script for a film Vivid was producing called for a parking garage opposite a high-rise, downtown loft – a combination that is found only in Los Angeles County, and is not available in surrounding locales. Again, even if actual sex does not take place at these locations when Vivid would include the locations in its films, traveling between these unique locations in Los Angeles County, to places outside the County where Vivid can film expression involving actual sex, directly effects Vivid's end-product.

32. All these limitations – from the availability of performers and other talent, to less-accessible support services, to significant limits on potential locations to film – necessarily affect the artistic options Vivid enjoys, and translates directly into how Vivid expresses itself through adult film. Vivid is now, as a result of Measure B, forced to write scripts around the locations that are available for it to shoot its adult films, rather than being able to bring its full creativity to bear in conceiving the unique, high-quality adult films that are its hallmark.

Moreover, even if the above impediments did not affect Vivid's speech as drastically as they do, simply looking to locations other than Los Angeles County cannot solve the incursion onto Vivid's expressive endeavors that Measure B poses. Surrounding localities have adopted similar laws, and there is nothing stopping other nearby (or even far-flung) localities from doing so. This is especially a concern to the extent that Measure B was placed on the ballot as a result of advocacy groups collecting signatures, and that the law was adopted by popular vote. This extinguishes alternative avenues for communications even outside Los Angeles County. If

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0131

Measure B is not enjoined, its enforcement will serve as a serious impediment to Vivid's production of works protected by the First Amendment.

I declare, under penalty of perjury under the laws of the State of California and the laws of the United States of America, that the foregoing is true and correct and that this declaration was executed on May 28 at _____.

_____
Steven Hirsch, Co-Chairman
Vivid Entertainment Group

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800

ER0132

**DECLARATION**

ER0133

## DECLARATION OF JANE DOE a/k/a KAYDEN KROSS

I, Kayden Kross, declare and state as follows:

1.      I am a Plaintiff in this action.  I offer this Declaration in support of the Plaintiffs' Motion for Preliminary Injunction against the enforcement of The County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B").  I have personal knowledge of the facts stated herein.

2.      I am a performer who appears in "adult films" within the meaning of Measure B. In addition, I regularly write columns appearing in such publications as *Complex* and *Xbiz* magazines, I have contributed to *Timothy McSweeny's Internet Tendency*, and my short story "Plank" appeared in the 2012 e-book collection *Forty Stories:  New Writing from Harper Perennial*.  I have also won several awards for roles in adult films, from AVN, XBIZ, and other adult film organizations.

3.      I have worked in adult film for over six years.  During that time I have appeared as a contract performer in adult films for Vivid Entertainment Group, Adam & Eve, and Digital Playground, as well as an independent actress.  During that time, I have performed in approximately 75 adult films.

4.      Many of the adult films in which I have appeared were filmed in the County of Los Angeles, California, in both its incorporated cities and unincorporated areas, including in the City of Los Angeles.  The adult films in which I intend to appear in the future can likewise be expected to be filmed in Los Angeles County, in both its incorporated and unincorporated areas, including the City of Los Angeles.

5.      As a performer in adult films, I am tested once every 15 days (until recently, it was every 30 days) for HIV and other sexually transmitted diseases ("STDs"), including chlamydia, gonorrhea and syphilis.  All of my testing is done at clinics approved by Adult Production Health & Safety Services ("APHSS") for my testing.

6.      Prior to my participating in any filming or production of any adult film, I present my driver's license and test results confirming my current negative status for HIV and STDs.  I do not and will not perform in any adult film unless and until all performers with whom I am to work

similarly produce IDs and confirmation of their current status as having tested negative for HIV and other STDs. I also am able to consult, on-set if necessary, APHSS's database of available performers to confirm the negative-test status of my prospective co-performers.

7.    To my knowledge, for the entire time I have worked in adult film, not a single case of HIV has been transmitted on a film set where I have participated as a performer.

8.    Conversely, to the extent I am aware that adult film performers have contracted HIV off set, it has been flagged by the standard testing procedures that the industry uses. Such "flagged" individuals were removed from the pool of performers available to work in adult film, and were thus prevented from transmitting any disease on any adult film set to other performers.

9.    I used condoms in the scenes I shot for the first adult film in which I appeared. The added friction from the condoms caused a great deal of discomfort while I was performing, and in retrospect affected my performance. The condoms were not a birth control measure, but rather were – theoretically – protection against STDs, though all the performers with whom I worked in the film produced current negative HIV/STD test results before filming started.

10.    In the next adult film in which I performed, and in all adult films I have appeared in since, I opted to forgo the use of condoms, and to rely instead on the APHSS testing regime (and prior to that, AIM's) to ensure a safe and healthy working environment. I have continued to do so for the ensuing six years, with a perfect testing record.

11.    Apart from the discomfort, one of the key reasons I opt to forgo condoms when performing in adult films is that the adult film industry is in the business of selling fantasy. The films in which I perform are fantastical, with fantastical situations in which incredibly unlikely female specimens enthusiastically engage in sexual relations with men who have their own in-credibly unlikely anatomy. In my view as an expressive artist performing in adult films, using condoms in adult films, as Measure B requires, represents a real-world intrusion into the illusion of fantasy that adult films strive to create.

12.    Condoms are a reminder of real-world concerns that our audience seeks to escape when watching the films we create, and condoms in particular are reminders of the specters of pregnancy and disease that can attend sexual relations in the real world. Adult films seek to sus-

1  pend such concerns and allow audience members to suspend their disbelief while watching our

2  work. Mandatory use of condoms in adult films also deprives us, as performers, of the choice to

3  forgo condoms, while requiring us to convey the government's view of "safe sex" as part of our

4  expressive works. I cannot conceive of any viable way to position actors' bodies, or to otherwise

5  manipulate the end-product of performance through editing or digital trickery, to conceal that

6  condoms were used in filming, while still maintaining what I am seeking to communicate by

7  engaging in actual sex acts in my films.

8       13.    The enactment of Measure B, Los Angeles County's statements that Measure B

9  is currently in effect, and the specter of enforcement directly inhibit my ability to express myself

10 through adult film in the manner I have in the past, as all production of adult films in which I

11 might appear in Los Angeles County has been cancelled or postponed.

12      14.    I typically shoot at least two scenes a month as part of my contract work –

13 however, due to Measure B, I was able to perform under my contract only once in April 2013, and

14 have not shot any scenes under my contract at all in May 2013. Because Measure B has resulted

15 in indefinite postponements of shooting adult films in Los Angeles County, I anticipate being pre-

16 cluded from appearing in as many as 16 productions over the balance of calendar year 2013 due to

17 Measure B.

18      15.    Measure B also has prevented me from expressing myself through the other

19 primary adult film outlet in which I perform, specifically, my website Club Kayden. I use my

20 own home to produce performances for Club Kayden, but because my home is in Los Angeles

21 County, Measure B has prevented me from shooting. And, because I do not have budget for Cub

22 Kayden productions to shoot outside my home by traveling beyond Los Angeles County and/or

23 renting locations owned by others, my production of adult films for Club Kayden has been

24 brought to a halt by Measure B.

25      16.    In addition, Measure B would require the use of condoms for my performances,

26 including those with my boyfriend, even though I know his sexual history and negative test status.

27 So in addition to running contrary to my preference not to use condoms while performing as

28

1   stated above, Measure B requires condom use even for performances in my own home with

2   partners who I know do not expose me to risk of STD exposure.

3         I declare, under penalty of perjury under the laws of the State of California and the laws of

4   the United States of America, that the foregoing is true and correct and that this declaration was

5   executed on May 23, 2013, at ___9 am_____.

Kayden Kross

ER0137

ER0138

## DECLARATION OF JOHN DOE a/k/a LOGAN PIERCE

I, Logan Pierce, declare and state as follows:

1.  I am a Plaintiff in this action. I offer this Declaration in support of the Plaintiffs' Motion for Preliminary Injunction against the enforcement of The County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B"). I have personal knowledge of the facts stated herein.

2.  I have worked in adult film for approximately a year, appearing as a performer in adult films for Penthouse, Brazzers, Twistys, and Reality Kings, among others. During that time, I have performed in over 200 adult films.

3.  Many of the adult films in which I have appeared were filmed in the County of Los Angeles, California, in both its incorporated cities and unincorporated areas, including in the City of Los Angeles. The adult films in which I intend to appear in the future can likewise be expected to be filmed in Los Angeles County, in both its incorporated and unincorporated areas, including the City of Los Angeles.

4.  As a performer in adult films, I am tested once every 14 days for HIV and other sexually transmitted diseases ("STDs"), including chlamydia, gonorrhea and syphilis. I go to clinics approved by Adult Production Health & Safety Services ("APHSS") for my testing.

5.  Prior to participating in any filming or production of any adult film, I present identification and a copy of test results (usually received from APHSS via email) to confirm my current negative status for HIV and STDs. The adult film producers then typically have me sign and date a copy of the reviewed test results, which is kept for their records. I do not and will not perform in any adult film unless and until all other performers with whom I am to work similarly produce IDs and a confirmation of their current status as having tested negative for HIV and other STDs. I can also confirm on-set if necessary my co-performers' negative-test status, by checking the APHSS database of available performers.

6.  I have, on occasion, used condoms when performing in adult films, including for educational films. However, condom use is not a birth control measure, but rather ostensibly

intends to protect against STDs, even though all performers with whom I work must have provably tested negative for HIV and STDs before any filming.

7. In my experience, instances when I have used condoms in adult films have involved much longer shooting schedules and delays in production. Scenes take much longer to film because we must often swap out condoms mid-scene – sometimes repeatedly – and/or rely on much more frequent use of assistive measures like lubrication. Sometimes we find we must switch out condoms mid-scene because a performer involved has a latex allergy requiring use of condoms consisting of alternative material. Condoms also decrease my sensitivity and thus affect how easy it is to maintain sexual readiness throughout shooting, and for my partners, increased friction from condoms can cause discomfort. All of this necessarily affects performance, and thus, what producers capture and express on film.

8. Apart from the above mechanical consequences, which have their own impact on the content of our expression, I choose to forgo condoms when performing in adult films because they are inconsistent with portraying sex and sexuality with the air of escapism that we seek to convey. The films in which I perform involve explicit sexual conduct in over-the-top and/or romantic scenarios involving characters with physical and sexual personas that are idealized and seek to personify sexual fantasy. Condoms are reminder of the avoidance of STDs and pregnancy that "real world" sex must take into consideration.

9. From my perspective as a performer and creative participant in the process of producing adult films, Measure B's requirement that I use condoms is inconsistent with the sense of romance and fantasy that adult films seek to maintain. Similarly, clever editing or camera tricks to disguise condom use (up to and including not showing what makes a sex act "explicit" or "actual") can be inconsistent with what I seek to convey when performing. Measure B thus deprives me of the creative choice to not be depicted using condoms. It also forces me to endorse a government-sponsored message regarding proper "safe sex" practices. All told, condoms can result in the final product being lackluster compared to productions where condoms are not used.

10. The facts of Measure B's enactment and that it is in effect and can be enforced at any time has had a marked impact on my participation in adult films, and thus my ability to

express myself through them. The frequency and amount of production have decreased significantly due to the fear of enforcement of Measure B against shooting in the parts of Los Angeles County where it is in effect. Fear of enforcement has definitely chilled production by adult film companies. As a result, I have worked less and adult film companies have shot less frequently, all of which limits my opportunities to express myself as I would otherwise choose on film.

11. In addition, substantially more filming – if it is done in Southern California at all – is exported outside Los Angeles County. I therefore have to travel much more, and across greater distances, to find opportunities to perform in adult films. Even when this has meant filming near but outside Los Angeles County, film shoots are happening further and further apart, and as a result of travel time between locations, production occurs less frequently. To the extent travel spaces apart production days geographically, travel means I must schedule productions in which I perform further apart, limiting the number of productions in which I can appear in any given timeframe. As a result of Measure B, I have had to travel not just outside Los Angeles County, but outside California, to both a nearby state, and to one all the way across the country, and even as far as Spain. Obviously, being unable to participate in productions that are geo-graphically near each other, as when productions more typically were in Los Angeles County before Measure B's enactment, greatly limits my opportunities to engage in free expression by performing in adult films.

I declare, under penalty of perjury under the laws of the State of California and the laws of the United States of America, that the foregoing is true and correct and that this declaration was executed on 5/29/13 at Los Angeles, CA.

_Logan Pierce_
Logan Pierce

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0141

DECLARATION
ER0142

# DECLARATION OF RONALD G. LONDON

I, Ronald G. London, declare and state as follows:

1.     I am an attorney licensed to practice law before all the courts of the District of Columbia, Maryland, and before this Court.  I am an attorney in the law firm of Davis Wright Tremaine LLP, and one of the attorneys for Plaintiffs VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE A/K/A KAYDEN KROSS; AND JOHN DOE A/K/A LOGAN PIERCE (collectively "Plaintiffs"), in this action.  The matters stated below are true of my own personal knowledge, except those matters stated on information and belief, which I believe to be true.

2.     On April 5, 2013, Plaintiffs filed a Motion for Preliminary Injunction (Docket No. 39), with an accompanying Memorandum of Points and Authorities, and Request for Judicial Notice (Docket No. 38), and a Motion for Judgment on the Pleadings (Docket No. 37), all noticed for hearing May 6, 2013.  The Motion for Preliminary Injunction referred to and incorporated by reference large portions of the Motion for Judgment on the Pleadings.  *See* Docket No. 39.

3.     On April 16, 2013 Intervenors were granted party status in this matter.  Docket No. 44.  At the hearing on the Motion to Intervene on April 15, 2013, the Court suggested the parties, including Intervenors, agree to a briefing schedule for Plaintiffs' Motion for Preliminary Injunction and Motion for Judgment on the Pleadings already on file.

4.     On April 30, 2013, the parties submitted a stipulation to the Court that proposed a revised schedule for the pending motions (Docket No. 45.), by agreeing to remove the hearing on Plaintiffs' Motion for Judgment on the Pleadings from the calendar, to continue the Preliminary Injunction hearing, and to enable the Intervenors' to submit a Motion to Dismiss.

DECLARATION OF RONALD G. LONDON

5. On May 1, 2013, the Court issued an order which approved the Stipulation while also vacating Plaintiffs' Motion for Judgment on the Pleadings (though that was not specified in the Stipulation), and indicated that the Motion for Judgment on the Pleadings must be completely re-filed if necessary. (Docket No. 46.) In the same order, the Court continued the Motion for Preliminary Injunction to June 24, 2013, and directed Intervenors to file any response by May 13, 2013.

6. On May 9, 2013, pursuant to a Stipulation filed by the parties (Docket No. 47), the Court continued the hearing on the Motion for Preliminary Injunction to July 1, 2013. (Docket No. 48.)

7. Because the Motion for Judgment on the Pleadings was vacated, significant parts of the argument in support of the Motion for Preliminary Injunction were no longer in an operative pleading. This issue created uncertainty as to how the Motion for Preliminary Injunction should proceed. Accordingly, on Thursday, May 9, 2013, I sent an email to counsel for Intervenors, Samantha Azulay, and counsel for Defendants, John Ly, raising this issue and asking to discuss how best to proceed. A true and correct copy of my email is attached hereto as Exhibit A.

8. On May 10, 2013, Ms. Azulay indicated she was unavailable to discuss and would do so at an undetermined time in the future. A true and correct copy of this email is attached hereto as Exhibit B.

9. Toward the end of the day on May 13, 2013, the day Intervenors were to file their opposition to the Motion for Preliminary Injunction, Ms. Azulay sent a brief email offering to discuss, and inquiring about the nature of the concern, even though it had been set out in my May 9 email. A true and correct copy of this email is attached hereto as Exhibit C. Given that this offer to confer came the same day that Intervenors' opposition was due, it was apparent that our inquiry would be answered by the opposition itself.

10. On May 13, 2013, Intervenors filed their opposition to the Motion for Preliminary Injunction. Docket No. 51. Therein, Intervenors argued that because

DECLARATION OF RONALD G. LONDON

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0144

the Motion for Judgment on the Pleadings was vacated, the Motion for Preliminary Injunction fails for lack of support. *See id.* at 5:22-6:2. This argument is the exact type of procedural argument that Plaintiffs hoped to avoid, and was the impetus of my May 9 email.

11.   Due to the unanticipated procedural events listed above, Plaintiffs determined it was necessary to withdraw the pending Motion for Preliminary Injunction and file another motion that includes the merits discussion from the now-vacated Motion for Judgment on the Pleadings, so that all the facts and arguments in support of the Motion could be properly before the Court.

12.   Plaintiffs' new Motion for Preliminary Injunction has been filed with sufficient time so that it may be heard on the same date as Intervenors' Motion to Dismiss (Docket No. 49) on July 1, 2013.

13.   No party will be prejudiced by the filing of the new Motion for Preliminary Injunction. All parties will have the time afforded under the Federal Rules of Civil Procedure and Local Rules to respond to the new motion, and file a reply in support thereof.

14.   Attached hereto as Exhibit D is a true and correct copy of an article, cited in the Motion for Preliminary Injunction, by Jacob Weis published on May 9, 2013, entitled *No Condoms in Porn Country*, and available at: http://projectwordsworth.com/no-condoms-in-porn-country.

15.   Attached hereto as Exhibit E is a true and correct copy of an article, cited in the Motion for Preliminary Injunction, by Mark Kernes, published on May 7, 2013, entitled *The Latest Porn Unfriendly Place: Ventura County*, and available at http://business.avn.com/articles/legal/The-Latest-Porn-Unfriendly-Place-Unincorporated-Ventura-County-516286.html.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0145

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed at Washington, District of Columbia on May 29, 2013.

/s/ Ronald G. London
Ronald G. London

DECLARATION OF RONALD G. LONDON

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0146

EXHIBIT  D                    ER0147

Case 2:13-cv-04590-DDP-AGR Document 55-24 Filed 05/29/13 Page 32 of 57 Page ID #:721

*If you enjoy this story, we ask that you consider paying for it.*
*Please see the payment section below.*



# No Condoms in Porn Country

### By Jacob Weis

MAY 9, 2013

Logan Pierce is hard at work. There's a girl draped across the bed behind him, lying patiently among red rose petals and spotless white sheets. She pushes one of the flower bits off her thigh with a fingertip. Pierce sighs, swigs some bottled water, wipes his brow, turns back to the bed for the next take. Facing her again, Pierce smiles despite himself. He looks past the silent black-rimmed cameras trained on the prone brunette, the handful of slow-breathing crew members gathered around, watching but not watching, the dangling booms and white-hot lights, and faithfully finds his co-star's gaze.

"And just like that," he says, "I fall in love."

Pierce, who is 22, finished the scene—aptly titled Rose Petals—about an hour later, its conclusion coming when he did. He's a porn star, one of a handful of men in the adult industry to earn a reputation as something other than a prop for female performers to rub up against. Porn noticed: just eight months after he

ER0148

filmed his first scene, Pierce won the coveted Best Male Newcomer award at the 2012 Adult Video News ceremony in Vegas. Not bad for a Philly kid in L.A. for a post-grad internship. The accolade propelled Pierce's rep, leading the boyish—slim build, wide-eyes, floppy brown hair—porn-fan to over 200 jobs in the past year.

Pierce says he's successful for two reasons.

1. He loves his job. (All chime in now: Like that's hard.) Pierce's take on his occupation: "I shot a scene on a yacht off the coast of Ibiza last month. I didn't just go there; I got paid to go there. And I didn't just get paid; I got paid to fuck beautiful women."

2. He's romantic. "If I'm going to make love to a girl," he tells me after wrapping Rose Petals, "I'm going to make that girl think that I'm in love with her. I'm going to worship her body." Such on-set dedication is rare in porn, where detachment despite sex is key to maintaining any semblance of what Pierce calls a "normal emotional life" off set. Case in point: days before we met, Pierce broke up with a girlfriend of three months, who, despite being a porn performer herself, couldn't reconcile with her boyfriend's daily emotional investment on the job.

Pierce's romantic nature makes him considerate, too: "I'm the only male performer who actually wipes his come off the girl at the end." Pierce says his co-stars are shocked every time: no other guys ever bother. This makes girls clamor to work with him. Hence, popular. Hence, successful.

But things may be changing for Pierce. Lately his romanticism—or "porn-idealism," as he puts it—has led him far from sets populated by horn-rimmed

ER0149

teachers and horny housewives. The stud is now plaintiff in a lawsuit to repeal Measure B, a new law that makes condoms mandatory everywhere in Los Angeles County that a male performer plans to penetrate a co-star on film. Specifically anally or vaginally, so you know. Excluding oral and other, more fetishy stuff, so you know more.

Pierce protested Measure B because if he didn't, he worried "no one else would." He still isn't sure whether most porn performers don't voice their opinions more because "they are afraid of the ridicule" of the public's daylight-eye, "or because they have nothing to say." Either way, unafraid and with plenty to say, Pierce decided to play the leader. To "fight for a cause I believe in." Through December, he spoke with Kayden Kross, a female star consistently ranked in the top five of any 100 Hottest Porn Stars! list published since her first D.V.D. cover in 2006, and adult production giant Vivid Entertainment. In January, on behalf of Pierce, Kross and itself, Vivid lawyered up, retaining porn's most celebrated judicial champ, First Amendment and criminal defense attorney Paul Cambria of Buffalo, New York.

From there things moved fast. On January 11th, Cambria—who politely prefers the industry he represents referred to as "adult," rather than "porn"—sought an injunction against L.A. County's Director of Public Health Jonathan Fielding, District Attorney Jackie Lacey and L.A. County itself to repeal Measure B.

His suit's grounds? Expansive.

Foremost and "extremely important," Cambria argues that Measure B infringes his clients' First Amendment rights of free expression.

"On the bases of prior restraint"—government censorship on expression before

the expression is even expressed— and content-based regulation —expression blocked based on its substance—Cambria tells me from his Buffalo office, condoms compromise porn's rights. By requiring actors to don rubbers while they perform on camera, the county is dictating how content creators make their films. That's unacceptable constitutionally, according to the attorney.

And Cambria knows his Constitution—especially when it comes to after-dark entertainment. The broad-jawed, slick-locked attorney has represented nudie heavyweights since the 1970s, when pornographers like Hustler founder Larry Flynt were routinely brought up on obscenity charges. Cambria represented Flynt back in the day, saw the skin-mag icon shot in the spine outside a Lawrenceville, Georgia courthouse during an obscenity trial in 1978. Cambria has defended rapper DMX, rocker Marilyn Manson, "everyone from judges to priests" since, filling a slot on porn's speed dial all the way.

He tells me condoms corrupt pornographers' creativity by breaking the illusion their films thrive on.

"Let's say this was the Pirates of the Caribbean movies, which take place in the 1730s," he says. "And all of a sudden Captain Jack whips out a condom. It kind of destroys the movie. The whole creative process."

Condoms could be similarly ridiculous in porn.

"What if we had a movie where a couple was trying to have a child, and they couldn't?" Cambria asks. Desperate to get knocked up, the wife—let's call her Darla—decides to have sex with the four other members of her husband's bowling team. Everyone's willing enough, Cambria explains, but every time Darla approaches a bowler, he reaches for a condom. There goes the premise.

ER 0151

"That's actually not far fetched as a subject for one of these movies," Cambria offers the silence on the other end of the line.

For Kayden Kross, rights are means to profits. The California native is likely what you picture when someone says "porn star:" tousled yellow hair, a form simultaneously toned and curved, a red upper lip as swollen as its lower sister, bright eyes that in photos play only coy or yes or surprise!

She's also smart, and works to sound it. She navigates her sentences carefully but edged, like a woman crossing a minefield the rest of the world refuses to acknowledge.

"Legislators will never come out and explicitly say they're going to amend your free speech rights," she tells me, pinioning her cell between her chin and shoulder as she herds a yippy puppy into her L.A. apartment. "Instead they'll do something like enforce condoms, knowing we have a consumer base that won't buy condom porn, eating away at our sales and stunting our business."

Besides, Kross continues, performers are healthy without condoms. Long before Measure B, the industry instituted a "green test" policy, she says. Every two weeks, each performer underwent a urine-based test for a host of S.T.D.s. No green result, no roles.

Kross has relied on porn's testing procedures since her first scene six years ago. She still does, traveling out of L.A. County almost daily to film scenes bareback.

ER0152

"The testing is tried and true," she asserts. "I've been shooting a movie a month since I started, and I've never had a dirty test."

Porn's in-place testing has been "mandated through 100 percent of the industry" since 1998, adds Pierce. But mandatory condoms make that testing redundant, and producers won't waste money on two safeguards. With condoms the new standard, Pierce cautions, producers will "take anyone off the street and throw a condom on him." More random dudes in the porn pool makes for more danger of disease brought in from outside the community. Which makes mandatory condoms potentially more dangerous than porn's testing.

"There are no protections," says Cambria, "that are as good as the testing that had been working in the adult industry for all these years."

I f you have an afternoon to kill, ask an adult performer if they enjoy filming with condoms. Spoiler: They do not. Latex is Kryptonite to porn stars.

"We're shooting for 45, 60 minutes at a time, in positions that are not ideal for condoms at all," Kross explains. The "high energy, high impact" positions, invented "to open up for the camera so you can get a clear shot," coupled with constant "switching and stretching in different ways," says Kross, makes putting a "latex barrier in between those very sensitive organs" extremely irritating, extremely quickly.

The male perspective?

ER0153

"I can't tell you how much I despise wearing condoms," Pierce tells me. "They are restricting and abrasive. They dry the girl out and dry themselves out so you have to keep reapplying them." The hassle slows shoots down, which "amounts to male talent losing wood, everyone losing energy, needing more lube." The naked comedy of errors continues: "Then the card's full on the D.S.L.R. and by the time you get a new one, no one's even horny anymore."

Other concerns?

"Believe it or not," says Pierce, "there are a lot of girls in this industry who have latex allergies."

Stocked with porn's anti-condom rationale, I contacted reps of L.A. County's health community. I wondered if sharing porn's reasons would affect how the Measure B camp weighs its do-good law.

Not so much.

Paula Tavrow has been involved with Measure B since before it had a name. One mild California evening in 2005, Tavrow, the Director of the Bixby Program in Population and Reproductive Health at U.C.L.A.'s School of Public Health, heard some of her graduate advisees talking about porn. What does sexual health in the adult industry look like? the students wondered. Tavrow organized a series of speakers to fill the students in: visiting porn performers told one side, health officials another. But the two stories were irreconcilable. To porn, their industry was as healthy a livelihood as dentistry; health workers saw the barometer closer to volcano spelunking.

ER0154

Piqued, Tavrow oversaw a one-day "think tank" that "brought all the players together…to see if there was a way we could bridge our differences," she says, "and agree on a healthier way for porn to proceed in L.A."—if necessary. Attendees included public health officials, porn stars and producers, even Paul Cambria. But porn was "very antagonistic" to the idea of safer, condomed sex being mandatory, Tavrow says, something the public health camp maintained was a reasonable suggestion. No consensus was reached by day's end.

"That's when the AIDS Healthcare Foundation got interested," says Tavrow. The A.H.F., the largest community-based HIV/AIDS medical provider in the U.S., had attended Tavrow's strategy session. They sensed a worthy cause in porn's condoms; a publicized estimate that 22 L.A. HIV infections since 2004 could be traced to the industry soon followed. The A.H.F. drafted a proposition for the law that would become Measure B—and started fundraising immediately. Over the next six years, the nonprofit collected nearly $1.7 million. The coffer dwarfed the $118,000 raised by the adult industry to campaign against the fledgling Measure; with little trouble, the A.H.F. swayed the L.A. city council to approve their condom proposition, dubbing it the County of Los Angeles Safer Sex in the Adult Film Industry Act. (Less of a mouthful, 'Measure B' is the law's street name.)

But problem, not solved. Most porn was shot in the San Fernando Valley, well out of L.A. city limits. So the A.H.F. went county-wide, placing Measure B on the presidential ballot in November, where the act would appear before the most voters possible. By Election Day 2012, the foundation's treasure chest had put in

ER0155

work: "Vote Yes on B" billboards, t-shirts, and sign-twirlers dotted the county. The electorate responded; 89 percent of L.A. County presidential voters casted ballots on Measure B, and the proposition became law.

W hile condoms-on-set is everyone's favorite Measure B point to yell about, it isn't the whole law. Measure B makes porn real, a lawful business with serious safety procedures and penalties for screwing around. To

**ER0156**

wit: Before they film, producers must obtain what the Measure calls "adult film production public health permits" from the County; pay permit fees to cover salaries of "condom inspectors" (that's a Kross-ism) who will inspect porn's collective penis periodically; prove everyone on-set took a course in bloodborne pathogen safety.

Any violations are punishable by $1,000 fines or six months in county jail. Or both. Multiple violations are punishable as separate offenses, so multiply the fines and jail time by however many condoms or permits producers don't provide their sets.

Then there's an obscure bit towards the Measure's end: "Any person or entity issued a permit for the filming of an adult film…are [sic] required to maintain engineering and work practice controls sufficient to protect employees from exposure to blood and/or any other potentially infectious materials controls, in a matter consistent with California Code of Regulation, Title 8, Section 5193."

But the details of Title 8, Section 5193 are nowhere on Measure B.

I found them on the California Division of Occupational Safety and Health site. For something not on the Measure, Section 5193 has a lot of strings. Outlining "barrier protections" from infectious materials, it's what guarantees safe conditions for workers in medically dangerous places, like hospitals. Porn workers are exposed to the same possibly infectious materials hospital workers are, the Measure reasons, so they should be entitled to the same protections. Whether they like it or not.

That means Measure B doesn't just affect performers. Any employee who will be exposed to infectious materials on-set—which could be anyone present, as

fly around porn sets at unpredictable times and angles, like lasers in Star Trek—must take the same precautions as the performers themselves, says 5193.

And the precautions are steep. Working on a porn set or in a hospital means never knowing exactly what's in the fluid flying at your head or spattered on the floor waiting for your clean up. Better super-safe than very dead: In such an environment, all bodily fluids—all blood, semen, vaginal excretions, etc.—are "treated as if known to be infectious for HIV…and other bloodborne pathogens," per Section 5193.

Quick question: If you were getting ready to go to work orifice-deep in HIV-laced goo, how would you dress?

I'd pack a mask. Maybe two. I'd double-up on gloves. I'd suit up hazmat-style.

Section 5193 feels about the same. It orders "personal protective" parameters undertaken when exposure to possible pathogens is likely, including safety goggles, masks, gloves; prohibiting eating, drinking, smoking, applying cosmetics or contact lenses on exposed surfaces; decontaminating exposed equipment with bleach before traveling.

Endless safety measures meant to protect workers from lazy or cheap employers who provide dangerous working conditions that might infect and kill. With Measure B, L.A.'s health department slapped a biohazard sticker on the entire L.A. County adult entertainment industry.

Ask a porn performer if they feel condoms, gloves, goggles and the rest of Measure B makes their jobs safer. They'll say yes. I asked a bunch, and that's what happened. But they're quick to add that they aren't going to gear up like

ER0158

Fukushima radiation screeners before work every day. No matter what health officials advise. They'd rather leave L.A. County. And take thousands of jobs with them, according to the Valley Industry and Commerce Association, the San Fernando Valley's largest business advocacy group.

Is that what the A.H.F. wanted all along?

To the A.H.F.'s Mark McGrath, Measure B is common sense.

"I'm actually astonished at the resistance we've had," McGrath tells me. He was one of Tavrow's bored grad students in 2005, brainstorming for something interesting to research. After receiving his master's in public health from U.C.L.A., McGrath joined a L.A. County Health Department investigative team studying an outbreak of gonorrhea and HIV in the adult industry. Then the A.H.F. came knocking. McGrath now consults for the nonprofit: he drafted Measure B's language and its website's talking points, and organized its campaign.

McGrath considers the adult industry "quasi-human trafficking."

"The industry feels it has no limits," he says, "like they could at any time conceive a scenario and put a young man or young woman in that scenario, with no liability—at least for the producer."

So he and his provided liability: "In Hollywood, we have stunt people. They do a lot of crazy shit. But they take precautions—they have to. The person on fire isn't actually on fire."

"Porn does double anal penetration," Tavrow adds. "That's so dangerous for the woman"—only slightly less dangerous than pyrotechnics. "So we made it safer."

But it's not all workers' safety. It's financial, too. When run-of-the-mill unregulated workers suffer injuries on the job, "the county agencies, as the main healthcare resources, end up paying those costs," says McGrath. No difference in porn: as long as adult performers have fallen ill, California medical clinics have been "subsidizing this industry's reckless disregard for human safety," he says.

The adult industry has higher rates of S.T.D.s like chlamydia and gonorrhea than those of the general population, says McGrath. Technically, that's an epidemic. Measure B is the answer, he continues, "the most cost effective way to prevent exposure." And ensure California clinics don't burn cash treating more outbreaks than it should be.

Here's where I cleared my throat and related porn's reasons for rejecting the rubbery cure. But McGrath and Tavrow had heard them before.

"The free speech argument is a symptom of the adult industry's impotence," McGrath answers. "It's the only trick they have in their bag. And it won't work."

Tavrow explains why: She'd always expected Cambria to lob a First Amendment argument. "That's why we made it very clear in Measure B that they don't have to show condoms in the final product," she says. Health officials couldn't care less if Pierce's condom is visible as he beds Kross on film, only that it's there. Transparent condoms, digital tweaking of tape in postproduction to remove

rubbers and "tricks of the trade," Tavrow says, like creative camera angles and contorted limb-positioning would leave the industry's final product unaffected by Measure B.

Producers can even fake the "so-called money shot—you know, when they spray a women's face with semen," Tavrow continues in a voice that suddenly sounds too much like my bubbie's to be detailing such things. "There are substances that look like semen that you can spray all over her and the public would…think it was coming out of some guy's penis or several guys' penises," she tells me.

And if porn claims the fudging would cost too much—which they did, to me—Tavrow calls them savvy exaggerators. The Ph.D. has spoken to porn producers who confided in her privately that they already spend substantial time and money on digital postproduction, "weeks," she says, "removing zits and scar lines from bad breast jobs on actresses." Removing condoms wouldn't be an extra burden.

But can postproduction remove hazmat suits? I ask.

What hazmat suits? McGrath replies.

According to the drafter of Measure B, porn is "fear mongering" when they say Section 5193 will make for sex scenes between cosmonauts. Gloves? Required only when fisting, McGrath says. Goggles? Only in money shot scenes, worn by the performer being shot with money—and only if his or her co-star is aiming for the eyes. No condoms in oral sex scenes either, unless there's an open sore on either party's pertinent part.

ER0161

"Anywhere that broken skin or a mucus membrane like the eyes" come in contact with blood" or other potentially infectious fluids, McGrath says, constitutes exposure and necessitates a protective barrier. But fluid "contacting unbroken skin is not considered an exposure," and doesn't require dressing up.

So Title 5193 is less severe than porn complains. No hazmat suits, gloves, goggles or masks on anyone not about to touch a questionable substance with their eye, anus, abraded anus, or wound. That means no plastic on the cameraman at all. Unless he plans on getting frisky with a sound-guy's mucus membrane.

I f it's unwise to ask a porn star about having sex on latex, it's downright dumb to ask a California health expert whether porn's preemptive testing is ship-shape.

"That's what the producers tell the performers," McGrath says with a huff. "That they're using the most up-to-date scientific protocols to keep them safe." Really, as far as McGrath's medical circle assesses, "the testing they're doing is inadequate," falls woefully short of "recommendations from health departments."

Porn "should be swabbing anatomical sites, i.e. rectums and throats," McGrath explains, "but instead they're using urine-based tests," which are outdated and "miss as much as two-thirds of the infections."

As far as the S.T.D.s that performers and producers are aware of, floating down their bloodstreams or clinging to their soft pink organs, McGrath sighs, "We—they—are looking at a tip of the iceberg."

ER0162

An estimate of the submerged part of that iceberg: "Sexually Transmitted Infection Testing of Adult Film Performers: Is Disease Being Missed?" a study by Christina Rodriguez Hart, another of Tavrow's former students, analyzed S.T.D.s treated by L.A. County clinics in 2010 and found that an adult performer is 8.5 and 34 times more likely than any other sexually active adult to contract chlamydia and gonorrhea, respectively.

"Worse yet," McGrath said, "the reinfection rate within a year is very high—between 25 percent and 26 percent." Even if porn's old-school test hits on a performer's disease and he or she is cured, they're likely to get sick again. Quick.

"And yet," MsGrath adds, "producers have convinced their performers that this testing is a cleansing ritual," a biological members-only pass to a party of protected intimates. "Something that matters."

T "hey're full of shit."
   -Kayden Kross

Porn remains dubious. Despite the data, Kross still flatly refuses to perform with condoms. She seems as worried about S.T.D.s on set as she is about poison dart frogs.

But the longer we speak, the more her script slips. Turns out Kross isn't fully reassured by porn's testing procedures or some biophysical trust built between performers. She's secure most of all because she's popular.

ER0163

Kross, who is 27, has killed it in porn since she first unzipped for the camera. Hot enough to land video and magazine covers, Kross says she "has a lot of pull with the fans." Which translates into pull on set. If she "asked for the moon," she laughs, producers would "hand it to her with a fucking bow on it."

Kross's pull leverages her healthy choices: she picks whom she performs with and when. Less popular performers risk their jobs if they refuse to work bareback with a co-star who hasn't been tested in nearly month; top stars like Kross don't. She says no thanks, producers find her another warm body.

Kross offers an analogy to connect her popularity to her Measure B aversion: "Let's say Major League Baseball was thinking about introducing a new rule to require protective vests for pitchers" so they aren't killed by line drives to the chest. "And the high end, valuable players said they didn't want the rule. But the little people in the minor league who sit on the bench all day said they did want it. Are you going to pass this law because the little people who are barely in the sport at all want it?"

Unfortunately for Kross, the answer to her rhetorical question is, apparently, yes. The law passed. Seems the "little people" had some pull, too.

Logan Pierce's case for Measure B also slips lower the longer he makes it. The more we chat, the more he talks about the tougher days in porn, like the November afternoon he partook in a six-man-one-girl gangbang.

"That was a fucking weird experience," Pierce exhales. He was a porn rookie, and had never done anything remotely orgy-tastic before. But ready or not, the cameras started rolling. "At least the girl was into it," he says.

Pre-scene:

"I love it," Sarah Shevon ogles into the camera lens a foot from her face. She's perched on the edge of a teacher's desk, the chalkboard behind her blank. Her dark hair, thick-framed glasses, red mouth and white blouse, top two buttons open, convey some conflation of teacher and asking for it. It's been a year and a half since her last gangbang, she confides in the camera, all lashes and dimples, "and I've really been itching for more."

"What do you want to accomplish here?" the cameraman persists.

"I just want to be busy," Shevon shrugs, miming stroke-motions in the air around her head. "Get as many cocks in me as I can."

Cut to that happening.

Shevon loses her shirt and skirt, masturbates at the head of the class, then hops down and crawls between the students' desks, fishing under them for those male parts she mentioned. It must be a night class for adults, because some of her students are at least 45. No worries. Shevon seems, as Pierce says, "into it."

Shevon's game-day attitude got Pierce through. Barely. To turn himself on, he still had to tap into "those dark fantasies everyone has," he says, "throw all romance aside" and give in to the "subconscious, visceral, primal." Not a place Pierce often likes to go.

ER0165

But it worked. The day was successful because he connected with his co-star.

That's what Pierce hoped his lawsuit would do, he explains, segueing so fast my eyes cross. Pierce wanted the suit to connect the porn community, give it a cause to rally behind.

I first spoke to Pierce three weeks after Cambria filed his suit. Three months later, Pierce's enthusiasm is faded. "I haven't heard dick from those people," Pierce says. "Not one word from those lawyers since my name was written on that bill."

After all the frantic fundraising, press calls, wide-eyed commercials series, "Vote No On B" bannered buses, solemn Ron Jeremy YouTube spots, swarms of platinum-blonde and goateed picketers in front of Hustler Hollywood chanting "Keep my wienie free/ No on Measure B," countless interviews and tweets and retweets by everyone from M.I.L.F.-niche-staple Lisa Ann to perpetually eye-brow-cocked porn boy toy James Deen; and after hiring Paul Cambria—who don't come cheap—porn has done nothing?

Seems not.

Unless it was a play, I offer.

A ruse. A firestorm of feigned outrage because outrage is interesting and what's interesting grabs eyes. What if porn's lawsuit against Measure B was never a fight the industry planned on winning—or even seriously waging? Was just another role up for hungry takers, another set with more thoroughly clothed actors and even droller writing, where the only real difference was what the performers meant when they said briefs?

ER0166

"I honestly wouldn't put it past them," Pierce says with a sigh. Over the last fourteen weeks, once the phone stopped ringing with Cambria or Vivid C.E.O. Steven Hirsch on the line, vetting Pierce to make sure he "wasn't a moron, didn't represent them poorly," he says, Pierce's righteous chest deflated. He wondered why a kid who'd just entered the industry was entrusted such a representative role. "What about the guys that have been in porn for 20 years? Shouldn't they have a voice?" he asked himself.

Unless those industry vets were seasoned enough to know what this was from the start: A noisemaker for its own sake. Maybe Pierce took the role—"which was casted for, by the way; Vivid wanted one female and one male," Pierce tells me—not because he was brave, but naïve.

Pierce now suspects his bosses "just wanted something on paper that they could spit out and make into a public statement."

K ross is less concerned. From the beginning, putting her name on the suit was a no-lose scenario, however it turned out in court. "Being a plaintiff let me do N.P.R., B.B.C., big mainstream interviews," she says. Thanks to the highly publicized protest, "my name got exposure, which furthers my brand, which makes me more valuable to Digital Playground," Kross's main employer. "It's a self-helping loop."

The more work a porn performer does outside of adult content, the more currency she banks within the agency, Kross explains, extending the popularity lesson she gave me before. Landing mainstream roles (like playing a porn star in an episode of The League, as Kross did in 2011) means making new fans who

will trail the star back to porn. The Crossover Star of the Year award, one of the A.V.N.'s "most coveted," says Kross, recognizes the performer with the most mainstream currency. Kross has been nominated, but never won. She has high hopes for 2014.

Unlike Kross, Pierce was still new by Measure B's birth. He didn't understand as she did that the game is Exposure: porn star with the most by day's end wins. Or that lawsuits are in-bounds. To him, porn wasn't a job or a business, but a fun way to pass time that he incidentally was paid for—how lucky. So he stayed buoyant, romantic. Fell in love every day. Signed onto suits he believed in, causes he felt were worth fighting for.

But while his name lines the top of porn's suit, producers are probing escape routes. Kross travels out of L.A. County by car, Pierce himself is flown to Ibiza. Even Cambria, who maintains that things are progressing as planned—"We have filed challenging constitutionality and our motion for a preliminary injunction is pending," he recently wrote me—says "company after company is stopping production, moving somewhere else."

Why should they stay? The opposition is surging: in mid-April, a Central District of California judge granted the A.H.F.'s Measure B wing, Yes on B, "Leave to Intervene" in Cambria's suit, putting the foundation—and its "huge lobbying money," per Cambria—officially in the fight. Two weeks later, California Assembly Bill 332, a statewide version of B, cleared the state's Committee on Labor and Employment in a unanimous, bipartisan vote. Any further and the barebacked porn dude is an endangered species.

Even Kross, jaded, doesn't think porn's suit stands a chance. And she's its female lead.

"I don't think we'll win. That's how it is," she tells me. "That's the world."

The A.H.F. sure doesn't mind porn's fatalism. To the foundation, thousands of porn jobs fleeing the County is a healthy sacrifice.

"I don't give a shit about their jobs," McGrath tells me. "Are these the types of jobs we need in California?"

P ierce is flagging at work. Porn is familial—its intimacy fast and deep—but not communal, the average performer departing forever after three months. It's fun, but only until abuse rears or profits wilt. He loves the play, and for him the going is still good, so he'll linger for now. But he's learned from Measure B, from its loud, limp suit. And he'll reposition.

"Imagine every day you fuck a girl and fall in love," Pierce tells me as he turns onto a dusky L.A. highway and I fail miserably for the hundredth time to fathom what he asks.

"But it's just a fantasy world, and they throw it away when they're done."

Like    48        Tweet    97

*Great stories are worth something. Help us figure out how much.*

ER0169

*How much is this story worth to you? Please enter an amount:*

$ [          ]  [ Pay now ]

*All proceeds go to the authors.*

Read More Stories (/)

© Project Wordsworth (/) 2013 | Illustrations by Eléonore (Léo) Hamelin (http://www.eleonorehamelin.com)
Authors (/authors/) | ⬛ Facebook (https://www.facebook.com/ProjectWordsworth) 🐦 Twitter (https://twitter.com/ProjWordsworth)

ER0170

EXHIBIT E
ER0171



Welcome! Sign in or become a member!

NEWS   MOVIES   MAGAZINES   EVENTS   AVN LIVE   AVN ID   CHARTS   MARKETPLACE   FORUM   GLBT

Home › Business › Legal News › The Latest Porn-Unfriendly Place: Unincorporated Ventura County

# The Latest Porn-Unfriendly Place: Unincorporated Ventura County



Posted May 07th, 2013 03:46 PM by Mark Kernes

 5     33    3

**VENTURA, Calif.**—It stretches from roughly Topanga Canyon Boulevard on the southeast to where Route 150 meets the Pacific Coast Highway on the northwest, and now this 1845 square mile patch of land has become the latest California community to officially become unfriendly to the adult entertainment industry. In other words, the Ventura County Board of Supervisors has today unanimously passed the "mandatory condom" ordinance introduced in late April by County Supervisor Linda Parks (R-District 2). The ordinance will take effect immediately.

ADVERTISEMENT



Parks allegedly sponsored the ordinance, whose text was unavailable at press time, after she had been contacted by residents of Newbury Park who complained that they could "hear and see the sex scenes" being shot at a home in the unincorporated neighborhood of Ventu Park.

The County Board of Supervisors is not the first Ventura County body to have passed a "mandatory condom" ordinance (though how much more than condoms are required will depend on the text of the ordinance). The city of Simi Valley recently passed an ordinance similar to the one adopted by the City of Los Angeles late last year, but with the added requirements that an on-site health care professional monitor the condom use, and that the producer submit a copy of the finished production to the Simi Valley Police Department to confirm compliance. Thousand Oaks, while lacking a specific ordinance related to adult filming, nonetheless has a requirement that any production company planning to shoot in the city obtain an agreement to the shoot from 90 percent of neighbors within 200 feet of the filming site. And finally, the city of Camarillo in late March enacted a 45-day moratorium on any adult filming in the city—a moratorium that is up for extension within the next few days.

Of course, it's not surprising that there's been so much anti-adult sentiment in the county. Of Ventura County's roughly 800,000 residents, 49.3 percent of its registered voters were Republicans according to the 2010 census, though the county did marginally favor Barack Obama in the 2008 and 2012 elections.

Unknown is whether AIDS Healthcare Foundation, which successfully petitioned both the city and county of Los Angeles to enact "barrier protection" ordinances, had had any contact either with Parks to write the just-enacted ordinance and/or with other supervisors to lobby in favor of its passage.

Like  5    Tweet  33    3

E-mail   Comments

Previous article
This Week in Censorship News: Japan and the UK

Next article
Sanctioned Copyright Lawyer Says He Will Appeal Judge's Order

Related Content:

Article Authors

Mark Kernes

Comments



YOU DESERVE
BETTER BILLING

AMERICAN AND EUROPEAN
IPSP AND DMA SOLUTIONS
THAT PUT YOU FIRST.

Commerce
Gate GLOBAL BILLING
BARCELONA MIAMI LA

- Open for Business!

US: (866) 877 1964    INTL: +34 931 149 991
sales@commercegate.com

ER0172

**Please log in to comment.**
**Don't have a free account? Become a member!**

*By participating you agree to our Privacy Policy & the AVN "Be Kind Policy"
and represent that you are not under the age of 18.*

## Related Topics

Ventura County   condoms   barrier protection   hazmat suits   ordinance   Linda Parks   Republican





**Advertise with AVN  |  Contact Us  |  Privacy Policy  |  Sitemap**
All models were at least 18 years old at the time of their performance.
18 U.S.C. 2257 Record-Keeping Requirements Compliance Statement.

© 2013 AVN Media Network

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES <br><br> Defendants. | ) Case No. **CV 13-00190 DDP (AGRx)** <br> ) <br> ) <br> ) **[PROPOSED] ORDER RE MOTION** <br> ) **FOR PRELIMINARY INJUNCTION** <br> ) <br> ) Date:  July 1, 2013 <br> ) Time: 10:00 a.m. <br> ) <br> ) Courtroom 3 <br> ) <br> ) Action Filed:      January 10, 2012 <br> ) <br> ) [Filed concurrently with Plaintiffs' <br> ) Motion for Preliminary Injunction, <br> ) Request for Judicial Notice, <br> ) Declarations of Ronald London, Steven <br> ) Hirsch, Logan Pierce and Kayden <br> ) Kross] |

[PROPOSED] ORDER

# [PROPOSED] ORDER

Having considered the Motion for Preliminary Injunction and its supporting papers submitted by Plaintiffs Vivid Entertainment, LLC, Califa Productions, Inc., Jane Doe a/k/a Kayden Kross, and John Doe a/k/a Logan Pierce ("Plaintiffs"), opposition documents, and oral argument, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for Preliminary Injunction is GRANTED, as follows:

1.     Defendants County of Los Angeles, Jonathan Fielding, Director of the Los Angeles County Department of Public Health, Jackie Lacey, Los Angeles County District Attorney ("Defendants"), and their agents, employees and representatives, are hereby enjoined from enforcing Los Angeles County Code, Division 1, Title 11, Chapter 11.39, sections 11.39.005 through 11.39.150, and Division 1, Title 22, section 22.56.1925 (collectively "Measure B") during the pendency of the above entitled action.

2.     No other entity, whether public or private, may enforce Measure B during the pendency of the above entitled action.

**IT IS SO ORDERED.**

DATED: _____     By:_____
Hon. Dean D. Pregerson

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017
(213) 633-6800
Fax: (213) 633-6899
ER0175

Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: samantha.azulay@aidshealth.org
Christina Yang (SBN 266363)
E-Mail: christina.yang@aidshealth.org
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450
*Attorneys for Intervenors*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce, <br><br> Plaintiffs, <br><br> vs. <br><br> JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES, <br><br> Defendants, and <br><br> MICHAEL WEINSTEIN, MARIJANE JACKSON, ARLETTE DE LA CRUZ, MARK MCGRATH, WHITNEY ENGERAN, and the CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION <br><br> Defendants-Intervenors. | Case No.: 13-CV-00190-DDP-AGR <br><br> **INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF SAMANTHA AZULAY IN SUPPORT THEREOF** <br><br> Date:      July 1, 2013 <br> Time:      10:00 a.m. <br> Judge:     Dean D. Pregerson <br> Location:  Courtroom 3 |

INTERVENORS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

ER0176

and does not contain provisions that go beyond simply reducing the risk of spreading diseases. Measure B is narrowly tailored, regulating only conduct that could result in transmitting a disease, and allowing whatever content Plaintiffs choose to show and sell in the end. Thus, Plaintiffs fail to allege that Measure B is not narrowly tailored to achieve its goals. *See Harnish*, 783 F.2d at 1540 (upholding ordinance as "the city did no more than eliminate the exact source of the evil it sought to remedy.").

### 4. *Ample Alternative Channels for Communication.*

Plaintiffs have the burden of alleging that no alternative means of communication exist if Measure B is enforced. Plaintiffs have failed to do so. "[T]he First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places. . . ." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 791 (1984).

Again, nowhere in their Complaint do Plaintiffs show that they cannot express the viewpoints they want to express in their final product. Plaintiffs are free to make and sell a final product that depicts (digitally or through simulation) unprotected sex if that is the message they seek to express. Further, because these films can be viewed virtually anywhere, the performance is not location-specific, and Plaintiffs do not allege that the content or broadcast requires them to make their films only in Los Angeles County, they have alternative channels of communication. Alternative modes of communication need only be "ample" (*Foti v. City of Menlo Park,* 146 F.3d 629 (9th Cir. 1998), *amended on denial of rehearing* 1998 U.S. App. LEXIS 17149, No. 97-16061 (9th Cir. 1998)), not equivalent or as subjectively desirable. Since Plaintiffs have ample ways to express themselves, Measure B is a valid time, place and manner restriction.

### C. **Plaintiffs' Allegation That First Amendment Rights May Not Be Limited By Referendum Is Not Supported By Law.**

ER0177

1  PATRICIA L. GLASER - State Bar No. 55668
   pglaser@glaserweil.com
2  JOEL N. KLEVENS - State Bar No. 45446
   jklevens@glaserweil.com
3  JOHN LY - State Bar No. 247477
   jly@glaserweil.com
4  GLASER WEIL FINK JACOBS
      HOWARD AVCHEN & SHAPIRO LLP
5  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
6  Telephone: (310) 553-3000
   Facsimile:  (310) 556-2920
7
   *Attorneys for Defendants County of Los Angeles,*
8  *Dr. Jonathan Fielding, and Jackie Lacey*

9              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
10

11 VIVID ENTERTAINMENT, LLC;            CASE NO. CV 13-00190 DDP (AGI)
   CALIFA PRODUCTIONS, INC.; JANE
12 DOE a/k/a Kayden Kross; and JOHN     Hon. Dean Pregerson
   DOE a/k/a Logan Pierce,
13                                      **DEFENDANTS' RESPONSE TO**
                    Plaintiffs,         **PLAINTIFFS' MOTION FOR**
14                                      **JUDGMENT ON THE PLEADINGS**
                                        **AND MOTION FOR**
15 vs.                                  **PRELIMINARY INJUNCTION**

16 JONATHAN FIELDING, Director of       Date:      May 6, 2013
   Los Angeles County Department of     Time:      10:00 a.m.
17 Public Health, JACKIE LACEY, Los     Courtroom: 3
   Angeles County District Attorney, and
18 COUNTY OF LOS ANGELES,

19                  Defendants.

20

21

22

23

24

25

26

27

28

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR PRELIMINARY INJUNCTION**                    **ER0178**

801128

Defendants Jonathan Fielding, Jackie Lacey, and County of Los Angeles (collectively, "Defendants") submit their Response to the Motion for Judgment on the Pleadings and Motion for Preliminary Injunction (the "Motions") filed by Vivid Entertainment, LLC, Califa Productions, Inc., Jane Doe a/k/a Kayden Kross, John Doe a/k/a Logan Pierce ("Plaintiffs"). As stated in prior court filings, and before this Court, Defendants have declined to defend the constitutionality of the County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B") and have taken a position of neutrality regarding whether Measure B is constitutional and/or preempted by California law. For these reasons, Defendants do not take a position on the merits of the Motions and support efforts by Plaintiffs and Proposed Intervenors to resolve the important constitutional challenges raised in the Motions as expeditiously as possible.

Although Defendants do not take a position on Plaintiffs' constitutional challenges to Measure B, Defendants dispute Plaintiffs' representation in their Motion for Judgment on the Pleadings that the Department of Public Health (the "Department") failed to "obtain reliable evidence supporting the provisional fee" for Measure B permits. (*See* Plaintiffs' Judgment on Pleadings, 13:23-14-10.) In particular, Plaintiffs contend that "[t]he Department [of Public Health] set the 'provisional fee' range in a December 14, 2012 letter, that was devoid of analysis, findings, factual basis, or explanation . . ." (*Id.*) Plaintiffs' representations are improper because they rely upon Plaintiffs' interpretation of the *contents* of a December 14, 2012 letter that Plaintiffs ask this Court to judicially notice. Because Defendants dispute Plaintiffs' interpretation of the contents of the letter (and not the letter's existence), Plaintiffs' representations regarding the provisional fee should be disregarded for purposes of their Motion for Judgment on the Pleadings. *See Cactus Corner, LLC v. U.S. Dept. of Agric.*, 346 F. Supp. 2d 1075, 1100 (E.D. Cal. 2004) ("To the extent [the public documents'] contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice.") aff'd, 450 F.3d 428 (9th

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR PRELIMINARY INJUNCTION**

**ER0179**

1   Cir. 2006).

2       Defendants submit this Response with the understanding that Proposed

3   Intervenors' Motion to Intervene, which was heard by this Court on April 15, 2013,

4   was taken under submission.  During the hearing, the Court stated that it was inclined

5   to grant the Motion to Intervene and requested that Plaintiffs and Proposed

6   Intervenors submit a briefing schedule for the Motions.  Because no briefing schedule

7   has been submitted, and the Motions remain on calendar, Defendants submit this

8   Response and reserve their right to submit an amended and/or additional response, if

9   necessary, once a briefing schedule is submitted and approved by the Court.

10

11  DATED:  April 15, 2013          GLASER WEIL FINK JACOBS
                                       HOWARD AVCHEN & SHAPIRO LLP
12

13                                 By: /s/ Joel N. Klevens
14                                     PATRICIA L. GLASER
                                       JOEL N. KLEVENS
15                                     JOHN LY
16                                     *Attorneys for Defendants County of Los Angeles,*
                                       *Dr. Jonathan Fielding, and Jackie Lacey*
17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AND
MOTION FOR PRELIMINARY INJUNCTION**

801128

1  PATRICIA L. GLASER - State Bar No. 55668
   pglaser@glaserweil.com
2  JOEL N. KLEVENS - State Bar No. 45446
   jklevens@glaserweil.com
3  JOHN LY - State Bar No. 247477
   jly@glaserweil.com
4  GLASER WEIL FINK JACOBS
     HOWARD AVCHEN & SHAPIRO LLP
5  10250 Constellation Boulevard, 19th Floor
   Los Angeles, California 90067
6  Telephone:  (310) 553-3000
   Facsimile:  (310) 556-2920
7
   *Attorneys for Defendants County of Los Angeles,*
8  *Dr. Jonathan Fielding, and Jackie Lacey*

9              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
10

11 VIVID ENTERTAINMENT, LLC;              CASE NO. CV 13-00190 DDP (AGI)
   CALIFA PRODUCTIONS, INC.; JANE
12 DOE a/k/a Kayden Kross; and JOHN       Hon. Dean Pregerson
   DOE a/k/a Logan Pierce,
13                                        **DEFENDANTS' *SUPPLEMENTAL***
                 Plaintiffs,              **STATEMENT OF NON-**
14                                        **OPPOSITION TO PROPOSED**
   vs.                                    **INTERVENORS' MOTION TO**
15                                        **INTERVENE**
   JONATHAN FIELDING, Director of
16 Los Angeles County Department of       Date:        April 15, 2013
   Public Health, JACKIE LACEY, Los      Time:        10:00 a.m.
17 Angeles County District Attorney, and  Courtroom: 3
   COUNTY OF LOS ANGELES,
18
                 Defendants.
19

20

21

22

23

24

25

26

27

28

794834

Defendants Jonathan Fielding, Jackie Lacey, and County of Los Angeles (collectively, "Defendants") submit this ***Supplemental*** Statement of Non-Opposition to Proposed Intervenors' Motion to Intervene ("Supplemental Non-Opposition").[1] This Supplemental Non-Opposition is filed in response to the Opposition to the Proposed Intervenors' Motion to Intervene ("Opposition") filed by Plaintiffs Vivid Entertainment, LLC, Califa Productions, Inc., Jane Doe a/k/a Kayden Kross, John Doe a/k/a Logan Pierce (collectively, "Plaintiffs"). In the Opposition, Plaintiffs mischaracterized Defendants' position with respect to the County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B") by stating that Defendants had elected to defend the constitutionality of Measure B. Contrary to Plaintiffs' assertions, Defendants have declined to defend the constitutionality of Measure B and have taken a position of neutrality regarding whether Measure B is constitutional and/or preempted by California law.

Because Defendants are not defending the constitutionality of Measure B, Defendants do not oppose the motion to intervene filed by the proponents of Measure B in this action. *See Perry v. Brown*, 52 Cal.4th 1116, 1139 (2011) (holding that proponents of initiative measure have authority to defend initiative's validity when elected officials decline to do so). In fact, Defendants indicated in their Answer that Measure B's proponents were necessary parties in litigating the constitutionality of Measure B. (Defendants' Answer to Complaint, ("Answer"), First and Second Affirmative Defenses, Dock. #21.)

Also, contrary to Plaintiffs' contentions, Defendants filed the Answer and hired outside counsel to defend the individual defendants named by Plaintiffs in the Complaint.[2] As Defendants stated in the preamble of their Answer, Defendants

---

[1] Defendants filed a Statement of Non-Opposition to Proposed Intervenors' Motion to Intervene on March 11, 2013. (*See* Dock. # 28.)

[2] In the event that Measure B is declared unconstitutional and/or preempted by California law, Defendants maintain that they are not responsible for reimbursing Plaintiffs' attorneys' fees. (Answer, Eighth Affirmative Defense); *Washburn v. City*

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

DEFENDANTS' ***SUPPLEMENTAL*** STATEMENT OF NON-OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE

ER0182

794834

1 support efforts by Plaintiffs and the Proposed Intervernors to resolve the important

2 constitutional questions raised by Measure B as expeditiously as possible. (Answer,

3 Preamble.)

4        Accordingly, Defendants respectfully submit this Supplemental Non-

5 Opposition to clarify Defendants' position before the hearing on Proposed

6 Intervenors' Motion to Intervene.

8 DATED: March 29, 2013       GLASER WEIL FINK JACOBS
                   HOWARD AVCHEN & SHAPIRO LLP

10              By: /s/ Joel N. Klevens

11                 PATRICIA L. GLASER

12                 JOEL N. KLEVENS

13                 JOHN LY
                *Attorneys for Defendants County of Los Angeles,*

14                 *Dr. Jonathan Fielding, and Jackie Lacey*

28 *of Berkeley,* 195 Cal. App. 3d 578, 581 (1987)

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

DEFENDANTS' *SUPPLEMENTAL* STATEMENT OF NON-OPPOSITION TO PROPOSED
INTERVENORS' MOTION TO INTERVENE

794834

1  PAUL J. CAMBRIA, JR. (State Bar No. 177957)
       pcambria@lglaw.com
2  LIPSITZ GREEN SCIME CAMBRIA LLP
3  1631 West Beverly Blvd., Second Floor
   Los Angeles, CA 90026
4  Telephone: (323) 883-1807

5  JANET L. GRUMER (State Bar No. 232723)
       janetgrumer@dwt.com
6  MATTHEW D. PETERSON (State Bar No. 251490)
       matthewpeterson@dwt.com
7  DAVIS WRIGHT TREMAINE LLP
8  865 South Figueroa Street, Suite 2400
   Los Angeles, CA  90017-2566
9  Telephone: (213) 633-6800

10 *See attached for additional counsel for Plaintiffs*

11
   Attorneys for Plaintiffs
12 VIVID ENTERTAINMENT, LLC; CALIFA
   PRODUCTIONS, INC.; JANE DOE A/K/A
13 KAYDEN KROSS; AND JOHN DOE A/K/A
   LOGAN PIERCE
14
15                    UNITED STATES DISTRICT COURT

16                   CENTRAL DISTRICT OF CALIFORNIA

17
18 VIVID ENTERTAINMENT, LLC;          ) Case No. **CV 13-00190 DDP (AGRx)**
   CALIFA PRODUCTIONS, INC.;          )
19 JANE DOE a/k/a Kayden Kross;       )
   and JOHN DOE a/k/a Logan Pierce,   ) **PLAINTIFFS' OPPOSITION
20                                     ) TO MOTION TO INTERVENE AND
                    Plaintiffs,        ) DECLARATION OF ROBERT
21                                     ) CORN-REVERE WITH EXHIBIT A**
           vs.                         )
22                                     ) Hearing Date: April 15, 2013
   JONATHAN FIELDING, Director of     )
23 Los Angeles County Department of   ) Action Filed: January 10, 2013
   Public Health, JACKIE LACEY, Los   )
24 Angeles County District Attorney, and )
   COUNTY OF LOS ANGELES              )
25                                     )
                    Defendants.        )
26 _____)

27
28

_____
OPPOSITION TO MOTION TO INTERVENE

*Additional counsel for Plaintiffs:*

H. LOUIS SIRKIN (*Admitted Pro Hac Vice*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*Admitted Pro Hac Vice*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*Admitted Pro Hac Vice*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

OPPOSITION TO MOTION TO INTERVENE

1

**DAVIS WRIGHT TREMAINE** LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**ER0185**

and Defendants are able to represent Proposed Intervenors' interests.  Thus, as in *Perry*, permissive intervention is not warranted.  *Perry*, 587 F.3d at 955.

Moreover, allowing Proposed Intervenors to intervene would unduly delay and complicate these proceedings.  Fed. R. Civ. Proc. 24(b)(3).  As in *Perry*, the delay and complication that would result from Proposed Intervenors' inclusion as a party would easily outweigh the value added by their participation.  587 F.3d at 956.  For example, Proposed Intervenors would seek to conduct discovery on the exact same issues as Defendants, creating unnecessary duplication (to the extent any discovery is necessary in this case).  Similarly, Proposed Intervenors will file essentially the same motions and oppositions as Defendants, given the uniformity of interests between the two, creating unnecessary work for all parties and the Court.

## V.     PROPOSED INTERVENORS LACK ARTICLE III STANDING

Proposed Intervenors should be denied intervention, whether by right or permissively, for the independent reason that they lack the requisite constitutional standing.  Article III, § 2, of the Constitution confines federal courts to deciding "Cases" or "Controversies."  Standing to sue or defend is an aspect of the case or controversy requirements.  *Arizonans For Official English*, 520 U.S. at 64 (citations omitted).

To qualify as a party with standing to litigate, a person must show, first and foremost, "an invasion of a legally protected interest" that is "concrete and parti-cularized" and "actual or imminent."  *Id.* (citations omitted).  "An interest shared generally with the public at large in the proper application of the Constitution and laws *will not do*."  *Id.* (emphasis added, citation omitted).

There is currently a split amongst the circuits as to whether an intervenor applicant under Rule 24 must establish Article III standing independent of the other parties.  *See Prete v. Bradbury*, 438 F.3d 949, 956 n. 8 (9th Cir. 2006) (illustrating split with cases from 2nd, 6th, 8th, and D.C. Circuits); *accord Perry*, 587 F.3d at 950 n. 2 (citing *Prete*).  The law is not settled in the Ninth Circuit on this issue.  *See id.*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
ER0186

(noting the Ninth Circuit "has not definitively ruled on the issue"); *accord Perry*, 587 F.3d at 950 n. 2 ("We have yet to decide whether putative intervenors must satisfy [Article III] standing independently of the parties to the case.").[2]

Though the Supreme Court has not resolved this circuit split, it has held, for purposes of appeal, that "[a]n intervenor cannot step into the shoes of the original party unless the intervenor independently 'fulfills the requirements of Article III.'" *Arizonans For Official English*, 520 U.S. at 65 (quoting *Diamond v. Charles*, 476 U.S. 54, 68 (1993)). The Court further pointed out that it has never "identified initiative proponents as Article III-qualified defenders of the measures they advocated," *id.* (citing *Don't Bankrupt Wash. Comm. v. Continental Ill. Nat. Bank & Trust Co. of Chicago*, 460 U.S. 1077 (1983)), and concluded that it had "grave doubts whether [proposed intervenors] have standing under Article III." *Id.* at 66.

The Supreme Court has made it clear, however, that "[t]hose who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Col. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475-76 (1982). Article III requirements cannot be skirted for reasons of judicial economy or otherwise. *See id.* at 471-75 ("neither the counsels of prudence nor the policies implicit in the 'case or controversy' requirement should be mistaken for the rigorous Art. III requirements themselves"); *see also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima.").

Based upon these authorities, many courts have determined that "the Constitution requires that prospective intervenors have Article III standing to litigate their claims in federal court." *Mausolf v. Babbitt*, 85 F.3d 1295, 1300 (8th Cir. 1996); *see also Building & Const. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)

---

[2] As noted above, the Ninth Circuit's opinion in *Yniguez*, that appears to suggest Article III standing is not required, has no precedential authority due to being vacated by the Supreme Court. *See Prete*, 438 F.3d at 955 n. 8.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0187

("[B]ecause an intervenor participates on an equal footing with the original parties to a suit, a movant for leave to intervene under Rule 24(a)(2) must satisfy the same Article III standing requirements as the original parties."). In *Mausolf*, the court reasoned that an Article III case or controversy "is one where all parties have standing, and a would-be intervenor, because he seeks to participate as a party, must have standing as well." 85 F.3d at 1300. The court further noted that "an Article III case or controversy, once joined by intervenors who lack standing, is – put bluntly – no longer an Article III case or controversy." *Id*. The court further noted that because an intervenor "asks the court to decide the merits of the dispute, he must not only satisfy the requirements of Rule 24, he must also have Article III standing." *Id*. The court noted in conclusion that "the fact remains that a federal case is a limited affair, and not everyone with an opinion is invited to attend." *Id*. at 1301.

Because federal courts are intended to be of limited jurisdiction, the Article III standing requirements apply to all parties, including those attempting to intervene under Rule 24. Accordingly, Proposed Intervenors must demonstrate an interest in this case that is "concrete and particularized" and "actual or imminent." *Arizonans For Official English*, 520 U.S. at 64. The right to propose and advocate for legislation "does not also suggest . . . a right to intervene in every lawsuit . . . to forever defend statutes [an advocacy organization] helped to enact." *Keith v. Daley*, 764 F.2d 1265, 1270 (7th Cir. 1985).[3] *See also Fox Valley Reprod. Health Care Ctr., Inc. v. Arft*, 82 F.R.D. 181, 182 (E.D. Wisc. 1979) (finding no standing and noting "Rule 24(a)(2) is not a device through which cases raising issues of public importance may be opened up for public debate"). *Cf. Northland Family Planning*

---

[3] In Ninth Circuit law, the question under Rule 24 of whether proponents of ballot measures have a sufficient "direct and substantial interest in the subject matter" has been decided under state law, which is insufficient for the Article III question of whether a party has suffered an invasion of a "legally protected interest." Therefore, Plaintiffs refer the Court to the analysis in courts where state law is not determinative on the Rule 24 issue, as the discussions therein are relevant to the question of whether Proposed Intervenors have Article III standing.

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0188

*Clinic, Inc. v. Cox*, 487 F.3d 323, 345-346 (6th Cir. 2007) (intervention should not be "abused as a mechanism for the over-politicization of the judicial process").

Here, the Motion does not mention or address whether Proposed Intervenors have standing under Article III. In addition, Proposed Intervenors' claims that they have a "significantly protectable interest" for purposes of Rule 24(a), are insufficient to show they have a legally protected interest for purposes of Article III. *See* Motion at 10-14. In essence, Proposed Intervenors argue that because they put Measure B on the ballot and supported its passage by the voters, they have an interest in these proceedings. *See id.* Proposed Intervenors do not, however, point to any actual or imminent, concrete interest in Measure B, other than their desire to see it upheld and enforced. For example, there is no claim that any of the Proposed Intervenors are involved in the creation of adult films, or engage in intimate contact with individuals who work in the adult film industry, such that the work place safety or alleged public health concerns that Measure B purports to address directly affect them. *Cox*, 487 F.3d at 345-346 (advocacy group has no real interest where it "is not itself regulated by any of the statutory provisions at issue here" and has "only an ideological interest in the litigation"). As the Supreme Court held, a general interest in the proper application of the law "will not do" for Article III standing. *Arizonans For Official English*, 520 U.S. at 64.

///

///

///

OPPOSITION TO MOTION TO INTERVENE

DAVIS WRIGHT TREMAINE LLP
865 S FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0189

1   PATRICIA L. GLASER - State Bar No. 55668
    pglaser@glaserweil.com
2   JOEL N. KLEVENS - State Bar No. 45446
    jklevens@glaserweil.com
3   JOHN LY - State Bar No. 247477
    jly@glaserweil.com
4   GLASER WEIL FINK JACOBS
      HOWARD AVCHEN & SHAPIRO LLP
5   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
6   Telephone: (310) 553-3000
    Facsimile: (310) 556-2920
7
8   *Attorneys for Defendants County of Los Angeles,
    Dr. Jonathan Fielding, and Jackie Lacey*
9            UNITED STATES DISTRICT COURT
             CENTRAL DISTRICT OF CALIFORNIA
10
11  VIVID ENTERTAINMENT, LLC;          CASE NO. CV 13-00190 DDP (AGR)
    CALIFA PRODUCTIONS, INC.; JANE
12  DOE a/k/a Kayden Kross; and JOHN   Hon. Dean Pregerson
    DOE a/k/a Logan Pierce,
13                                     **DEFENDANTS' STATEMENT OF**
                  Plaintiffs,          **NON-OPPOSITION TO**
14                                     **PROPOSED INTERVENORS'**
                                       **MOTION TO INTERVENE**
15  vs.
                                       Date:      April 1, 2013
16  JONATHAN FIELDING, Director of     Time:      10:00 a.m.
    Los Angeles County Department of   Courtroom: 3
17  Public Health, JACKIE LACEY, Los
    Angeles County District Attorney, and
18  COUNTY OF LOS ANGELES,
19                Defendants.
20
21
22
23
24
25
26
27
28

794834

Defendants' Jonathan Fielding, Jackie Lacey, and County of Los Angeles (collectively, "Defendants") hereby state that they do not oppose the Proposed Intervenors' Motion to Intervene (docket no. 24).

DATED: March 11, 2013

GLASER WEIL FINK JACOBS
HOWARD AVCHEN & SHAPIRO LLP

By: /s/ Joel N. Klevens
PATRICIA L. GLASER
JOEL N. KLEVENS
JOHN LY
*Attorneys for Defendants County of Los Angeles, Dr. Jonathan Fielding, and Jackie Lacey*

DEFENDANTS' NON-OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE

ER0191

794834

Tom Myers (SBN 176008)
E-Mail: tom.myers@aidshealth.org
Samantha R. Azulay (SBN 283424)
E-Mail: Samantha.azulay@aidshealth.org
AIDS Healthcare Foundation
6255 W. Sunset Blvd., 21st FL
Los Angeles, CA 90028
Phone: 323-860-5200
Fax: 323-467-8450

*Attorneys for Proposed Intervenors Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC;<br>CALIFA PRODUCTIONS, INC.;<br>JANE DOE a/k/a Kayden Kross; and<br>JOHN DOE a/k/a Logan Pierce,<br><br>       Plaintiffs,<br><br>vs.<br><br>JONATHAN FIELDING, Director of<br>Los Angeles County Department of<br>Public Health, JACKIE LACEY, Los<br>Angeles County District Attorney, and<br>COUNTY OF LOS ANGELES,<br><br>       Defendants. | Case No.: 13-CV-00190-DDP-AGR<br><br>PROPOSED INTERVENORS'<br>NOTICE OF MOTION, MOTION TO<br>INTERVENE, AND MEMORANDUM<br>OF POINTS AND AUTHORITIES<br>SUPPORTING MOTION TO<br>INTERVENE<br><br>Date:     April 1, 2013<br>Time:    10:00 a.m.<br>Judge:   Dean D. Pregerson<br>Location: Courtroom 3 |

---

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE

ER0192

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on **April 1, 2013, at 10:00 a.m.,** or as soon thereafter as the matter may be heard, before the Honorable Dean D. Pregerson in Courtroom 3, United States District Court for the Central District of California, 312 N. Spring Street, Los Angeles, California 90012, Michael Weinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath, Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation (collectively referred to as "Proposed Intervenors"), will move this Court for an order allowing them to intervene in this case. Proposed Intervenors respectfully request an order allowing them to intervene in this case to guard their significant protectable interest in the subject matter of this lawsuit.

Respectfully Submitted,

DATED:  March 1, 2013            AIDS HEALTHCARE FOUNDATION

By: *Samantha Azulay*
TOM MYERS
SAMANTHA R. AZULAY
*Attorneys for Proposed Intervenors*

---

1

**PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE**

ER0193

**1.** **Proposed Intervenors Have Timely Filed This Motion.**

Three criteria determine whether a motion to intervene satisfies the timeliness requirement: (1) the stage of the proceedings; (2) the reason for delay, if any, in moving to intervene; and (3) prejudice to the parties. *Glickman*, 82 F.3d at 836-837. Proposed Intervenors filed their motion at the very earliest stages of this proceeding (a day after the deadline for Defendants to file a responsive pleading); they have not delayed in moving to intervene; and the parties will not be prejudiced in any way because Proponents' intervention will not delay the current case activity.

**2.** **Proposed Intervenors Have A Significantly Protectable Interest In The Subject Matter Of This Lawsuit.**

The Ninth Circuit has consistently adopted the principle that the Proponents of a ballot measure have a sufficient interest in the subject matter of litigation attacking the measure to intervene as a matter of right. *See Perry v. Brown*, 671 F.3d 1052, 1064 (9th Cir. Cal. 2012) (conferring authority on the official proponents of Proposition 8 to defend the constitutionality of that initiative); *Yniguez v. State of Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) ("there is a virtual *per se* rule that the sponsors of a ballot initiative have a sufficient interest in the subject matter of the litigation to intervene pursuant to Fed. R. Civ. P. 24(a)."); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (ruling that a public-interest group and chief petitioner who supported "an initiative [had] a 'significant protectable interest' in defending the legality of the measure"); *Spellman*, 684 F.2d at 630 (holding that "the public interest group that sponsored the [challenged] initiative[] was entitled to intervention as a matter of right under Rule 24(a)").

Most recently, when faced with this issue after the passage of Proposition 8, a statewide gay marriage ban, the Ninth Circuit asked the California Supreme Court to certify the question of whether, "the official proponents of an initiative

ER0194

1  measure possess either a particularized interest in the initiative's validity or the
2  authority to assert the State's interest in the initiative's validity, which would enable
3  them to defend the constitutionality of the initiative upon its adoption or appeal a
4  judgment invalidating the initiative, when the public officials charged with that
5  duty refuse to do so." *See Perry v. Schwarzenegger*, 628 F.3d 1191, 1193 (9th Cir.
6  2011). The California Supreme Court unanimously ruled that "the official
7  proponents of the initiative are authorized … to appear and assert the state's
8  interest in the initiative's validity." *Perry v. Brown*, 52 Cal. 4th, 1116, 1127 (Cal.
9  2011). In making its ruling, the California Supreme Court stated:

> Plaintiffs have not cited, and our research has not disclosed, any
> decision in which the official proponents of an initiative measure
> were precluded from intervening or appearing as real parties in
> interest in a postelection case challenging the measure's validity, even
> when they did not have the type of distinct personal, legally protected
> interest in the subject matter of the initiative measure that would
> ordinarily support intervention or real party in interest status on a
> particularized interest basis. Instead, they have been permitted to
> participate as parties in such litigation simply by virtue of their status
> as official proponents of the challenged measure.

18  *See Perry v. Brown*, 52 Cal. 4th at 1147-1148.

19  Indeed, a long line of Ninth Circuit precedent supports intervention by
20  initiative proponents, initiative sponsors, and constitutional-amendment supporters.
21  In *Yniguez*, the Ninth Circuit held that an organization and spokesman who
22  campaigned for a ballot initiative had "sufficient interest[s] in the subject matter of
23  the litigation to intervene" in a suit challenging that initiative. *Yniguez*, 939 F.2d at
24  735. In *Prete*, the court ruled that the chief initiative petitioner and a public
25  interest group that supported the initiative had "a 'significant protectable interest'
26  in defending the legality of the measure." *Prete*, 438 F.3d at 954. Similarly, in
27  *Spellman*, the court found that "the public interest group that sponsored the
28  [challenged] initiative[] was entitled to intervention as a matter of right under Rule

PROPOSED INTERVENORS' NOTICE OF MOTION, MOTION TO INTERVENE, AND
MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING MOTION TO INTERVENE

ER0195

1  24(a)." *Spellman*, 684 F.2d at 630. And, in *Idaho v. Freeman*, 625 F.2d 886, 887
2  (9th Cir. 1980), the Ninth Circuit concluded that an organization had the right to
3  intervene in a suit challenging the ratification procedures for a constitutional
4  amendment supported by that organization. Likewise, in *Sagebrush Rebellion, Inc.*
5  *v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), a case challenging the federal
6  government's creation of a wildlife conservation area, the court held that "there
7  [could] be no serious dispute . . . concerning . . . the existence of a protectable
8  interest" on the part of an organization that supported the conservation area's
9  creation. District courts have dutifully followed this guidance: in *Bates*, for
10 example, the Court permitted intervention by the official proponents of a state
11 constitutional amendment setting term limits for state legislators. *See Bates v.*
12 *Jones*, 904 F. Supp. 1080, 1086 (N.D. Cal. 1995) ("The individualized interest of
13 official proponents of ballot initiatives in defending the validity of the enactment
14 they sponsored is sufficient to support intervention as of right.").
15      Here, Proposed Intervenors are the official proponents and campaign
16 committee of Measure B, and as such, they hold unique legal statuses regarding
17 that initiative. By creating, proposing, and campaigning for Measure B,
18 Proponents have exclusively exercised many state statutory and constitutional
19 rights, including: (1) the right to propose Measure B by initiative; (2) the statutory
20 right to submit completed signature petitions, thereby authorizing the County to
21 place Measure B on the ballot; and (3) the statutory preference to designate
22 arguments in support of Measure B for the official voter guide. *See Perry v.*
23 *Brown*, 52 Cal. 4th at 1142 ("Under [Election Code sections related to preparing
24 arguments for the ballot pamphlet] and related statutory provisions . . . the official
25 proponents of an initiative measure are recognized as having a distinct role—
26 involving both authority and responsibilities that differ from other supporters of the
27 measure—with regard to the initiative measure the proponents have sponsored.")
28 *see also Yniguez*, 939 F.2d at 733 ("[State] law recognizes the ballot initiative

ER0196

1  sponsor's heightened interest in the measure by giving the sponsor official rights
2  and duties distinct from those of the voters at large").  Similarly, the Campaign
3  Committee holds a distinctive legal position: it is the only "primarily formed ballot
4  measure committee" under California law endorsed by Proponents in support of
5  Measure B.  In short, Proposed Intervenors' unique legal statuses regarding
6  Measure B are unmatched by any other person or organization.

7        Proposed Intervenors have indefatigably labored in support of Measure B.
8  Proponents complied with a myriad of legal requirements to procure Measure B's
9  enactment, such as (1) filing forms prompting the County to prepare Measure B's
10  Title and Summary, (2) paying the initiative filing fee, (3) drafting legally
11  compliant signature petitions, (4) overseeing the collection of more than 372,000
12  signatures, (5) instructing signature-collectors on state-law guidelines, and (6)
13  obtaining certifications from supervising signature-gatherers.  Weinstein decl. at ¶¶
14  3-7 and 10.  Proponents devoted substantial time, effort, and resources through
15  fundraising, campaigning, monetary donations, organizing volunteers, and
16  assisting the Committee.  Weinstein decl. at ¶ 6.  Likewise, the Campaign
17  Committee—which was responsible for all aspects of the campaign (aside from
18  those legal duties assigned exclusively to Proponents)—labored incessantly,
19  collecting and disbursing over $2 million dollars, all with the goal of achieving
20  Measure B's enactment.  Weinstein decl. at ¶ 6.  It is thus clear that Proposed
21  Intervenors—unlike any other person or organization—have invested greatly in
22  enacting and protecting Measure B.

23        In this case, Plaintiffs directly challenge Measure B under the Federal
24  Constitution.  It is well settled under Ninth Circuit precedent that Proposed
25  Intervenors' unique legal status as Measure B's official proponents and campaign
26  committee endow them with a significantly protectable interest permitting them to
27  intervene as of right.  *See Perry v. Brown*, 671 F.3d at 1064; *Yniguez*, 939 F.2d at
28  735; *Prete*, 438 F.3d at 954; *Spellman*, 684 F.2d at 630; *Bates*, 904 F. Supp. at

ER0197

1086. Ninth Circuit precedent also demonstrates that Proposed Intervenors'
tireless support of Measure B also establishes their right to intervene. *See
Sagebrush Rebellion*, 713 F.2d at 528; *Freeman*, 625 F.2d at 887.

### 3. This Court's Ruling Might Impair Proposed Intervenors' Significantly Protectable Interests.

When a proposed intervenor "would be substantially affected in a practical
manner by the determination made in the action, he should, as a general rule, be
entitled to intervene." *Berg,* 268 F.3d at 822 (quoting the Advisory Committee's
notes from Fed. R. Civ. P. 24). Not surprisingly, the Ninth Circuit has routinely
concluded that supporters of an initiative or amendment have a sufficiently
protectable interest that could be impaired by a suit challenging the supported
provision. S*ee Prete*, 438 F.3d at 954 ("[A]n adverse court decision on such [an
initiative] measure may, as a practical matter, impair the interest held by the public
interest group"); *Bates*, 904 F. Supp. at 1086 ("The interest of . . . the official
proponents of [the challenged] Proposition . . . in its continued validity could
obviously be impaired in this litigation"); *Freeman*, 625 F.2d at 887 (holding that
an organization's protectable interest in a constitutional amendment supported by
that organization "would as a practical matter be significantly impaired by an
adverse decision"); *Sagebrush Rebellion*, 713 F.2d at 528 (holding that "there can
be no serious dispute . . . concerning . . . the existence of a protectable interest on
the part of the [proposed intervenor] which may, as a practical matter, be
impaired").

Here, Plaintiffs ask this Court to declare that Measure B violates the United
States Constitution. They also seek to enjoin County officials from enforcing that
newly enacted provision of the County Code. If the Court grants this relief, all
Proposed Intervenors' labor in support of Measure B will be for naught. Thus, this

ER0198

1   PATRICIA L. GLASER - State Bar No. 55668
    pglaser@glaserweil.com
2   JOEL N. KLEVENS - State Bar No. 45446
    jklevens@glaserweil.com
3   JOHN LY - State Bar No. 247477
    jly@glaserweil.com
4   GLASER WEIL FINK JACOBS
      HOWARD AVCHEN & SHAPIRO LLP
5   10250 Constellation Boulevard, 19th Floor
    Los Angeles, California 90067
6   Telephone: (310) 553-3000
    Facsimile: (310) 556-2920
7
    *Attorneys for Defendants*
8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

11  VIVID ENTERTAINMENT, LLC;              CASE NO. CV 13-00190 DDP (AGI)
    CALIFA PRODUCTIONS, INC.; JANE
12  DOE a/k/a Kayden Kross; and JOHN       Hon. Dean Pregerson
    DOE a/k/a Logan Pierce,
13                                         **DEFENDANTS' ANSWER TO**
                    Plaintiffs,            **PLAINTIFFS' COMPLAINT**
14
15  v.

16  JONATHAN FIELDING, Director of
    Los Angeles County Department of
17  Public Health, JACKIE LACEY, Los
    Angeles County District Attorney, and
    COUNTY OF LOS ANGELES,
18
19                  Defendants.
20
21
22
23
24
25
26
27
28

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

**DEFENDANTS' ANSWER TO COMPLAINT**

Defendants' Jonathan Fielding, Jackie Lacey, and County of Los Angeles, by and through counsel, answer Plaintiffs' Complaint for Declaratory and Injunctive Relief as follows:

Plaintiffs' Complaint presents important constitutional questions that require and warrant judicial determination. In a constitutional democracy, it is the role of the courts to determine and resolve such questions. To the extent that Plaintiffs have stated a justiciable controversy, setting forth federal constitutional challenges to the County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B"), it is appropriate for the federal courts to determine and resolve those challenges. Defendants encourage the Court to resolve the merits of this action expeditiously.

In response to each of the specific allegations in Plaintiffs' Complaint, Defendants respond as follows:

## INTRODUCTION

1. Answering paragraph 1 of the Complaint, Defendants admit that Plaintiffs have alleged that they seek to protect the First Amendment rights of producers of sexually oriented films, to uphold the supremacy of the law of the State of California, and to protect the livelihoods of those who work in and around the adult film industry. As to all other allegations contained therein, Defendants contend that said paragraph contains conclusions of law and not averments of fact to which an answer may be required.

2. Answering paragraph 2 of the Complaint, Defendants admit that Plaintiffs have filed a civil rights action for declaratory and injunctive relief that seeks to enjoin the enforcement of Measure B. As to all other allegations contained therein, Defendants contend that said paragraph contains conclusions of law and not averments of fact to which an answer may be required.

3. Answering paragraph 3 of the Complaint, Defendants admit that Measure B requires producers of adult films to pay a fee and obtain a permit that requires the completion of bloodborne pathogen training. Defendants further admit

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

1

### COUNT V
### SECTION 1983 CLAIM BASED ON UNCONSTITUTIONAL OVER-AND-UNDER-INCLUSIVENESS

59. Answering paragraph 78 of the Complaint, Defendants incorporate by reference their responses to paragraphs 1-58 as though fully restated herein.

60. Answering paragraphs 79-90 of the Complaint, Defendants contend that said paragraphs contain conclusions of law and not averments of fact to which answers may be required.

### COUNT VI
### SECTION 1983 CLAIM BASED ON VIOLATIONS OF DUE PROCESS

61. Answering paragraph 91 of the Complaint, Defendants incorporate by reference their responses to paragraphs 1-60 as though fully restated herein.

62. Answering paragraphs 92-98 of the Complaint, Defendants contend that said paragraphs contain conclusions of law and not averments of fact to which answers may be required.

### COUNT VII
### PREEMPTION BY STATE LAW

63. Answering paragraph 99 of the Complaint, Defendants incorporate by reference their responses to paragraphs 1-62 as though fully restated herein.

64. Answering paragraphs 100-106 of the Complaint, Defendants contend that said paragraphs contain conclusions of law and not averments of fact to which answers may be required.

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

Defendants reserve the right to have proponents of Measure B intervene and defend the constitutionality of Measure B in light of *Perry v. Brown*, 52 Cal.4th 1116 (2011).

#### SECOND AFFIRMATIVE DEFENSE

Plaintiffs have failed to join a party or parties necessary for a just resolution of

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

---

DEFENDANTS' ANSWER TO COMPLAINT

792787

ER0201

this matter and has further omitted to state any reasons for such failure.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state facts sufficient to constitute claims upon which relief can be granted against Defendants in that they have no discretion other than to comply with Measure B, unless Measure B is held to be unconstitutional or otherwise unenforceable.

### FOURTH AFFIRMATIVE DEFENSE

The Complaint fails to state facts sufficient to constitute claims upon which relief can be granted against Defendants in that they would be acting in good faith in performing their duties in complying with Measure B, unless Measure B is held to be unconstitutional or otherwise unenforceable.

### FIFTH AFFIRMATIVE DEFENSE

The injuries and damages Plaintiffs complain of, if any, resulted from the acts and/or omissions of others, and without additional conduct on the part of Defendants.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to allege and/or have not stated facts sufficient to show an affirmative link between Defendants and the acts which allegedly could violate Plaintiffs' rights.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants' acts were privileged under applicable statutes and case law, including immunity under federal law for official acts because Defendants' conduct under Measure B does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

### EIGHTH AFFIRMATIVE DEFENSE

To the extent Plaintiffs seek to recover attorneys' fees, such fees should not be assessed against Defendants because of special circumstances mandating Defendants' ministerial duties and in light of *Perry v. Brown*, 52 Cal.4th 1116 (2011).

**DEFENDANTS' ANSWER TO COMPLAINT**

Glaser Weil Fink Jacobs
Howard Avchen & Shapiro LLP

COPY

FILED

2013 JAN 10  PH 3: 15

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1   PAUL J. CAMBRIA, JR. (State Bar No. 177957)
        pcambria@lglaw.com
2   LIPSITZ GREEN SCIME CAMBRIA LLP
3   1631 West Beverly Blvd., Second Floor
    Los Angeles, CA 90026
4   Telephone: (323) 883-1807

5   JANET L. GRUMER (State Bar No. 232723)
        janetgrumer@dwt.com
6   MATTHEW D. PETERSON (State Bar No. 251490)
        matthewpeterson@dwt.com
7   DAVIS WRIGHT TREMAINE LLP
8   865 South Figueroa Street, Suite 2400
    Los Angeles, CA  90017-2566
9   Telephone: (213) 633-6800

10  *See attached for additional counsel for Plaintiffs*

11
    Attorneys for Plaintiffs
12  VIVID ENTERTAINMENT, LLC; CALIFA
13  PRODUCTIONS, INC.; JANE DOE A/K/A
    KAYDEN KROSS; AND JOHN DOE A/K/A
14  LOGAN PIERCE

15

16              UNITED STATES DISTRICT COURT

17              CENTRAL DISTRICT OF CALIFORNIA

18
    VIVID ENTERTAINMENT, LLC;              Case No. CV13-00190-DDP
19  CALIFA PRODUCTIONS, INC.;                         (AGR)
    JANE DOE a/k/a Kayden Kross;
20  and JOHN DOE a/k/a Logan Pierce,

21              Plaintiffs,               COMPLAINT FOR
                                          DECLARATORY AND
22      vs.                               INJUNCTIVE RELIEF

23  JONATHAN FIELDING, Director of
    Los Angeles County Department of
24  Public Health, JACKIE LACEY, Los
    Angeles County District Attorney, and
25  COUNTY OF LOS ANGELES

26              Defendants.

27

28

COMPLAINT

ER0203

*Additional counsel for Plaintiffs:*

H. LOUIS SIRKIN (*pro hac vice application to be filed*)
    HLS@santen-hughes.com
Santen & Hughes LPA
600 Vine Street, Suite 2700
Cincinnati, OH 45202
Telephone: (513) 721-4450

ROBERT CORN-REVERE (*pro hac vice application to be filed*)
    bobcornrevere@dwt.com
RONALD G. LONDON (*pro hac vice application to be filed*)
    ronnielondon@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0204

For their complaint, plaintiffs Vivid Entertainment, LLC ("Vivid"), Califa Productions, Inc. ("Califa"), Jane Doe, also known professionally as Kayden Kross ("Ms. Kross"), and John Doe, also known professionally as Logan Pierce ("Mr. Pierce"), allege as follows:

## INTRODUCTION

1. It is beyond dispute that erotic adult films are protected by the First Amendment, as applied to the States and their subdivisions under the Fourteenth Amendment. *See, e.g., Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65 (1981); *City of Renton v. Playtime Theatres,* 475 U.S. 41 (1986). Plaintiffs Vivid, Califa, Ms. Kross, and Mr. Pierce count themselves among the many producers, distributors, and performers of works that explore the "great and mysterious motive force in human life … [which] has indisputably been a subject of absorbing interest to mankind through the ages," *i.e.*, sexuality and sexual relations. *Roth v. U.S.*, 354 U.S. 476, 487 (1957). Through this action, Plaintiffs seek to protect the First Amendment rights of producers of sexually oriented films, to uphold the supremacy of the law of the State of California, and to protect the livelihoods of those who work in and around the adult film industry.

2. This civil rights action for declaratory and injunctive relief accordingly seeks to enjoin the enforcement of a new Los Angeles County ordinance that imposes an intolerable burden on the exercise of rights under the First Amendment to the United States Constitution.

3. The County of Los Angeles Safer Sex in the Adult Film Industry Act ("Measure B") forces producers of adult films, before any production can occur, to pay a fee and obtain a permit from the County Department of Public Health under a regime that requires all principals and management-level employees – including film directors – to complete blood borne pathogen training, and that allows immediate and potentially permanent permit revocation without prior notice. Measure B also

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0205

requires the use of condoms during production of adult films, though the performers are, as are all performers in adult films, consenting adults engaged in constitutionally protected expression. A true and correct copy of Measure B is attached to this Complaint.

4.　In this way, Measure B constitutes a facial violation of numerous protections provided by the First Amendment and is preempted by California state laws and regulations. Measure B claims to address the spread of HIV/AIDS and other sexually transmitted diseases, but improperly places unnecessary restrictions only on the adult film industry, and on its freedoms of expression and speech.

5.　Measure B is unnecessary, as the adult film industry already has strict requirements in place to protect its performers. Measure B's claims to the contrary are unsupported and inaccurate. Measure B's requirements also tread into an area that is the exclusive provenance of the California Department of Health and Human Services, and its Division of Occupational Safety and Health, and is thus preempted.

6.　Measure B also subjects the adult film industry to draconian penalties that the County Department of Public Health is given total discretion to apply at its whim. These potential penalties directly affect the livelihoods of the thousands of people who depend on the adult film industry for their livelihoods.

7.　Measure B further fails to reach all those engaged in the behavior it wishes to regulate, and more importantly fails to meaningfully address the public health issues it cites as its reason for existence.

## PARTIES

8.　Plaintiff Vivid Entertainment, LLC is a limited liability corporation duly organized and existing under the laws of the State of California, with its principal place of business in the City of Los Angeles, County of Los Angeles, California. Vivid has always placed heavy emphasis on high quality erotic film entertainment. Vivid employs a multitude of individuals in Los Angeles County in the advertising, distribution and sale of adult films, apparel, books, and a range of other products.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER 0206

9.     Plaintiff Califa Productions, Inc., is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in the City of Los Angeles, County of Los Angeles, California. Califa produces adult films exclusively for Vivid. Califa employs a multitude of individuals in Los Angeles County in the production of adult films.

10.     Plaintiff Kayden Kross is a performer who appears in adult films produced in the County of Los Angeles, California. Ms. Kross has worked in adult films for over six years, has during that time been a contract performer for Vivid, Adam & Eve, and Digital Playground, and has appeared in approximately 75 adult films. She has also appeared in several episodes of *The Block*, a reality program on G4TV, and of *Life on Top* on Cinemax, as well as in the FX comedy series *The League*, the theatrical motion picture *The Obsession*, and as a lead in the film *As Wonderland Goes By*. Ms. Kross writes columns regularly for publications such *Complex* and *Xbiz* magazines, has contributed to *Timothy McSweeny's Internet Tendency*, and her short story "Plank" appeared in the 2012 e-book collection *Forty Stories: New Writing from Harper Perennial*. Ms. Kross has also won several awards for her roles in adult films, from AVN and XBIZ, among others. Ms. Kross's expressive contributions to adult films are directly affected by requirements imposed under Measure B.

11.     Plaintiff Logan Pierce is a performer who appears in adult films produced in the County of Los Angeles, California. Mr. Pierce has worked in adult films for approximately one year, during which time he has performed in films produced by Penthouse, Brazzers, Twistys, and Reality King, appearing in approximately 150 adult films. Mr. Pierce's expressive contributions to these films are directly affected by requirements imposed under Measure B.

12.     All Defendants are sued in their official capacities only.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017
(213) 633-6800
Fax: (213) 633-6899

ER0207

13.     Defendant County of Los Angeles, California, is a county governmental unit created and authorized under the laws of California. It is authorized by law to maintain a Department of Public Health.

14.     Defendant Dr. Jonathan E. Fielding, MD, MPH, is the Director of the Los Angeles County Department of Public Health. Dr. Fielding is responsible for all public health functions for the County and for overseeing the Department of Public Health's staff of over 4,000 individuals.

15.     Defendant Jackie Lacey, Los Angeles County District Attorney, is a public official of the County of Los Angeles, and performs official duties within the County of Los Angeles. She is the chief law enforcement officer for the County of Los Angeles.

## JURISDICTION AND VENUE

16.     This action arises under 42 U.S.C. § 1983 and the United States Constitution. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, as well as under this Court's Original Jurisdiction, under which the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution. This Court further has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a). Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202. See also Fed. R. Civ. P. 65.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because one or more of the named Defendants perform their official duties in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred or will occur in this District.

## FACTUAL ALLEGATIONS

18.     The creation, production, promotion and sale of adult films and related materials are protected under the First Amendment to the United States Constitution. These activities and speech are further protected under the laws of the State of California.

COMPLAINT

4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

FR0208

19.     Despite these clear protections, certain individuals and state actors continue to try and limit certain forms of expression and speech, using various tactics including claiming to protect public health.

20.     The adult film industry has been aware of the potential health risks to its performers from exposure to blood borne pathogens and has taken multiple steps to address these risks.

21.     When the public was first becoming aware of diseases like HIV/AIDS and hepatitis, the adult film industry made information available to those working in the industry by describing the diseases, how they were transmitted, and ways to prevent exposure.

22.     Since the mid- to late-1990s, all leading creators and producers of adult film content, including Plaintiffs Vivid and Califa, have implemented strict requirements for each production to protect the models and performers, and to prevent the spread of HIV and other sexually transmitted diseases.

23.     Members of the adult film industry, including Plaintiff Vivid, assisted in founding the Adult Industry Medical Health Care Foundation ("AIM"), a testing and screening facility that provided HIV and STD testing and treatment, as well as counseling services and support group programs, to individuals who work in the adult film industry, as well as to the general public.

24.     More recently, the Free Speech Coalition, the adult entertainment industry's trade association, helped to establish Adult Production Health & Safety Services ("APHSS") to assist adult film producers and performers in ensuring safe and healthy work environments for all participants.  APHSS's Advisory Council includes representatives from adult film producers, adult film performers, performers' agents, a Medical Consultant, and a workplace safety attorney.

25.     APHSS's Medical Consultant establishes, with input from Free Speech Coalition staff, the APHSS Advisory Council, and STD experts, APHSS's policies and procedures for STD testing and guidelines for STD treatment by outside clini-

COMPLAINT

5

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0209

cians.  APHSS's Medical Consultant also updates APHSS's policies and procedures on a regular basis, performs periodic quality assurance reviews, and serves as the liaison with testing organizations, outside clinicians, and regulators.

26.    APHSS maintains a database of approved labs that have agreed to follow basic testing and notification protocols for HIV and STD safety in adult films. This has resulted in a nationwide network of clinics that can be relied upon by those who perform or intend to perform in adult films, for HIV and STD testing.  APHSS-approved clinics screen patients for HIV using the PCR/DNA test, and screen for Chlamydia and gonorrhea as well.

27.    APHSS-approved clinics provide continually updated information to APHSS on adult film performers who have a current negative-test status, based on testing every 14-28 days, and who are thus available for work in adult films.  APHSS in turn maintains a database of performers who have current negative-test results at APHSS-approved labs.

28.    The adult film industry also maintains a subsidy fund for APHSS testing.  Such subsidization makes testing affordable and accessible to all performers who appear or intend to appear in adult films, including those for whom testing might otherwise present a financial barrier or burden.

29.    Adult film producers and performers can access APHSS's database of available performers to confirm the negative-test status of any performer on any given date of production.  Under this regime, prior to any filming or production, all performers and models must present a driver's license and test results from the prior period showing a negative test for HIV and other STDs.

30.    All producers of adult films require testing at least once every 28 days, and some require testing every 14 days.  However, the highest-volume producer of adult films – and thus the producer deemed most desirable to work for by adult film performers – requires testing every 14 days for performers in its films.  As a result, 14-day testing is followed by a substantial proportion of adult film performers, and

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

virtually eliminates the possibility of HIV transmission, given the time required between initial infection and progressing to having a viral load necessary for sexual transmission/infection.

31. Compliance with this testing regime is universal. Without a current, negative test, or proper identification, no individual is allowed to participate in the creation of content in a way that would potentially expose anyone else to HIV or any other sexually transmitted disease. No law-abiding adult film producer would allow a performer to appear without a current APHSS or equivalent negative-test confirmation, and no performer would agree to film without confirming his or her co-performers' negative test.

32. In addition to these careful steps implemented and enforced unilaterally by the adult film industry, the State of California has enacted its own laws and regulations regarding exposure to blood borne pathogens.

33. The California Occupational Safety and Health Standards Board ("Standards Board"), and the Division of Occupational Safety and Health ("Cal-OSHA"), have exclusive jurisdiction over the field of occupational safety and health in California workplaces, including those in Los Angeles County. California state law specifically preempts cities and counties from regulating workplace health and safety standards related to blood borne pathogens.

34. California Labor Code section 142.3, subsection (a)(1) mandates that "[t]he [Standards] [B]oard shall be the only agency in the state authorized to adopt occupational safety and health standards." Labor Code section 144.7 requires the Standards Board to adopt a blood borne pathogen standard mandating employees exposed to blood borne pathogens in the workplace be provided with barrier protection. Title 8, Section 5193 of the California Code of Regulations contains the prescribed standards, and requires all employees exposed to blood borne pathogens, including semen and vaginal secretions, be provided with "personal protective equipment" by their employers. 8 Cal. Code Regs. Tit. 8, § 5193(b).

7

COMPLAINT

35.     Regulation 5193 and Labor Code section 144.7 set forth regulations to be followed by the adult film industry.  The California legislature has made it clear that the Standards Board has exclusive jurisdiction over conflicting occupational health and safety standards.  This exclusive jurisdiction preempts Defendants from adopting any such standards.  Furthermore, Defendants are preempted from enforcing Regulation 5193 and Labor Code section 144.7 in any manner.

36.     Despite the numerous and explicit protections for adult films under the First Amendment and California law, the adult film industry's careful protections for its performers and models, which are fastidiously followed and enforced, and the Standards Board's exclusive jurisdiction over occupational health and safety standards, Defendants allowed Measure B to be placed on the ballot for the November 2012 election.  Measure B was then approved by a 57-43% margin.

37.     In its text, Measure B acknowledges that "the production of sexually explicit adult films is legal in the State of California," and that Regulation 5193 provides requirements for the protection of performers and models in adult films.

38.     Measure B makes numerous other claims about links between the adult film industry and sexually transmitted infections that are misleading and incorrect.

39.     Measure B provides no evidentiary support for these claims, and does not reference any source materials, thus calling into question the veracity and accuracy of the statements purporting to support the need for Measure B.

40.     Despite its questionable foundation, Measure B implements restrictions and requirements for the entire adult film industry and all those who depend on it for their livelihoods, and grants essentially unlimited investigation and enforcement powers to the Department and its employees.

41.     Measure B contains two primary provisions.  First, it requires producers of adult films to obtain a permit from the Los Angeles County Department of Public Health ("Department") before any production can take place.  In order to secure a permit, producers must pay a fee and complete an application form evidencing

8

COMPLAINT

1  successful completion of a blood borne pathogen training course approved by the

2  Department.  If the producer is a business entity, then *all* of the "principals and

3  management-level employees" (which are undefined terms), including any and all

4  film directors, must complete the required course.  Once an application is approved

5  and a permit issued, it must be displayed at all times where any adult film is being

6  filmed.  A permit is valid for two years, but is at all times subject to immediate and

7  potentially permanent revocation.

8       42.    Second, Measure B requires the use of condoms by performers for

9  all acts of anal or vaginal sex during the production of adult films, although the

10 performers are, as are all performers in adult films, consenting adults engaging in

11 constitutionally protected expression.  This requirement necessarily intrudes on the

12 expressive elements of adult films.

13      43.    Measure B grants the Department broad, vague, and unlimited powers

14 of enforcement.

15      44.    Department inspectors are granted access to "any location suspected

16 of conducting any activity regulated by" Measure B, without notice.  Moreover,

17 Department inspectors may take possession of "any sample, photograph, record or

18 other evidence, including any documents *bearing on*" compliance with Measure B,

19 without any limitations or cause requirement.  Thus, a Department inspector could

20 seize personal property, private documents, and take "samples" from any person, that

21 they, in their sole discretion determine to have "bearing on" Measure B compliance,

22 without any due process protections for those who may be present at a location where

23 the inspector "suspects" an activity regulated by Measure B is taking place.

24      45.    The Department may, at any time and without prior notice, suspend

25 or revoke the required permit for *any* violation of Measure B's provisions, or of

26 *any other laws* – which are not identified or limited – if the violation may create a

27 risk for performers of exposure to sexually transmitted diseases, which "risks" also

28 are undefined.  If a Measure B permit is suspended or revoked, work is not only

9

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0243

stopped on a given production, but the producer cannot engage in *any* filming, thus prohibiting the creation of other works and placing the livelihoods of hundreds of individuals in limbo.

46.     If a permit is suspended, the Department may refuse, with unfettered discretion, to reinstate the permit, or to issue a new permit to a given producer. Under Measure B's lack of specific standards and provisions, the Department has the ability – based on a single technical violation – to destroy, almost overnight, the entire business of a given film producer, and to eliminate the jobs of all its employees and contractors. Permit suspension or revocation accordingly results in the producer no longer being able to produce adult films, and consequently stands to substantially reduce or stifle sexually expressive speech.

47.     Any person determined by the Department to have violated Measure B is also subject to fines, civil actions, and even jail time, for *any* perceived violation, even on a first offense. Measure B does not differentiate between an individual who, on one occasion, failed to post the required notice with the necessary 36-point font, and an individual who has repeatedly violated the statute over an extended period of time.

48.     Measure B also imposes a fee structure without giving the Department any guidance over how to set the fees, other than by stating it "shall be set … in an amount sufficient to provide for the cost of any necessary enforcement." Though the Department has stated that Measure B has become effective, it has not conducted any proceedings, conducted any analyses, or otherwise taken steps to establish the proper amount of permitting fees. Instead, it has set a "provisional fee" ranging from $2,000 to $2,500 per year, without any findings or factual basis for the amount, or any explanation how it will determine where within the range to set the fee for any specific applicant or permittee.

49.     Despite all of these requirements and enforcement provisions, Measure B fails to even cover all those involved in creating adult films. Fueled in part by

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0244

the age of social media, there are many types of adult films produced for non-commercial purposes that are not covered by Measure B, but that still present the public health issues Measure B purports to address. Moreover, such productions lack the protections of the self-regulatory measures the adult film industry has adopted and enforces.

50. Measure B applies only to a small segment of the population of Los Angeles County, and fails to address the risks of sexually transmitted diseases in the general population. At the same time, it threatens the livelihoods of a much larger percentage of the population. It is estimated that there are 1,500 active adult film performers nationwide, working primarily in Los Angeles and Florida, with 300 living full-time in the Los Angeles area, and it is further estimated producers of adult film employ approximately 10,000 people in the Los Angeles area all told. It is also estimated that the adult film industry contributes approximately $1 billion to the local economy of the Los Angeles area. Measure B puts these expenditures and this employment at risk. Worse still, Measure B targets producers of adult films by stifling or otherwise adversely affecting the exercise of First Amendment rights to engage in sexually expressive speech.

## COUNT I
### SECTION 1983 CLAIM FOR VIOLATION OF THE FIRST AMENDMENT BY SUBJECTING FREEDOM OF EXPRESSION TO A REFERENDUM

51. Plaintiffs re-allege and incorporate by reference all previous allegations as if fully set forth herein.

52. Plaintiffs are entitled to the protection of the First Amendment because their activities, including the creation and sale of adult entertainment materials, constitute protected expression and speech, or, alternatively, protected commercial speech, which is not obscene or unlawful.

53. The provisions of Measure B violate the First Amendment by curtailing freedom of expression via a county ballot initiative. The exercise of First Amend-

---

COMPLAINT

11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ment freedoms cannot be limited by referendum. *Buckley v. American Constitutional Law Found.*, 525 U.S. 182, 194 (1999) ("The voters may no more violate the United States Constitution by enacting a ballot issue than the general assembly may by enacting legislation."); *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ("One's right to life, liberty, and property, to free speech, a free press, free-dom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections."). Imposing regulation in this way is inherently content-based. *Board of Regents of the Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 235-36 (2000). The fact that Measure B was presented as a "public health" ballot measure does not immunize it from First Amendment scrutiny *Sorrell v. IMS Health*, 131 S. Ct. 2653 (2011).

54. Measure B also violates the First Amendment by purporting to impose its restrictions based on "findings" in the text of the initiative, which lack a legis-lative record by which to measure whether the government's burden has been met. Thus, Measure B cannot survive any level of constitutional scrutiny.

55. Defendants, acting under color of the Los Angeles County Code and state law, have threatened to and will enforce and implement the challenged pro-visions against Plaintiffs and others in violation of their First Amendment rights.

56. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs will further suffer irreparable harm, which will continue absent injunctive relief.

## COUNT II
## SECTION 1983 CLAIM FOR VIOLATION OF THE FIRST AMENDMENT THROUGH PRIOR RESTRAINT (42 U.S.C. § 1983)

57. Plaintiff re-alleges and incorporates by reference all previous allegations as if fully set forth herein.

58. Measure B preemptively prohibits the production of any adult film if its director (among others) has not completed a blood borne pathogen training course

12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

FR0216

affirmatively approved by the Department, if the production has not secured a permit issued by the Department, and/or if the performers do not use condoms for all acts of anal or vaginal sex, even if in their sound discretion and artistic judgment they would opt to forgo doing so. Measure B also prohibits the production of any adult film by any entity that has had a permit suspended or revoked, including even creation of other works having nothing to do with the permit suspension/revocation. The Department is granted unlimited, standardless discretion to undertake such suspensions and/or revocations.

59.     Measure B further empowers Department inspectors to take possession of "any evidence" that "bears on" compliance with Measure B, without limitations or a cause requirement, which conceivably could include sole copies of expressive works produced in alleged violation of Measure B. In addition, Measure B permits the suppression of expression and speech by imposing serious civil and criminal penalties for non-compliance with its permitting and/or barrier-protection requirements.

60.     Measure B thus violates the First Amendment by standing as an unconstitutional prior restraint upon protected expression and upon the creation and dissemination of protected speech.

61.     Defendants, acting under color of the Los Angeles County Code and state law, have threatened to and will enforce and implement the challenged pro-visions against Plaintiffs and others in violation of their First Amendment rights.

62.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs will further suffer irreparable harm, which will continue absent injunctive relief.

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0217

# COUNT III
## SECTION 1983 CLAIM FOR VIOLATION OF THE FIRST AMENDMENT THROUGH FEES THAT IMPOSE A PRIOR RESTRAINT AND THAT ARE NOT LIMITED TO THE EXPENSE INCIDENT TO ADMINISTRATION OF PERMITTING AND ENFORCEMENT (42 U.S.C. § 1983)

63.     Plaintiff re-alleges and incorporates by reference all previous allegations as if fully set forth herein.

64.     Measure B requires securing a permit from the Department, which in turn requires payment of the permitting fee, as a precondition to the production of any adult film.

65.     Measure B does not provide the Department any guidance on how to set the fee, other than by stating it "shall be … an amount sufficient to provide for the cost of any necessary enforcement."

66.     The Department set a "provisional fee" ranging from $2,000 to $2,500 per year.  This "range" was established without analysis, findings or factual basis, or any explanation how the Department will determine where within the range to set the fee for particular permittees.

67.     Establishment of the fee regime under Measure B as a precondition to producing adult films serves as a prior restraint on protected speech.

68.     Due to the Department's failure to obtain reliable evidence supporting the provisional fee, and due to Measure B's failure to limit the fee to that which suffices to provide for the cost of enforcement, or provide any parameters for setting fees in an amount sufficient to provide for enforcement, the permitting fee is not reasonably limited to expenses incident to enforcing Measure B.  The permitting fee is consequently an unlawful tax on speech, rather than a fee incident to legitimate regulatory costs.

69.     Defendants, acting under color of the Los Angeles County Code and state law, have announced that Measure B has taken effect and that payment of the "provisional fee" will be required immediately.

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

FR0218

70.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs will further suffer irreparable harm, which will continue absent injunctive relief.

**COUNT IV**
**SECTION 1983 CLAIM BASED ON TERMS AND PROVISIONS**
**THAT ARE UNCONSTITUTIONALLY VAGUE**

71.     Plaintiffs re-allege and incorporate by reference all previous allegations as if fully set forth herein.

72.     Measure B incorporates the use of several terms without definition and in many instances defines terms in language that would leave persons of common intelligence unsure as to their specific meaning, forcing them to necessarily guess as to what specific actions and/or characteristics would be subject to regulation. These terms include, but are not limited to "adult film," "exposure control plan," "producer of adult film," "principals, "management-level employees," "commercial purposes," "reasonably suspected," "hazardous condition," "interference," and other terms.

73.     Measure B also incorporates several mandates without explanation, that are discretionary in nature, such that a person of common intelligence would be unsure as to their specific meaning, forcing them to necessarily guess as to what specific actions are required and/or prohibited under the regulation. These mandates include, but are not limited to:

>  i.    "Any permit issued pursuant to this chapter *may* be suspended or revoked by the department and fines consistent with the provisions of this chapter *may* be imposed by the department for a violation of this chapter *or any other violation of law* creating a risk of exposing performers to sexually transmitted infections ...." § 11.39.110.A (emphasis added).

>  ii.   "For permits that have been suspended or revoked, the notice of decision shall specify the acts or omissions found to be in violation

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0219

of this chapter, and, in the case of a suspended permit, shall state the extent of the suspension. The notice of decision shall also state the terms upon which the permit may be reinstated or reissued, *if any*." § 11.39.110.D (emphasis added).

iii. "Notwithstanding any other provision of this chapter, if any *immediate danger to the public health or safety* is found or is *reasonably suspected*, the department *may* immediately suspend the adult film production public health permit, initiate a criminal complaint *and/or* impose *any* fine permitted by this chapter .... Immediate danger to the public health and/or safety shall include *any* condition, based upon inspection findings *or other evidence*, that *can* cause, or is *reasonably suspected* of causing, infection or disease transmission, or *any* known or *reasonably suspected hazardous condition*." § 11.39.110.E (emphasis added).

iv. "The department may ... modify, suspend, revoke *or* continue all such actions previously imposed upon a permittee ... for violations of this chapter *or any other laws or standards affecting public health and safety* . . . or the exposure control plan of the permittee, *or any combination thereof*, or for *interference* with a county health officer's performance of duty." § 11.39.110.F (emphasis added).

v. "[T]he department may impose a fine on persons violating *any* provision of this chapter or *any law, regulation or standard incorporated into this chapter*." § 11.39.120.C (emphasis added).

vi. "Any person or entity who ... violates *any* law, ordinance or regulation governing *any activity regulated by this chapter* ... is guilty of a misdemeanor." § 11.39.120.D (emphasis added).

vii. "The county health inspector may enter and inspect any location *suspected* of conducting *any activity regulated by this chapter* ...

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0220

and take possession of *any* sample, photograph, record or other evidence, including any documents *bearing on* adult film producer's compliance with the provisions of the chapter." § 11.39.130 (emphasis added).

viii. "A civil action to enforce the provisions of this section may be brought by the county counsel, the district attorney or *any person directly affected* by said failure to comply with the provisions of this chapter." § 11.39.140 (emphasis added).

74.     The vagueness and subjective definitions of the above terms and mandates do not provide adequate guidance to law enforcement officers and health department officials, who themselves would have to necessarily guess as to the meaning of these terms and mandates and differ as to their application, thus leading to differential application of the law.

75.     Therefore, Measure B is unconstitutionally vague and is thus null and void *ab initio*.

76.     Defendants, acting under color of the Los Angeles County Code and state law, have threatened to and will enforce and implement the challenged provisions against Plaintiffs and others in violation of their First Amendment rights.

77.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs will further suffer irreparable harm, which will continue absent injunctive relief.

## COUNT V
## SECTION 1983 CLAIM BASED ON UNCONSTITUTIONAL
## OVER- AND UNDER-INCLUSIVENESS

78.     Plaintiffs re-allege and incorporate by reference all previous allegations as if fully set forth herein.

79.     An actual controversy has arisen and now exists between the parties regarding whether or not Measure B is both over- and under-inclusive.

17

COMPLAINT

80.     Plaintiffs contend that Measure B is unconstitutionally over-inclusive because the adult film industry already engages in extensive actions to protect performers from sexually transmitted diseases.

81.     Plaintiffs also contend that Measure B is unconstitutionally under-inclusive because it fails to deal with adult film productions which are not made for a commercial purpose, but still pose the same health risks Measure B purports to address.

82.     Plaintiffs further contend Measure B is unconstitutionally under-inclusive because it affects only a very small segment of the population of Los Angeles County, and fails to address the risks of sexually transmitted diseases in the general population.

83.     Plaintiffs contend that Measure B is therefore invalid and unenforceable due to its unconstitutional, over- and under-inclusive nature that prevents it from being narrowly tailored.

84.     Plaintiffs additionally contend that Measure B is not tailored as is constitutionally required because it is a content-based regulation of protected speech that must be the least restrictive means of achieving its stated purposes, and at minimum must not burden substantially more speech than is necessary to achieve that purpose.

85.     Measure B is not the least restrictive means of minimizing the spread of sexually transmitted infections resulting from production of adult films, and burdens substantially more speech than necessary, insofar as it rejected – without factual basis or any evidence-based findings – the screening and test-confirmation regime that the adult film industry already utilizes, and the County failed to consider any alternatives other than the permitting and barrier-protection requirements it enacted through a popular vote.

COMPLAINT

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

86.     Plaintiffs are informed and believe, and on that information and belief allege, that Defendants dispute the Plaintiff's allegations in Paragraphs 80 through 85, above.

87.     Plaintiffs desire a judicial determination and declaration as to whether Measure B is impermissibly over and under inclusive.

88.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain the applicability and enforce-ability of Measure B, and conduct themselves so as to obey all valid and applicable statutes and regulations.

89.     Defendants, acting under color of the Los Angeles County Code and state law, have threatened to and will enforce and implement the challenged pro-visions against Plaintiffs and others in violation of their First Amendment rights.

90.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs will further suffer irreparable harm, which will continue absent injunctive relief.

## COUNT VI
## SECTION 1983 CLAIM BASED ON VIOLATIONS OF DUE PROCESS

91.     Plaintiffs re-allege and incorporate by reference all previous allegations as if fully set forth herein.

92.     The Due Process Clause of the Fourteenth Amendment guarantees that no person shall be deprived of life, liberty or property without due process of law.

93.     Plaintiffs have liberty and property interests in the expressive works they create through the exercise of their First Amendment rights, in the documents and other personal property used to create those works, and in their ongoing freedom to continue to create such works.

94.     Plaintiffs also have a liberty interest protected by the Fourth Amendment to be free from unreasonable searches and seizures of their persons, including their bodily fluids and other aspects of their physical persons, and a

19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

property interest to be secure from unreasonable searches and seizures within the private spaces in which Plaintiffs engage in conduct that is filmed to create expressive works protected by the First Amendment.

95.     Measure B allows Department inspectors to take possession of "any sample, photograph, record or other evidence, including any documents" that "bears on" compliance with Measure B, without any limitation or a cause requirement.  This includes the authority to seize personal property, private documents, and "samples" from any person, without any due process protections for those that may be present locations where an inspector "suspects" activity regulated by Measure B is occurring.

96.     Measure B also allows the Department to suspend or revoke, without prior hearing or any procedural safeguards whatsoever, the permit that Measure B requires producers of adult entertainment to acquire and maintain in order to lawfully

97.     Defendants, acting under color of the Los Angeles County Code and state law, have threatened to and will enforce and implement the challenged pro-visions against Plaintiffs and others in violation of their First, Fourth and Fourteenth Amendment rights.

98.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs will further suffer irreparable harm, which will continue absent injunctive relief.

## COUNT VII
## PREEMPTION BY STATE LAW

99.     Plaintiffs re-allege and incorporate by reference all previous allegations as if fully set forth herein.

100.   An actual controversy has arisen and now exists between the parties regarding whether or not Measure B is preempted by state law.

101.   Plaintiffs contend that Measure B is preempted by California Labor Code Sections 140, *et seq.*, and specifically California Labor Code Section 144.7 and California Code of Regulations Title 8, Section 5193, which mandates the use

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST., SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ER0224

of barrier protection in the workplace when employees are exposed to blood borne pathogens.

102.   Plaintiffs contend that the California Legislature expressly retained exclusive jurisdiction with Cal-OSHA for the enforcement of occupation safety and health standards adopted by the Standards Board.  Labor Code Section 144, subsection (e) provides "[n]othing in this section shall affect or limit the authority of any state or local agency as to any matter **other than the enforcement of occupational safety and health standards adopted by the [Standards] Board**" (emphasis added).

103.   Plaintiffs contend that Labor Code Section 144.7 and California Code of Regulations Title 8, Section 5193 are occupational safety and health standards adopted by the Standards Board.

104.   Plaintiffs contend that Measure B is inconsistent with and/or enters an area fully occupied by Labor Code Section 144.7 and California Code of Regulations Title 8, Section 5193, and therefore is preempted.

105.   Plaintiffs are informed and believe, and on that information and belief allege, that Defendants dispute the Plaintiff's allegations in Paragraphs 101 through 104, above.

106.   Plaintiffs desire a judicial determination and declaration as to whether Measure B is preempted by state law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief against Defendant as follows:

1.     An order enjoining and restraining Defendants, and their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them who receive actual notice of the injunction, from enforcing Los Angeles County Measure B.

2.     A declaration that Los Angeles County Measure B violates the First Amendment to the United States Constitution.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017
(213) 633-6800
Fax: (213) 633-6899

ER0225

3.     A declaration that Los Angeles County Measure B violates due process under the Fourteenth Amendment to the United States Constitution.

4.     A declaration that Los Angeles County Measure B is preempted under California state law.

5.     An award to Plaintiffs of their reasonable costs and attorneys' fees; and

6.     Such other and further relief as the Court deems just.

DATED: January 10, 2013          LIPSITZ GREEN SCIME CAMBRIA LLP
                                 PAUL J. CAMBRIA, JR.

                                 SANTEN & HUGHES LPA
                                 H. LOUIS SIRKIN

                                 DAVIS WRIGHT TREMAINE LLP
                                 ROBERT CORN-REVERE
                                 RONALD G. LONDON
                                 JANET L. GRUMER
                                 MATTHEW D. PETERSON

                                 By: _____
                                             Matthew D. Peterson

                                 Attorneys for Plaintiffs
                                 VIVID ENTERTAINMENT, LLC;
                                 CALIFA PRODUCTIONS, INC.;
                                 JANE DOE a/k/a Kayden Kross; and
                                 JOHN DOE a/k/a Logan Pierce

·22

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST.
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899
ER 0226

# DEMAND FOR JURY TRIAL

Plaintiffs Vivid Entertainment, LLC, Califa Productions, Inc., Jane Doe a/k/a Kayden Kross, and John Doe a/k/a Logan Pierce, hereby demand a trial by jury as provided for by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED: January 10, 2013

LIPSITZ GREEN SCIME CAMBRIA LLP
PAUL J. CAMBRIA, JR.

SANTEN & HUGHES LPA
H. LOUIS SIRKIN

DAVIS WRIGHT TREMAINE LLP
ROBERT CORN-REVERE
RONALD G. LONDON
JANET L. GRUMER
MATTHEW D. PETERSON

By: _____
Matthew D. Peterson

Attorneys for Plaintiffs
VIVID ENTERTAINMENT, LLC;
CALIFA PRODUCTIONS, INC.;
JANE DOE a/k/a Kayden Kross; and
JOHN DOE a/k/a Logan Pierce

COMPLAINT

ERU0227



**TEXT OF THE PROPOSED MEASURE**
**COUNTY OF LOS ANGELES SAFER SEX IN THE**
**ADULT FILM INDUSTRY ACT**

The people of the County of Los Angeles ordain as follows:

## SECTION 1. TITLE

This ordinance shall be known and may be cited as the County of Los Angeles Safer Sex in the Adult Film Industry Act.

## SECTION 2. FINDINGS AND DECLARATION

The people of the County of Los Angeles hereby find and declare all of the following:

(a)  The HIV/AIDS crisis, and the ongoing epidemic of sexually transmitted infections as a result of the making of adult films, has caused a negative impact on public health and the quality of life of citizens living in Los Angeles.

(b)  Safer sex practices are a prime method of preventing and reducing the spread of HIV I AIDS and other sexually transmitted infections.

(c)  The California Supreme Court has determined that the production of sexually explicit adult films is legal in the State of California.

(d)  The Los Angeles County Department of Public Health has documented widespread transmission of sexually transmitted infections associated with the activities of the adult film industry within Los Angeles County.

(e)  The Los Angeles County Department of Public Health has stated that the use of condoms is the best and most effective way to stem the spread of sexually transmitted infections within the adult film industry.

(f)  Multiple organizations committed to protecting the public health have called for use of condoms in the production of adult films, including the American Medical Association, the American Public Health Association, the California Conference of Local AIDS Directors, the California STD Controllers Association, the National Coalition of STD Directors, the National Association of City and County Health Officials, AIDS Healthcare Foundation and the California Medical Association.

(g)  Producers of adult films are required by California Code of Regulations Title 8, Section 5193 to use barrier protection, including condoms, to protect employees during the production of adult films.

(h)  The Los Angeles County Department of Public Health has found that many producers of adult films in Los Angeles consistently violate the worker safety provisions of California Code of Regulations Title 8, section 5193.

## SECTION 3. PURPOSE AND INTENT

The people of the County of Los Angeles hereby declare their purpose and intent in enacting this ordinance is to minimize the spread of sexually transmitted infections resulting from the production of adult films in the County of Los Angeles, which have caused a negative impact on public health and the quality of life of citizens living in Los Angeles. This Act will require the producers of adult films to obtain a permit from the Los Angeles County Department of Public Health to ensure that producers comply with preexisting law requiring, among other things, that performers are protected from sexually transmitted infections by condoms. The Act further authorizes the Los Angeles County Department of Public Health to take appropriate measures to

ER0228



# TEXT OF THE PROPOSED MEASURE
# COUNTY OF LOS ANGELES SAFER SEX IN THE
# ADULT FILM INDUSTRY ACT

## SECTION 3. PURPOSE AND INTENT (Cont.)

enforce the Act, and conditions any film permit issued by the County for the production of an adult film on the use of condoms and other safety precautions.

## SECTION 4.

Chapter 11.39 is hereby added to Division 1 of Title 11 of the Los Angeles County Code to read:

### CHAPTER 11.39

### ADULT FILMS

### ADULT FILMS; SHORT TITLE AND PUBLIC POLICY

*Part 1 DEFINITIONS*

11.39.005      *Definitions*

         *Unless the provision or the context otherwise requires, the definitions in this part shall govern the construction of this chapter.*

11.39.010      *Adult film*

         *An "adult film" is defined as any film, video, multimedia or other representation of sexual intercourse in which performers actually engage in oral, vaginal, or anal penetration, including, but not limited to, penetration by a penis, finger, or inanimate object; oral contact with the anus or genitals of another performer; and/or any other sexual activity that may result in the transmission of blood and/or any other potentially infectious materials.*

11.39.020      *County.*

         *"County" means the County of Los Angeles.*

11.39.030      *Department.*

         *"Department" means the Los Angeles County Department of Public Health.*

11.39.040      *Departmental regulations.*

         *"Departmental regulations" means the regulations pertaining to filming of adult films promulgated by the department as currently written or as may from time to time be amended. When adopted by the department, these regulations are incorporated in and become part of this chapter.*

ER0229



**MEASURE B**

## TEXT OF THE PROPOSED MEASURE
## COUNTY OF LOS ANGELES SAFER SEX IN THE ADULT FILM INDUSTRY ACT

### SECTION 4. (Cont.)

11.39.050    *Exposure control plan.*

*"Exposure control plan" means a written plan that meets all requirements of Title 8 California Code of Regulations sections 3203 and 5193, to minimize employees' risk of exposure to blood or potentially infectious material.*

11.39.060    *Filmed or filming.*

*"Filmed" and "filming" means the recording or real-time broadcast of any adult film, regardless of the medium used.*

11.39.070    *Potentially infectious material.*

*"Potentially infectious material" shall have the same meaning as defined in Title 8 California Code of Regulations Section 519 3 (b), or any successor regulation.*

11.39.075    *Producer of adult film*

*"Producer of adult film" means any person or entity that produces, finances, or directs, adult films for commercial purposes.*

11.39.076    *Permittee*

*"Permittee " means any person or entity issued an adult film production public health permit pursuant to this chapter.*

**Part 2 GENERAL REQUIREMENTS**

11.39.080    *Adult film production public health permit.*

   A.    *Producers of adult films shall obtain a public health permit by filing a completed application form with the department and paying the required fee. The fee shall be set by the Department in an amount sufficient to provide for the cost of any necessary enforcement.*

   1.    *During the twelve (12) months immediately following the effective date of this chapter, adult film production public health permits may be issued on a conditional basis. An individual issued a conditional permit shall have up to six months from the date of application to provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department. If permittee is a business entity rather than an individual, permittee shall have up to six months from the date of application to provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department for all principals and management-level employees of permittee, including, but not limited to, all film directors. Failure to provide such proof within the prescribed time shall cause the conditional adult film production public health permit to be revoked immediately.*

ER0230



# TEXT OF THE PROPOSED MEASURE
# COUNTY OF LOS ANGELES SAFER SEX IN THE
# ADULT FILM INDUSTRY ACT

## SECTION 4. (Cont.)

2.   *At all times after the twelve (12) months following the effective date of this chapter, each applicant who is an individual must also provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department. Each applicant who is a business entity rather than an individual must provide the department with proof of successful completion of a blood borne pathogen training course that has been approved by the department for all principals and management-level employees of permittee, including but not limited to all film directors.*

B.   *Upon successful completion of the permit application process described in subsection A of this section, the partment shall issue an adult film production public health permit to the applicant. The adult film production public health permit will be valid for two years from the date of issuance, unless revoked.*

C.   *No producer of adult films may engage in the making of adult films in Los Angeles County for commercial purposes unless that producer of adult films has a valid adult film production public health permit issued by the department.*

D.   *An adult film production public health permit is nontransferable.*

11.39.090   *Posting requirements.*

A.   *The adult film production public health permit issued to the producer of adult films must be displayed at all times at the location where any adult film is filmed in an area that is visible to performers.*

B.   *A legible sign shall be displayed at all times at the location where any adult film is filmed in any conventional typeface with a font size not smaller than 36 points, that provides the following notice so as to be clearly visible to performers in said films:*

   *The use of condoms is required for all acts of anal or vaginal sex during the production of adult films to protect performers from sexually trammsmitted infections.*

   *Any public health concerns regarding any activities occurring during the production of any adult films should be directed to the Los Angeles County Department of Public Health:*

   _____

   _____

   *(the program office address and telephone number to be provided by the county health officer).*

11.39.100   *Permit --Reporting requirements.*

   *Every person that possesses a valid adult film production public health permit or registration shall report to the department any changes in status to the business made reportable by departmental regulations within fifteen (15) days of the change.*

ER0231



**TEXT OF THE PROPOSED MEASURE**
**COUNTY OF LOS ANGELES SAFER SEX IN THE**
**ADULT FILM INDUSTRY ACT**

## SECTION 4. (Cont.)

**11.39.100**    *Permit --Reporting requirements.*

Every person that possesses a valid adult film production public health permit or registration shall report to the department any changes in status to the business made reportable by departmental regulations within fifteen (15) days of the change.

**11.39.110**    *Permit--Suspension and revocation and fines.*

A.    Any permit issued pursuant to this chapter may be suspended or revoked by the department and fines consistent with the provisions of this chapter may be imposed by the department for a violation of this chapter or any other violation of law creating a risk of exposing performers to sexually transmitted infections, including any violation of applicable provisions of the Los Angeles County Code, the California Health and Safety Code, the blood borne pathogen standard, California Code of Regulations Title 8, section 519 3 or the exposure control plan of the producer of adult films, or any combination of such violations. The failure of a producer of adult films to require performers to use condoms during any acts of vaginal or anal sexual intercourse is a violation of this chapter.

B.    Whenever the department determines that a permittee has failed to comply with the requirements of this chapter, any other violation of law creating a risk of exposing performers to sexually transmitted infections, including any violation of applicable provisions of the Los Angeles County Code, the California Health and Safety Code, the blood borne pathogen standard, California Code of Regulations Title 8, section 5193 or the exposure control plan of the producer of adult films, or any combination thereof a written notice to comply shall be issued to the permittee. The notice to comply shall include a statement of the deficiencies found, set forth the corrective measures necessary for the permittee to be in compliance with this chapter, and inform the permittee that failure to comply may result in the imposition of a fine or other penalty, including suspension and/or revocation of any and all permits. The notice to comply shall also advise the permittee of his or her right to an administrative review.

C.    A written request for an administrative review must be made by the noticed permittee within fifteen (15) calendar days of the issuance of the notice to comply. The failure to request an administrative review within the prescribed time shall be deemed a waiver of the right to an administrative review. The administrative review shall be held within fifteen (15) calendar days of the receipt of a written request for a review. Upon the written request of permittee or on its own motion, the department may advance or postpone the scheduled administrative review date, if permittee demonstrates good cause.

D.    The department shall issue a written notice of decision specifying any penalties imposed on permittee to the permittee within five (5) days of the administrative review or waiver, excluding weekends and holidays. For permits that have been suspended or revoked, the notice of decision shall specify the acts or omissions found to be in violation of this chapter, and, in the case of a suspended permit, shall state the extent of the suspension. The notice of decision shall also state the terms upon which the permit may be reinstated or reissued, if any.



**TEXT OF THE PROPOSED MEASURE**
**COUNTY OF LOS ANGELES SAFER SEX IN THE**
**ADULT FILM INDUSTRY ACT**

**SECTION 4. (Cont.)**

E.   *Notwithstanding any other provision of this chapter, if any immediate danger to the public health or safety is found or is reasonably suspected, the department may immediately suspend the adult film production public health permit, initiate a criminal complaint and/or impose any fine permitted by this chapter, pending a determination of an administrative review, as provided herein. Immediate danger to the public health and/or safety shall include any condition, based upon inspection findings or other evidence, that can cause, or is reasonably suspected of causing, infection or disease transmission, or any known or reasonably suspected hazardous condition.*

1.   *Whenever an adult film production public health permit issued is immediately suspended or a fine is imposed pursuant to this subdivision E of this section, the department shall issue to the permittee so suspended or fined, a written notice to comply setting forth the acts or omissions with which the permittee is charged, specifying the sections of the Los Angeles County Code, California Health and Safety Code, blood borne pathogen standard, California Code of Regulations Title 8, section 5193 or the exposure control plan of the producer of adult films, or the combination of alleged violations, and informing the permittee of the right to an administrative review.*

2.   *At any time within fifteen (15) calendar days of service of such notice to comply, the permittee may request, in writing, an administrative review by the department to show cause why the imposed suspension or fine is unwarranted. The administrative review shall be held within fifteen (15) calendar days of the receipt of a request. A failure to request an administrative review within fifteen (15) calendar days shall be deemed a waiver of the right to such review.*

3.   *At any time prior to an administrative review or waiver thereof the recipient of a notice to comply issued pursuant to this subsection F, may correct the deficiencies noted in the notice to comply and request a reinspection at any time when the producer of adult films is actually filming an adult film.*

4.   *In the case of a request for reinspection as set forth in subsection E.3 above, the department shall reinspect as soon as practical. In the event the deficiencies noted in the notice to comply are corrected to the satisfaction of the health officer, the department has discretion to reinstate or modify any suspension of a permit and cancel or modify any fine imposed pursuant to this subsection F. If the department determines that the deficiencies identified in the notice to comply have been corrected, but the department elects not to reinstate the suspension or cancel the fine imposed pursuant to this subsection F, the department shall notify the permittee of this decision in writing. The permittee shall have fifteen (15) calendar days from receipt of said notification to seek an administrative review of this decision.*

F.   *The department may, after an administrative review or waiver thereof, modify, suspend, revoke or continue all such action previously imposed upon a permittee pursuant to this chapter or impose any fine imposed by law for violations of this chapter or any other laws or standards affecting public health and safety, including but not limited to the Los Angeles County Code, the California Health and Safety Code, the blood borne pathogen standard, California Code of Regulations Title 8, section 5193 or the exposure control plan of the permittee, or any combination thereof, or for interference with a county health officer's performance of duty.*



**TEXT OF THE PROPOSED MEASURE
COUNTY OF LOS ANGELES SAFER SEX IN THE
ADULT FILM INDUSTRY ACT**

## SECTION 4. (Cont.)

G.     *A permit issued pursuant to this chapter may be reissued or reinstated, if the department determines that the conditions which prompted the suspension or revocation no longer exist and any fine imposed pursuant to this chapter has been satisfied*

H.     *In the event a permit is suspended or revoked, the producer of adult films whose permit was revoked shall cease filming any adult film unless and until the permit is reinstated or reissued.*

**Part 3 COMPLIANCE AND ENFORCEMENT**

11.39.120     *Compliance with the provisions in this chapter shall be mandatory:*

A.     *The provisions of this chapter are in full force and effect in the county.*

B.     *Any producer of adult films filming any adult films within the county, including any person or entity owning or operating any business regulated by this chapter, must comply with the provisions of this chapter.*

C.     *In addition to any other penalty provided for under this chapter, consistent with the process set forth herein for notice and administrative review, the department may impose a fine on persons violating any provision of this chapter or any law, regulation or standard incorporated into this chapter. The department may impose a civil fine upon such violators in an amount not to exceed $500.00 per violation, as appropriate. The imposition of such fines shall, in no way, limit the authority or ability to impose other requirements of this chapter or seek other remedies against alleged violators.*

D.     *Any person or entity who produces or films adult films for commercial purposes within the county without a valid adult film production public health permit, or any person, who violates any law, ordinance or regulation governing any activity regulated by this chapter, or who, upon demand of the county health officer, refuses or neglects to conform to a lawful order or directive of a county health officer pertaining to conduct regulated by this chapter, is guilty of a misdemeanor, punishable by fine of $1, 000. 00, imprisonment in the county jail for a period not to exceed six months, or both. Each such act is punishable as a separate offense.*

11.39.130     *Health officer--Enforcement.*

    *The county health officer may enter and inspect any location suspected of conducting any activity regulated by this chapter, and, for purposes of enforcing this chapter, the county health officer may issue notices and impose fines therein and take possession of any sample, photograph, record or other evidence, including any documents bearing upon adult film producer's compliance with the provision of the chapter. Such inspections may be conducted as often as necessary to ensure compliance with the provisions of this chapter.*

11.39.140     *Noncompliance with county health officer--Injunctive relief*

    *Any act or failure to act which is a violation of this chapter may be the subject of a civil action to enjoin the person or entity so acting or failing to act to conform his or her conduct to the provisions of this chapter. A civil action to enforce the provisions of this section may be brought by the county counsel, the district attorney or any person directly affected by said failure to comply with the provisions of this chapter. The filing*



**TEXT OF THE PROPOSED MEASURE**
**COUNTY OF LOS ANGELES SAFER SEX IN THE**
**ADULT FILM INDUSTRY ACT**

## SECTION 4. (Cont.)

and prosecution of such an action shall, in no way, limit the authority or ability to impose other requirements of this chapter or remedies or penalties as permitted by law.

*Part 4 OPERATIONS*

11.39.150    *Exposure control plan and reporting.*

*Every producer of adult films shall provide a written exposure control plan, approved by the department, describing how the requirements of this chapter will be implemented The exposure control plan shall meet requirements established in departmental regulations.*

## SECTION 5.

Chapter 22.56.1925 of the Division 1 of Title 22 of the Los Angeles County Code is amended as follows:

22.56.1925    Movie on-location filming.

A.    Notwithstanding the other provisions of this Part 14, applications for movie on-location filming permits shall be filed with the filming permit coordination office which shall approve such application for a time period not to exceed the time period specified in this Title 22 where it finds that the findings set forth in Section 22.56.1860 and subsection A 1 of Section 22.56.1880 have been met by the applicant. In addition, in lieu of subsection A2 of Section 22.56.1880, the filming permit office shall also find that such approval will not result in a frequency of usage likely to create incompatibility between such temporary use and the surrounding area. Where an application is denied due to frequency of usage, the filming permit office shall specify the minimum time period between approvals which, in its opinion, is necessary to prevent such incompatibility.

B.    In interpreting the other provisions of this Part 14 in relation to movie onlocation filming, the filming permit office shall be substituted for the director, and the provisions of Sections 22.56.1840 and 22.56.1870 shall not apply.

C.    *Any person or entity issued a permit for the filming of an adult film, as defined in section 11.39.010 ofthis Code, under this chapter or any other law authorizing the issuance of permits for commercial filming are required to maintain engineering and work practice controls sufficient to protect employees from exposure to blood and/or any other potentially infectious materials controls, in a manner consistent with California Code of Regulations, Title 8, Section 519 3. Any such permit shall contain the following language: "Permittee must abide by all applicable workplace health and safety regulations, including California Code of Regulations Title 8, Section 5193, which mandates barrier protection, including condoms, to shield performers from contact with blood or other potentially infectious m:aterial during the production of films. " The county shall charge, or shall direct any other person or entity contracting with the county to administer the film permitting process, to charge, entertainment industry customers seeking permits for the production of adult films a fee sufficient to allow periodic inspections to ensure compliance with the conditions set forth in Section 11.39.010.*



# TEXT OF THE PROPOSED MEASURE
# COUNTY OF LOS ANGELES SAFER SEX IN THE
# ADULT FILM INDUSTRY ACT

### SECTION 6. COMPETING MEASURES

In the event that this measure and another measure or measures relating to the permit process for adult films shall appear on the same ballot, the provisions of the other measures shall be deemed to be in conflict with this measure. In the event that this measure shall receive a greater number of affirmative votes, the provisions of this measure shall prevail in their entirety, and the provisions of the other relating to the permit process for adult films shall be null and void.

### SECTION 7. AMENDMENT AND REPEAL

This chapter may be amended to further its purposes by an ordinance passed by a majority vote of the Board of Supervisors. This chapter may not be repealed, except by an ordinance proposed either by petition or by the Board of Supervisors at its own instance and adopted by a vote of the electors, or by an amendment of the charter superseding the ordinance.

### SECTION 8. SEVERABILITY

If any provision of this Act, or part thereof, is for any reason held to be invalid or unconstitutional, the remaining provisions shall not be affected, but shall remain in full force and effect, and to this end the provisions of the Act are severable.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## CV13- 190 DDP (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Janet L. Grumer (SBN232723)
Matthew D. Peterson (SBN251490)
Davis Wright Tremaine LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Tel: (213) 633-6800
Fax: (213) 633-6899
janetgrumer@dwt.com; matthewpeterson@dwt.com

ORIGINAL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce,<br><br>PLAINTIFF(S)<br><br>v.<br><br>JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV13-00190-DDP (AGRx)<br><br><br>SUMMONS |

TO: DEFENDANT(S): JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Matthew D. Peterson, whose address is Davis Wright Tremaine LLP 865 S. Figueora Street, Suite 2400, Los Angeles, CA 90017. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: JAN 10 2013

By: _____
    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

American Legal Net
www.FormsWorkFlow.com

ER0238

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
**CIVIL COVER SHEET**

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| VIVID ENTERTAINMENT, LLC; CALIFA PRODUCTIONS, INC.; JANE DOE a/k/a Kayden Kross; and JOHN DOE a/k/a Logan Pierce | JONATHAN FIELDING, Director of Los Angeles County Department of Public Health, JACKIE LACEY, Los Angeles County District Attorney, and COUNTY OF LOS ANGELES |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Janet L. Grumer (SBN232723) Matthew D. Peterson (SBN251490) Davis Wright Tremaine LLP 865 S. Figueroa Street, Suite 2400 Los Angeles, CA 90017 T: (213) 633-6800 & F: (213) 633-6899 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☐ MONEY DEMANDED IN COMPLAINT: $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. § 1983 claims for violation of the First, Fourth and Fourteenth Amendments; Preemption under California law

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | Sentence Habeas Corpus | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 446 American with Disabilities – Other | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☒ 440 Other Civil Rights | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | ☐ 290 All Other Real Property | | | |

**FOR OFFICE USE ONLY:** Case Number: _____

CV13-00190

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)  **CIVIL COVER SHEET**

American LegalNet, Inc. www.FormsWorkflow.com

Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County for all Plaintiffs | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☒ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County for all Defendants | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County for all claims | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____     Date January 10, 2013

Matthew D. Peterson

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                     **CIVIL COVER SHEET**                     Page 2 of 2

ER0240

Case: 13-56445    09/16/2013      ID: 8784824    DktEntry: 12-2    Page: 195 of 216

(AGRx),APPEAL,DISCOVERY,MANADR

# UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:13-cv-00190-DDP-AGR

| | |
|---|---|
| Vivid Entertainment LLC et al v. Jonathan Fielding et al | Date Filed: 01/10/2013 |
| Assigned to: Judge Dean D. Pregerson | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Alicia G. Rosenberg | Nature of Suit: 440 Civil Rights: Other |
| Case in other court: 9TH CCA, 13-56445 | Jurisdiction: Federal Question |
| Cause: 42:1983 Civil Rights Act | |

**Plaintiff**

**Vivid Entertainment LLC**  represented by  **H Louis Sirkin**
Santen and Hughes LPA
600 Vine Street Suite 2700
Cincinnati, OH 45202
513-721-4450
Fax: 513-852-5994
Email: HLS@santen-hughes.com
*ATTORNEY TO BE NOTICED*

**Janet Lynn Grumer**
Davis Wright Tremaine LLP
865 S Figueroa Street Suite 2400
Los Angeles, CA 90017-2566
213-633-6800
Fax: 213-533-6899
Email: janetgrumer@dwt.com
*ATTORNEY TO BE NOTICED*

**Matthew D Peterson**
Davis, Wright Tremaine LLP
865 South Figueroa Street Suite 2400
Los Angeles, CA 90017-2566
213-633-6800
Fax: 213-633-6899
Email: matthewpeterson@dwt.com

**ER0241**

*ATTORNEY TO BE NOTICED*

**Paul J Cambria , Jr**
Lipsitz Green Scime Cambria
LLP
42 Delaware Avenue Suite 120
Buffalo, NY 14202-3901
716-849-1333
Fax: 716-849-1315
Email: pcambria@lglaw.com
*ATTORNEY TO BE NOTICED*

**Robert Corn-Revere**
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW
Suite 800
Washington, DC 20006
202-973-4200
Fax: 202-973-4499
Email: bobcornrevere@dwt.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G London**
Davis Wright Tremaine LLP
1919 Pennsylvania Avenue NW
Suite 800
Washington, DC 20006
202-973-4200
Fax: 202-973-4499
Email: ronnielondon@dwt.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy P Murphy**
Lipsitz Green Scime Cambria
LLP
42 Delaware Avenue
Buffalo, NY 14202
716-849-1333
Fax: 716-855-1580
Email: tmurphy@lglaw.com
*PRO HAC VICE*

**ER0242**

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cal ifa Productions Inc**　　　　　represented by　**H Louis Sirkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Janet Lynn Grumer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew D Peterson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul J Cambria , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Corn-Revere**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G London**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy P Murphy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jane Doe**　　　　　　　　　　　represented by　**H Louis Sirkin**
*also known as*　　　　　　　　　　　　　　　　　(See above for address)
Kayden Kross　　　　　　　　　　　　　　　　　*ATTORNEY TO BE NOTICED*

**Janet Lynn Grumer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ER0243**

**Matthew D Peterson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul J Cambria , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Corn-Revere**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G London**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Doe**                    represented by   **H Louis Sirkin**
*also known as*                                  (See above for address)
Logan Pierce                                     *ATTORNEY TO BE NOTICED*

**Janet Lynn Grumer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew D Peterson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul J Cambria , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Corn-Revere**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald G London**
(See above for address)
*PRO HAC VICE*

**ER0244**

*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Jonathan Fielding**                    represented by    **Andrea E Ross**
*Director of Los Angeles County*                          Office of the County Counsel
*Department of Public Health*                             648 Kenneth Hahn Hall of
                                                          Administration
                                                          500 West Temple Street
                                                          Los Angeles, CA 90012-2713
                                                          213-974-4329
                                                          Email:
                                                          aross@counsel.lacounty.gov
                                                          *ATTORNEY TO BE NOTICED*

                                                          **John K Ly**
                                                          Glaser Weil Fink Jacobs Howard
                                                          Avchen & Shapiro LLP
                                                          10250 Constellation Boulevard
                                                          19th Floor
                                                          Los Angeles, CA 90067
                                                          310-556-7861
                                                          Fax: 310-556-2920
                                                          Email: jly@glaserweil.com
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**Jackie Lacey**                         represented by    **Andrea E Ross**
*Los Angeles District Attorney*                           (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **John K Ly**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

**Defendant**

**County of Los Angeles**                represented by    **Andrea E Ross**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

                                                          **John K Ly**
                                                          (See above for address)

**ER0245**

*ATTORNEY TO BE NOTICED*

**Intervenor**

**Michael Weinstein**            represented by   **Samantha Robin Azulay**
                                                 AIDS Healthcare Foundation
                                                 6255 West Sunset Boulevard 21st
                                                 Floor
                                                 Los Angeles, CA 90028
                                                 323-860-5200
                                                 Fax: 323-962-8513
                                                 Email:
                                                 samantha.azulay@aidshealth.org
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Thomas Andrew Myers**
                                                 Aids Healthcare Foundtion
                                                 6255 West Sunset Boulevard 21st
                                                 Floor
                                                 Los Angeles, CA 90028
                                                 323-860-5200
                                                 Fax: 323-467-8450
                                                 Email: tom.myers@aidshealth.org

                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Intervenor**

**Marijane Jackson**             represented by   **Samantha Robin Azulay**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Thomas Andrew Myers**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Intervenor**

**Arlette De La Cruz**           represented by   **Samantha Robin Azulay**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**ER0246**

Thomas Andrew Myers
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Mark McGrath**                     represented by    **Samantha Robin Azulay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Thomas Andrew Myers
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Whitney Engeran**                  represented by    **Samantha Robin Azulay**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Thomas Andrew Myers
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Campaign Committee Yes on B,**     represented by    **Thomas Andrew Myers**
**Major Funding by the AIDS**                          (See above for address)
**Healthcare Foundation**                              *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Samantha Robin Azulay
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 01/10/2013 | 1 | COMPLAINT against Defendants County of Los Angeles, Jonathan Fielding, Jackie Lacey.Case assigned to Judge Dean D. Pregerson for all further proceedings. Discovery referred to |

**ER0247**

| | | |
|---|---|---|
| | | Magistrate Judge Alicia G. Rosenberg.(Filing fee $ 350:PAID) Jury Demanded., filed by plaintiffs Vivid Entertainment LLC, Jane Doe, John Doe, Califa Productions Inc.(ghap) (mg). (Entered: 01/14/2013) |
| 01/10/2013 | | 21 DAY Summons Issued re Complaint - (Discovery) 1 as to Defendants County of Los Angeles, Jonathan Fielding, Jackie Lacey. (ghap) (Entered: 01/14/2013) |
| 01/10/2013 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (ghap) (mg). (Entered: 01/14/2013) |
| 01/10/2013 | 3 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed.(ghap) (Entered: 01/14/2013) |
| 01/14/2013 | 4 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to H. Louis Sirkin for Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Your Pro Hac Vice application has not been received by the court. Please return you completed Application of Non-Resident Attorney to Appear in a Specific Case, form G-64, or a copy of the Notice of Electronic Filing of your application and the $325.00 fee and this notice immediately. Out-of-state federal government attorneys who are not employed by the U.S. Department of Justice are required to file a Pro Hac Vice application; no filing fee is required. (ghap) (Entered: 01/14/2013) |
| 01/14/2013 | 5 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to Robert Corn-Revere for Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Your Pro Hac Vice application has not been received by the court. Please return you completed Application of Non-Resident Attorney to Appear in a Specific Case, form G-64, or a copy of the Notice of Electronic Filing of your application and the $325.00 fee and this notice immediately. Out-of-state federal government attorneys who are not employed by the U.S. Department of Justice are required to file a Pro Hac Vice application; no filing fee is required. (ghap) (Entered: 01/14/2013) |
| 01/14/2013 | 6 | NOTICE OF FILING FEE DUE on Pro Hac Vice Application mailed to Ronald G London for Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Your Pro Hac Vice application has not been received by the court. Please return you completed Application of Non-Resident Attorney to Appear in a |

ER0248

|  |  |  |
|---|---|---|
|  |  | Specific Case, form G-64, or a copy of the Notice of Electronic Filing of your application and the $325.00 fee and this notice immediately. Out-of-state federal government attorneys who are not employed by the U.S. Department of Justice are required to file a Pro Hac Vice application; no filing fee is required. (ghap) (Entered: 01/14/2013) |
| 01/15/2013 | 7 | APPLICATION for attorney Robert Corn-Revere to Appear Pro Hac Vice (PHV FEE NOT PAID.) filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Attachments: # 1 Proposed Order)(Peterson, Matthew) (Entered: 01/15/2013) |
| 01/15/2013 | 8 | APPLICATION for attorney Ronald G. London to Appear Pro Hac Vice(PHV Fee of $325 receipt number 0973-11525562 paid.) filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Attachments: # 1 Proposed Order)(Peterson, Matthew) (Entered: 01/15/2013) |
| 01/15/2013 | 9 | APPLICATION for attorney H. Louis Sirkin to Appear Pro Hac Vice(PHV Fee of $325 receipt number 0973-11525645 paid.) filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Attachments: # 1 Proposed Order)(Peterson, Matthew) (Entered: 01/15/2013) |
| 01/16/2013 | 10 | MINUTES OF IN CHAMBERS ORDER held before Judge Dean D. Pregerson: This action has been assigned to the calendar of Judge Dean D Pregerson. Counsel are referred to the courts website for additional information. (SEE DOCUMENT FOR SPECIFIC FILING REQUIREMENTS AND INSTRUCTIONS). (lc) (Entered: 01/16/2013) |
| 01/16/2013 | 11 | ORDER by Judge Dean D. Pregerson: granting 8 Application to Appear Pro Hac Vice by Attorney Ronald London on behalf of plaintiff, designating Matthew Peterson as local counsel. (ak) (Entered: 01/17/2013) |
| 01/16/2013 | 12 | ORDER by Judge Dean D. Pregerson: granting 9 Application to Appear Pro Hac Vice by Attorney H Louis Sirkin on behalf of plaintiff, designating Matthew Peterson as local counsel. (ak) (Entered: 01/17/2013) |
| 01/16/2013 | 13 | ORDER by Judge Dean D. Pregerson: granting 7 Application to Appear Pro Hac Vice by Attorney Robert Corn-Revere on behalf of Plaintiffs Vivid Entertainment LLC, et al., designating Matthew D. Peterson as local counsel. (lom) (Entered: 01/18/2013) |

ER0249

| 01/30/2013 | 14 | PROOF OF SERVICE Executed by Plaintiff Vivid Entertainment LLC, Jane Doe, John Doe, Califa Productions Inc, upon Defendant Jonathan Fielding served on 1/15/2013, answer due 2/5/2013. Service of the Summons and Complaint were executed by Rose Anne Rodriguez, Esq. (Director) in compliance with Federal Rules of Civil Procedure by personal service. Original Summons NOT returned. (Peterson, Matthew) (Entered: 01/30/2013) |
|---|---|---|
| 01/30/2013 | 15 | PROOF OF SERVICE Executed by Plaintiff Vivid Entertainment LLC, Jane Doe, John Doe, Califa Productions Inc, upon Defendant County of Los Angeles served on 1/15/2013, answer due 2/5/2013. Service of the Summons and Complaint were executed upon Marisol Zarate (Deputy Clerk) in compliance with Federal Rules of Civil Procedure by personal service. Original Summons NOT returned. (Peterson, Matthew) (Entered: 01/30/2013) |
| 01/30/2013 | 16 | PROOF OF SERVICE Executed by Plaintiff Vivid Entertainment LLC, Jane Doe, John Doe, Califa Productions Inc, upon Defendant Jackie Lacey served on 1/15/2013, answer due 2/5/2013. Service of the Summons and Complaint were executed upon Carmen Alfonso (Secretary) in compliance with Federal Rules of Civil Procedure by personal service. Original Summons NOT returned. (Peterson, Matthew) (Entered: 01/30/2013) |
| 02/01/2013 | 17 | Joint STIPULATION Extending Time to Answer the complaint as to All Defendants, filed by Defendant County of Los Angeles, Jane Doe, Jonathan Fielding, Jackie Lacey, John Doe.(Ross, Andrea) (Entered: 02/01/2013) |
| 02/04/2013 | 18 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Stipulation Extending Time to Answer (30 days or less) 17 . The following error(s) was found: Although correct event used, filer appears to have BYPASSED the system prompts, which automatically calculates extended answer time; as a result, no time was extended to any defendant.In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lc) (Entered: 02/04/2013) |
| 02/21/2013 | 19 | First STIPULATION Extending Time to Answer the complaint as to All Defendants, filed by Defendants County of Los Angeles, Jonathan Fielding, Jackie Lacey.(Ly, John) (Entered: 02/21/2013) |

ER0250

| 02/27/2013 | 20 | MINUTES OF IN CHAMBERS ORDER held before Judge Dean D. Pregerson: This action has been assigned to the calendar of Judge Dean D Pregerson. Counsel are referred to the courts website for additional information. (SEE DOCUMENT FOR SPECIFIC FILING REQUIREMENTS AND INSTRUCTIONS). (lc) (Entered: 02/27/2013) |
| --- | --- | --- |
| 02/27/2013 | 21 | ANSWER to Complaint - (Discovery), 1 filed by Defendants County of Los Angeles, Jonathan Fielding, Jackie Lacey.(Ly, John) (Entered: 02/27/2013) |
| 03/01/2013 | 22 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Count of LA, Fielding, Lacey Answer to Complaint (Discovery) 21 . The following error(s) was found: Local Rule 7.1-1 No Certification of Interested Parties and or no copies. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lc) (Entered: 03/01/2013) |
| 03/01/2013 | 23 | OF INTERESTED PARTIES of Interested Parties filed by Defendants All Defendants, (Ly, John) (Entered: 03/01/2013) |
| 03/01/2013 | 24 | NOTICE OF MOTION AND MOTION to Intervene ; memorandum of points and authorities filed by movants Campaign Committee Yes on B, Major funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. Motion set for hearing on 4/1/2013 at 10:00 AM before Judge Dean D. Pregerson. Lodged order. (lc) (lc). (Entered: 03/01/2013) |
| 03/01/2013 | 25 | DECLARATION of Michael Weinstein in support MOTION to Intervene 24 filed by Movants Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (lc) (lc). (lc). Modified on 3/4/2013 (lc). (Entered: 03/01/2013) |
| 03/01/2013 | 26 | DECLARATION of Samanha Azulay in support MOTION to Intervene 24 filed by Movants Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (lc) (lc). (Entered: 03/01/2013) |
| 03/01/2013 | 27 | CERTIFICATE of Interested Parties filed by movants Campaign |

| | | |
|---|---|---|
| | | Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein, identifying Other Affiliate Proponents of 2012 County Initiative Measure B for Arlette De La Cruz, Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Marijane Jackson, Mark McGrath, Michael Weinstein, Whitney Engeran. (lc) (lc). (Entered: 03/01/2013) |
| 03/11/2013 | 28 | NOTICE OF NON-OPPOSITION MOTION to Intervene 24 filed by Defendant County of Los Angeles. *Defendants Statement of Non-Opposition to Motion to Intervene* (Ly, John) (Entered: 03/11/2013) |
| 03/11/2013 | 29 | EX PARTE APPLICATION to Continue Hearing from 4/1/13 to 4/29/13 Re: MOTION to Intervene 24 *Declarations of Janet L. Grumer With Exhibit A and Robert Corn-Revere* filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Attachments: # 1 Proposed Order Re Ex Parte Application) (Peterson, Matthew) (Entered: 03/11/2013) |
| 03/12/2013 | 30 | STIPULATION to Continue Intervenor's Motion to Intervene from April 1, 2013 to April 15, 2013 Re: MOTION to Intervene 24 filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Attachments: # 1 Proposed Order Re Stipulation for A Fourteen Day Continuance)(Peterson, Matthew) (Entered: 03/12/2013) |
| 03/12/2013 | 31 | Notice of Withdrawal of Ex Parte Application to Continue, 29 filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Peterson, Matthew) (Entered: 03/12/2013) |
| 03/13/2013 | 32 | MINUTES (IN CHAMBERS): ORDER by Judge Dean D. Pregerson: AT THE REQUEST OF THE MOVING PARTY the EX PARTE APPLICATION (DOCKET NUMBER 29) is hereby VACATED. (bp) (Entered: 03/13/2013) |
| 03/13/2013 | 33 | ORDER by Judge Dean D. Pregerson re Stipulation to Continue 30 : 1. The hearing on the Motion is continued from April 1, 2013 to April 15, 2013 and 10:00 a.m.; 2. Plaintiffs' response to the Motion shall be due on March 25, 2013; and 3. Proposed Intervenors' reply in support of the Motion shall be due onApril 1, 2013. (jre) (Entered: 03/13/2013) |
| 03/25/2013 | 34 | Opposition In Opposition to re: MOTION to Intervene 24 filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid |

**ER0252**

| | | Entertainment LLC. (Attachments: # 1 Declaration of Robert Corn-Revere with Exhibit A)(Peterson, Matthew) (Entered: 03/25/2013) |
|---|---|---|
| 03/29/2013 | 35 | NOTICE OF NON-OPPOSITION to MOTION to Intervene 24 filed by Defendant County of Los Angeles. (Ly, John) (Entered: 03/29/2013) |
| 04/01/2013 | 36 | REPLY In Support Of Proposed Intervenors' MOTION to Intervene 24 filed by Movants Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Azulay, Samantha) (Entered: 04/01/2013) |
| 04/05/2013 | 37 | NOTICE OF MOTION AND MOTION for Judgment on the Pleadings *and Declaration of Janet L. Grumer* filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Motion set for hearing on 5/6/2013 at 10:00 AM before Judge Dean D. Pregerson. (Peterson, Matthew) (Entered: 04/05/2013) |
| 04/05/2013 | 38 | REQUEST FOR JUDICIAL NOTICE re MOTION for Judgment on the Pleadings *and Declaration of Janet L. Grumer* 37 *Declaration of Matthew D. Peterson and Exhibit 1* filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Peterson, Matthew) (Entered: 04/05/2013) |
| 04/05/2013 | 39 | NOTICE OF MOTION AND MOTION for Preliminary Injunction *[filed concurrently with Request for Judicial Notice (Dkt. 38)}..* If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5:00 Monday through Friday, on a weekend or holiday, and need immediate judicial review, please call 213-894-2485 to advise that a Preliminary Injunction has been electronically filed. Failure to call the courtroom deputy, or the after hours filing contact number, may result in a delay of judicial review. Motion filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Motion set for hearing on 5/6/2013 at 10:00 AM before Judge Dean D. Pregerson. (Peterson, Matthew) (Entered: 04/05/2013) |
| 04/05/2013 | 40 | NOTICE OF LODGING filed *Proposed Order* re MOTION for Preliminary Injunction *[filed concurrently with Request for Judicial Notice (Dkt. 38)}..* If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5 39 (Peterson, Matthew) |

ER0253

| | | |
|---|---|---|
| | | (Entered: 04/05/2013) |
| 04/08/2013 | 41 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Notice of Lodging, 40 . The following error(s) was found: Proposed Document was not submitted as a separate attachment. the proposed order was not submitted as a separate attachment, but efiled with the Notice of lodging as 1 pdf. In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lc) (Entered: 04/08/2013) |
| 04/15/2013 | 42 | MINUTES OF Motion Hearing held before Judge Dean D. Pregerson: RE MOTION TO INTERVENE.Court hears oral argument and takes the matter under submission 24 .Court Reporter: Maria Bustillos. (lc) (Entered: 04/15/2013) |
| 04/15/2013 | 43 | DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION FOR PRELIMINARY INJUNCTION re MOTION for Judgment on the Pleadings *and Declaration of Janet L. Grumer* 37 , MOTION for Preliminary Injunction *[filed concurrently with Request for Judicial Notice (Dkt. 38)}..* If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5 39 filed by Defendants County of Los Angeles, Jonathan Fielding, Jackie Lacey. (Ly, John) (Entered: 04/15/2013) |
| 04/16/2013 | 44 | ORDER by Judge Dean D. Pregerson: granting 24 MichaelWeinstein, Marijane Jackson, Arlette De La Cruz, Mark McGrath,Whitney Engeran, and the Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation Motion to Intervene. (lc). Modified on 4/16/2013. (lc). (Entered: 04/16/2013) |
| 04/30/2013 | 45 | STIPULATION to Continue Motion for Judgment on Pleadings Off Calendar; Preliminary Injunction Continue from May 6, 2013 to June 10, 2013 Re: MOTION for Judgment on the Pleadings *and Declaration of Janet L. Grumer* 37 , MOTION for Preliminary Injunction *[filed concurrently with Request for Judicial Notice (Dkt. 38)}..* If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5 39 , STIPULATION for Hearing re Complaint - (Discovery), 1 filed by Intervenors Campaign Committee Yes on B, Major Funding by the AIDS Healthcare |

**ER0254**

| | | Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Attachments: # 1 Proposed Order)(Azulay, Samantha) (Entered: 04/30/2013) |
|---|---|---|
| 05/01/2013 | 46 | ORDER by Judge Dean D. Pregerson, re Stipulation 1. The May 6, 2013 hearing on Plaintiffs Motion for Preliminary Injunction 39 shall be continued to June 24,2013 at 10:00 a.m.; 2. The MOTION FOR JUDGMENT ON THE PLEADINGS FILEDBY PLAINTIFF CALIFA PRODUCTIONS, INC., JANE DOE A/K/A KAYDEN KROSS, JOHN DOE A/K/A LOGAN PIERCE, AND VIVID ENTERTAINMENT, LLC 37 is VACATED (to be completely re-filed if needed). 3. Intervenors shall file their response to Plaintiffs Motion for Preliminary Injunction by May 13, 2013;4. Intervenors shall file their Motion to Dismiss the Complaint (if theparties are unable to resolve their issues through a meet and conferprocess), or shall otherwise respond to the Complaint, by May 10,2013. (lc) (Entered: 05/01/2013) |
| 05/07/2013 | 47 | STIPULATION to Continue Hearing on Plaintiffs' Motion for Preliminary Injunction and Briefing Schedule on Intervenors' Motion to Dismiss from June 24, 2013 to July 1, 2013 filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Attachments: # 1 Proposed Order)(Peterson, Matthew) (Entered: 05/07/2013) |
| 05/09/2013 | 48 | ORDER by Judge Dean D. Pregerson, re Stipulation 47 1. The hearing on Plaintiffs Motion for Preliminary Injunction is continued from June 24, 2013 to July 1, 2013 at 10:00 a.m. 39 ; 2. Any reply in support of the Motion for Preliminary Injunction shall be due on June 3, 2013; 3. Intervenors Motion to Dismiss Complaint shall be set for hearing on July 1, 2013; 4. Any response or opposition to the Motion to Dismiss Complaint by Plaintiffs or Defendants shall be due on May 29, 2013; and 5. Any reply in support of the Motion to Dismiss Complaint shall be due on June 17, 2013. (lc) (Entered: 05/09/2013) |
| 05/10/2013 | 49 | NOTICE OF MOTION AND MOTION to Dismiss Case filed by Intervenors Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. Motion set for hearing on 7/1/2013 at 10:00 AM before Judge Dean D. Pregerson. (Attachments: # 1 Proposed Order, # 2 Declaration)(Azulay, Samantha) (Entered: 05/10/2013) |
| 05/10/2013 | 50 | REQUEST FOR JUDICIAL NOTICE re MOTION to Dismiss |

ER0255

| | | Case 49 filed by Intervenors Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Azulay, Samantha) (Entered: 05/10/2013) |
|---|---|---|
| 05/13/2013 | 51 | MEMORANDUM in Opposition to MOTION for Preliminary Injunction *[filed concurrently with Request for Judicial Notice (Dkt. 38)]*.. If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5 39 filed by Intervenor Parties Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Azulay, Samantha) (Entered: 05/13/2013) |
| 05/13/2013 | 52 | REQUEST FOR JUDICIAL NOTICE re MOTION for Preliminary Injunction *[filed concurrently with Request for Judicial Notice (Dkt. 38)]*.. If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5 39 *ISO Opposition to Preliminary Injunction* filed by Intervenors' Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J)(Azulay, Samantha) (Entered: 05/13/2013) |
| 05/29/2013 | 53 | OPPOSITION In Opposition to re: MOTION to Dismiss Case 49 filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Defendant Jonathan Fielding. (Peterson, Matthew) (Entered: 05/29/2013) |
| 05/29/2013 | 54 | Notice of Withdrawal of Motion for Preliminary Injunction,,, 39 filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Peterson, Matthew) (Entered: 05/29/2013) |
| 05/29/2013 | 55 | NOTICE OF MOTION AND MOTION for Preliminary Injunction re Enforcement of Measure B .. If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5:00 Monday through Friday, on a weekend or holiday, and need immediate judicial review, please call 213-894-2485 to advise that a Preliminary |

**ER0256**

| | | |
|---|---|---|
| | | Injunction has been electronically filed. Failure to call the courtroom deputy, or the after hours filing contact number, may result in a delay of judicial review. Motion filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Motion set for hearing on 7/1/2013 at 10:00 AM before Judge Dean D. Pregerson. (Attachments: # 1 Declaration of Steven Hirsch, Jane Doe aka Kayden Kross, John Doe aka Logan Pierce and Ronald London With Exs. A-E, # 2 Proposed Order)(Peterson, Matthew) (Entered: 05/29/2013) |
| 05/29/2013 | 56 | REQUEST FOR JUDICIAL NOTICE re MOTION for Preliminary Injunction re Enforcement of Measure B .. If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5:00 Monday through Friday, on a we 55 *and Declaration of Matthew D. Peterson With Exhibit 1* filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Peterson, Matthew) (Entered: 05/29/2013) |
| 06/10/2013 | 57 | OPPOSITION to MOTION for Preliminary Injunction re Enforcement of Measure B .. If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5:00 Monday through Friday, on a we 55 filed by Intervenor Parties Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Attachments: # 1 Evidentiary Objections) (Azulay, Samantha) (Entered: 06/10/2013) |
| 06/10/2013 | 58 | REQUEST FOR JUDICIAL NOTICE re MOTION for Preliminary Injunction re Enforcement of Measure B .. If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5:00 Monday through Friday, on a we 55 filed by Intervenors' Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Attachments: # 1 Exhibit A-I)(Azulay, Samantha) (Entered: 06/10/2013) |
| 06/17/2013 | 59 | REPLY in Support of MOTION for Preliminary Injunction re Enforcement of Measure B .. If this is filed during normal business hours, please contact the courtroom deputy assigned to the judge. If you are filing this document after 5:00 Monday through Friday, on a we 55 filed by Plaintiffs Califa Productions Inc, Jane Doe, John |

**ER0257**

| | | |
|---|---|---|
| | | Doe, Vivid Entertainment LLC. (Peterson, Matthew) (Entered: 06/17/2013) |
| 06/17/2013 | 60 | REPLY in support of Intervenors' MOTION to Dismiss Case 49 filed by Intervenor Parties Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Azulay, Samantha) (Entered: 06/17/2013) |
| 06/26/2013 | 61 | NOTICE of Supplemental Authority and Intent to File Motion for Reconsideration of Ruling filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Peterson, Matthew) (Entered: 06/26/2013) |
| 06/28/2013 | 62 | MINUTE ORDER IN CHAMBERS by Judge Dean D. Pregerson: COUNSEL ARE NOTIFIED that on the Court's own motion the MOTION FOR PRELIMINARY INJUNCTION FILED BY PLAINTIFF CALIFA PRODUCTIONS, INC., JANE DOE A/K/A KAYDEN KROSS, JOHN DOE A/K/A LOGAN PIERCE, AND VIVID ENTERTAINMENT, LLC 39 , MOTION TO DISMISSCASE FILED BY INTERVENORS CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION, ARLETTE DE LA CRUZ, WHITNEY ENGERAN, MARIJANE JACKSON, MARK MCGRATH, MICHAEL WEINSTEIN 49 and the MOTION FOR PRELIMINARY INJUNCTION 55 are hereby continued from July 1, 2013 to Thursday, July 11, 2013 at 1:30 p.m. (lc) (Entered: 06/28/2013) |
| 07/05/2013 | 63 | NOTICE OF MOTION AND MOTION for Reconsideration re Order on Motion to Intervene, 44 filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Motion set for hearing on 8/12/2013 at 10:00 AM before Judge Dean D. Pregerson. (Attachments: # 1 Proposed Order)(Peterson, Matthew) (Entered: 07/05/2013) |
| 07/05/2013 | 64 | NOTICE OF MOTION AND MOTION for Judgment on the Pleadings *REINSTATED; Declaration of Janet L. Grumer* filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Motion set for hearing on 8/12/2013 at 10:00 AM before Judge Dean D. Pregerson. (Peterson, Matthew) (Entered: 07/05/2013) |
| 07/08/2013 | 65 | NOTICE of Intent to File Opposition to Motion for Reconsideration filed by Intervenors Campaign Committee Yes on |

ER0258

| | | |
|---|---|---|
| | | B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Azulay, Samantha) (Entered: 07/08/2013) |
| 07/11/2013 | 66 | MINUTES OF Motion Hearing held before Judge Dean D. Pregerson: MOTION FOR PRELIMINARY INJUNCTION FILED BY PLAINTIFF CALIFA PRODUCTIONS, INC., JANE DOE A/K/A KAYDEN KROSS, JOHN DOE A/K/A LOGAN PIERCE, AND VIVID ENTERTAINMENT,LLC 39 ; MOTION TO DISMISS CASE FILED BY INTERVENORS CAMPAIGN COMMITTEE YES ON B, MAJOR FUNDING BY THE AIDS HEALTHCARE FOUNDATION, ARLETTE DE LA CRUZ, WHITNEYENGERAN, MARIJANE JACKSON, MARK MCGRATH, MICHAEL WEINSTEIN 49 ; MOTION FOR PRELIMINARY INJUNCTION 55 .Court hears oral argument and takes the matters under submission.Court Reporter: Leandra Amber. (lc) (Entered: 07/11/2013) |
| 07/11/2013 | 67 | APPLICATION for attorney Timothy P. Murphy to Appear Pro Hac Vice. (PHV FEE PAID.) filed by Plaintiffs Califa Productions Inc, Vivid Entertainment LLC. Lodged Application of Non Resident Attorney to Appear in a Specific Case. (lt) (Entered: 07/17/2013) |
| 07/17/2013 | 68 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: APPLICATION for attorney Timothy P. Murphy to Appear Pro Hac Vice. (PHV FEE PAID.) 67 . The following error(s) was found: Other error(s) with document(s) are specified below. Other error(s) with document(s): Local Counsel's address differs from CM and State Bar; Applicant did not supply Good Standing Certificates for each state that the attorney is admitted. See LR 83-2.1.3.3 (DC). In response to this notice the court may order (1) an amended or correct document to be filed (2) the document stricken or (3) take other action as the court deems appropriate. You need not take any action in response to this notice unless and until the court directs you to do so. (lt) (Entered: 07/17/2013) |
| 07/22/2013 | 69 | OPPOSITION to MOTION for Judgment on the Pleadings *REINSTATED; Declaration of Janet L. Grumer* 64 filed by Intervenor Parties Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Azulay, Samantha) (Entered: 07/22/2013) |
| | | |

**ER0259**

| | | |
|---|---|---|
| 07/22/2013 | 70 | REQUEST FOR JUDICIAL NOTICE re MOTION for Judgment on the Pleadings *REINSTATED; Declaration of Janet L. Grumer 64 In Support of Opposition to MJOP* filed by Intervenors Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Attachments: # 1 Exhibit)(Azulay, Samantha) (Entered: 07/22/2013) |
| 07/22/2013 | 71 | OPPOSITION to MOTION for Reconsideration re Order on Motion to Intervene, 44 63 filed by Intervenor Parties Campaign Committee Yes on B, Major Funding by the AIDS Healthcare Foundation, Arlette De La Cruz, Whitney Engeran, Marijane Jackson, Mark McGrath, Michael Weinstein. (Attachments: # 1 Exhibit)(Azulay, Samantha) (Entered: 07/22/2013) |
| 07/25/2013 | 72 | TRANSCRIPT for proceedings held on Thursday, July 11, 2013; 1:40 P.M. Court Reporter: Leandra Amber, phone number (213) 894-6603, www.leandraamber.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Notice of Intent to Redact due within 7 days of this date. Redaction Request due 8/15/2013. Redacted Transcript Deadline set for 8/25/2013. Release of Transcript Restriction set for 10/23/2013. (Amber, Leandra) (Entered: 07/25/2013) |
| 07/25/2013 | 73 | NOTICE OF FILING TRANSCRIPT filed for proceedings Thursday, July 11, 2013; 1:40 P.M. re Transcript 72 THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (Amber, Leandra) TEXT ONLY ENTRY (Entered: 07/25/2013) |
| 07/29/2013 | 74 | RESPONSE IN SUPPORT of MOTION for Judgment on the Pleadings *REINSTATED; Declaration of Janet L. Grumer 64* filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Peterson, Matthew) (Entered: 07/29/2013) |
| 07/29/2013 | 75 | REPLY In Support Of MOTION for Reconsideration re Order on Motion to Intervene, 44 63 filed by Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (Peterson, Matthew) (Entered: 07/29/2013) |
| 08/02/2013 | 76 | MINUTES (IN CHAMBERS) by Judge Dean D. Pregerson: COUNSEL ARE NOTIFIED that on the Court's own motion the MOTION FOR RECONSIDERATION RE ORDER ON MOTION |

ER0260

| | | |
|---|---|---|
| | | TO INTERVENE, 44 FILED BY PLAINTIFF CALIFA PRODUCTIONS INC, JANE DOE, JOHN DOE, VIVID ENTERTAINMENT LLC 63 set for August 12, 2013 at 10:00 a.m., is hereby taken off calendar, the hearing date vacated and will be decided without oral argument. (lc) (Entered: 08/02/2013) |
| 08/02/2013 | 77 | MINUTE ORDER IN CHAMBERS by Judge Dean D. Pregerson: COUNSEL ARE NOTIFIED that on the Court's own motion the MOTION FOR JUDGMENT ON THE PLEADINGS REINSTATED FILED BY PLAINTIFF CALIFA PRODUCTIONS INC, JANE DOE, JOHN DOE, VIVID ENTERTAINMENT LLC 64 is hereby continued from August 12, 2013 to September 9, 2013 at 10:00 a.m. (lc) (Entered: 08/02/2013) |
| 08/02/2013 | 78 | ORDER DENYING PLAINTIFFS MOTION FOR RECONSIDERATION 63 by Judge Dean D. Pregerson. (lc). Modified on 8/2/2013 (lc). (Entered: 08/02/2013) |
| 08/16/2013 | 79 | ORDER DENYING IN PART AND GRANTING IN PART INTERVENERS' MOTION TO DISMISS 49 ; DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION 55 ; AND VACATING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS 64 by Judge Dean D. Pregerson. (lom) (Entered: 08/16/2013) |
| 08/19/2013 | 80 | NOTICE OF APPEAL to the 9th CCA filed by Plaintiff Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. Appeal of Order on Motion to Dismiss Case, Order on Motion for Preliminary Injunction, Order on Motion for Judgment on the Pleadings,,, 79 (Appeal fee of $455 receipt number 0973-12574151 paid.) (Peterson, Matthew) (Entered: 08/19/2013) |
| 08/20/2013 | 81 | NOTIFICATION by Circuit Court of Appellate Docket Number 13-56445, 9TH CCA regarding Notice of Appeal to 9th Circuit Court of Appeals, 80 as to Plaintiffs Califa Productions Inc, Jane Doe, John Doe, Vivid Entertainment LLC. (car) (Entered: 08/20/2013) |

ER0261

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on September 16, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I further certify that Putative Intervenors below, who were served with the Notice of Appeal and were listed in the Representation Statement, and who have not entered an appearance in this matter, and whose attorneys do not appear to be registered CM/ECF users for this case, have been mailed a courtesy copy of the foregoing document by First-Class Mail, postage prepaid, to the following address:

> Tom Myers
> Samantha R. Azulay
> Christina Yang
> AIDS HEALTHCARE FOUNDATION
> 6255 W. Sunset Blvd., 21st Floor
> Los Angeles, CA 90028
> Telephone:       (323) 860-5200
> Facsimile:       (323) 467-8450

   /s/ Matthew D. Peterson
Matthew D. Peterson